No. 12-56518

_____

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

_____

**MARK D. LIMA,**

on behalf of himself and all others similarly situated**,**

*Plaintiff and Appellees*,

v.

**GATEWAY, INC.**

*Defendant and Appellant.*

_____

On Appeal from the United States District Court
For the Central District of California
The Honorable Dolly M. Gee
Case No. CV:09-01366-DMG-MLG

_____

**APPELLANT GATEWAY, INC.'S OPENING BRIEF**

_____

Paul F. Rafferty
Eric M. Kennedy
Rhianna S. Hughes
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA  92612-4408
Telephone: (949) 851-3939
Facsimile:  (949) 553-7539

Attorneys for Defendant-Appellant
GATEWAY, INC.

# <u>CORPORATE DISCLOSURE STATEMENT</u>

There is no publicly traded company that owns 10% or more of Gateway, Inc.'s stock.

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................1

II.    STATEMENT OF JURISDICTION ............................................3

III.   STATEMENT OF THE ISSUE ...................................................3

IV.    STATEMENT OF THE CASE .....................................................4

V.     STATEMENT OF FACTS ...........................................................5

VI.    SUMMARY OF *CONCEPCION* ...............................................9

VII.   THE DISTRICT COURT'S DECISION.....................................10

VIII.  SUMMARY OF ARGUMENT...................................................13

IX.    STANDARD OF REVIEW ........................................................14

X.     ARGUMENT.............................................................................15

    A.     Legal standards:  Unconscionability as a Defense to an
        Arbitration Agreement. ...................................................15

    B.     The DRP Does Not Have a High Degree of Procedural
        Unconscionability.............................................................16

        1.     The DRP Is Not Unenforceably Oppressive............................17

        2.     Lima Was Not Surprised by the DRP. ....................................22

    C.     The DRP is not Substantively Unconscionable on Any Level. .........24

        1.     The Scope of the DRP Is Not Beyond Lima's Reasonable
            Expectations. ............................................................25

        2.     The Indefiniteness About the Alternative Forum's Fees is
            Insufficient to Support a Finding of Substantive
            Unconscionability. .................................................26

        3.     NAF's Confidentiality Requirement Alone Does Not
            Create Substantive Unconscionability. ....................................27

IRI-50473v1

**TABLE OF CONTENTS**
**(continued)**

**Page**

D.    Two District Courts Have Upheld the Enforceability of the
      DRP. ................................................................................................29

XI.    CONCLUSION................................................................................31

IRI-50473v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*A&M Produce Co. v. FMC Corp.*,
135 Cal. App. 3d 473 (1982) ...................................................17

*Ajamian v. CantorCO2e, L.P.*,
203 Cal. App. 4th 771 (2012) ............................................15, 16

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) ...............................................15, 16, 24

*AT&T Mobility v. Concepcion*,
131 S. Ct. 1744 (2011)..............................................passim

*Bernal v. Burnett*,
793 F. Supp. 2d 1280 (D. Colo. 2011)..............................18

*Britton v. Co-op Banking Group*,
916 F.2d 1405 (9th Cir. 1990) .........................................3

*Bruni v. Didion*,
160 Cal. App. 4th 1272 (2008) .....................................22, 24

*Bushley v. Credit Suisse First Boston*,
360 F.3d 1149 (9th Cir. 2004) .........................................14

*Cape Flattery Ltd. v. Titan Maritime, LLC*,
647 F.3d 914 (9th Cir. 2011) .........................................15

*Circuit City Stores, Inc. v. Ahmed*,
283 F.3d 1198 (9th Cir. 2002) .........................................19

*Cohen v. DirecTV, Inc.*,
142 Cal. App. 4th 1442 (2006) .......................................20

*Cruz v. Cingular Wireless, LLC*,
648 F.3d 1205 (11th Cir. 2011) .......................................17

*Davis v. O'Melveny & Myers*,
485 F.3d 1066 (9th Cir. 2007) .....................................17, 28

IRI-50473v1

*Discover Bank v. Superior Court*,
  36 Cal. 4th 148 (2005) ....................................................................4, 9, 10, 11

*DVD Copy Control Ass'n, Inc. v. Kaleidoscope, Inc.*,
  176 Cal. App. 4th 697 (2009) ..............................................................18

*Frederick v. Frick*,
  3 Cal. App. 3d 872 (1970) ..............................................................23, 25

*Henderson v. Sup. Ct.*,
  No. B219024, 2010 WL 745161 (Cal. App. Mar. 5, 2010)................28

*In re Gateway LX6810 Computer Prods. Litig.*,
  No. SACV 10-1563 (C.D. Cal.)..........................................................2, 29, 30

*Jackson v. S.A.W. Entm't Ltd.*,
  629 F. Supp. 2d 1018 (N.D. Cal. 2009)............................................22

*Kilgore v. KeyBank N.A.*,
  673 F.3d 947 (9th Cir. 2012) ..........................................................15, 17, 19

*Macias v. Ralphs Grocery Co.*,
  No. B202625, 2008 WL 3974197 (Cal. App. Aug. 28, 2008) ..........29

*Madden v. Kaiser Found. Hosps.*,
  17 Cal. 3d 699 (1976) ..................................................................23, 25

*Morris v. Redwood Empire Bancorp*,
  128 Cal. App. 4th 1305 (2005) ......................................................18, 19

*Newton v. Am. Debt Servs., Inc.*,
  854 F. Supp. 2d 712 (2012) ............................................................16

*Ramirez-Baker v. Beazer Homes, Inc.*,
  636 F. Supp. 2d 1008 (E.D. Cal. 2008) ..........................................29

*Reddam v. KPMG LLP*,
  457 F.3d 1054 (9th Cir. 2006) ........................................................15

*Stirlen v. Supercuts, Inc.*,
  51 Cal. App. 4th 1519 (1997) ........................................................16

iv

*Ticknor v. Choice Hotels Int'l, Inc.*,
    265 F.3d 931 (9th Cir. 2001) ...............................................................15

*Ting v. AT&T*,
    319 F.3d 1126 (9th Cir. 2003) ............................................................29

*Trend Homes, Inc. v. Super. Ct.*,
    131 Cal. App. 4th 950 (2005) .............................................................22

*Wilson v. Gateway, Inc.*,
    No. CV-09-07560 (C.D. Cal.) ...................................................2, 29, 30

*Woodside Homes, Inc. v. Super. Ct.*,
    107 Cal. App. 4th 723 (2003) .............................................................29

## S<small>TATUTES</small>

9 U.S.C. § 16(a)(1)(C) ..............................................................................3

28 U.S.C. § 1332(d) ..................................................................................3

28 U.S.C. § 2107(a) ..................................................................................3

Cal. Code of Civ. Proc. § 1284.3 ............................................................27

Fed. R. App. P. 4(a)(1)...............................................................................3

## I.     <u>INTRODUCTION</u>

Not all district courts have acknowledged the impact of *AT&T Mobility v. Concepcion*, 131 S. Ct. 1744 (2011). The district court below is among them. *Concepcion* reversed California precedent that prohibited the enforcement of arbitration provisions in contracts of adhesion with class action waivers, where small dollar amounts were at issue. After *Concepcion*, businesses are free to arbitrate disputes with customers consistent with the objectives of the Federal Arbitration Act ("FAA"). Although arbitration agreements remain subject to general contractual defenses, such as unconscionability, courts must not apply them in a way that makes them obstacles to the enforcement of the liberal federal policy favoring arbitration.

The district court below did exactly what *Concepcion* forbids. Despite the *Concepcion* court's specific recognition of the marketplace reality of adhesion contracts in consumer purchases ("the times in which consumer contracts were anything other than adhesive are long past," 131 S. Ct. at 1750), the district court concluded that Defendant-Appellant Gateway, Inc.'s ("Gateway") consumer dispute resolution provision ("DRP") requiring arbitration was "procedurally unconscionable to a high degree" merely because it is in a contract of adhesion. The district court further failed to recognize this marketplace reality when it concluded that the DRP was procedurally *and* substantively unconscionable

1

because Plaintiff-Appellee Mark D. Lima ("Lima") was "surprised" by the provision and it exceeded his expectations, even though the existence of the DRP was prominently displayed and Lima had opportunities to review its terms and opt out. These are just two of several examples of how the district court applied the defense of unconscionability in a manner inconsistent with contract principles and antithetical to the federal policy in favor of arbitration.

Notably, the district court's result is contrary to the decisions of two other district court judges of the Central District of California, both of whom ruled that Gateway's DRP is enforceable against claims of unconscionability. *See In re Gateway LX6810 Computer Prods. Litig.*, No. SACV 10-1563 (C.D. Cal.); *Wilson v. Gateway, Inc.*, No. CV-09-07560 (C.D. Cal.). (3 ER 434-42; Request for Judicial Notice filed concurrently herewith ("RJN"), Ex. A.) As these decisions, and many others recognize, adhesion contracts in consumer transactions are a marketplace reality.

Declining to enforce arbitration provisions largely because they are found in adhesion contracts runs afoul of *Concepcion* and the federal policy in favor of arbitration reflected in the FAA. For these reasons, and the ones discussed below, the district court's order denying Gateway's Motion to Compel Arbitration should be reversed.

## II.    STATEMENT OF JURISDICTION

The district court had jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because:  (1) the alleged amount in controversy exceeds $5 million; (2) according to Lima, the putative class is composed of more than 100 members; and (3) Lima alleges that he and several members of the putative class are citizens of states other than California, which is the state of Gateway's citizenship.  (5 ER 823 at ¶ 7.)

This Court has jurisdiction over Gateway's appeal as it is from a district court order denying a motion to compel arbitration.  *See* 9 U.S.C. § 16(a)(1)(C) ("[a]n appeal may be taken from – (1) an order - …(C) denying an application . . . to compel arbitration . . . ."); *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1409 (9th Cir. 1990) (confirming that the Ninth Circuit can review orders denying motions to compel arbitration).  Gateway timely filed its notice of appeal on August 16, 2012, within 30 days after the district court's August 7, 2012 order denying Gateway's Motion to Compel Arbitration.  *See* 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1).

## III.    STATEMENT OF THE ISSUE

To be unenforceable on grounds of unconscionability, an arbitration agreement must be both procedurally and substantively unconscionable.  This requires a showing that the agreement's terms are oppressive, surprising, and so

3

overly harsh and one-sided as to shock the conscience. Is the arbitration provision in the limited warranty agreement between Gateway and Lima—an agreement two district courts have upheld—sufficiently oppressive, surprising and shocking to be unenforceable?

## IV.    **STATEMENT OF THE CASE**

Lima filed this action on behalf of a putative nationwide class of all purchasers of a Gateway XHD3000 monitor. (5 ER 831 at ¶ 34.) In his First Amended Complaint, Lima alleged claims against Gateway for violations of California's Consumers Legal Remedies Act, False Advertising Law and Unfair Competition Law. (5 ER 836-43 at ¶¶ 44-68.) Gateway answered and asserted arbitration as its nineteenth affirmative defense. (5 ER 817 at ¶ 89.)

When Lima filed his First Amended Complaint in January 2010, the California Supreme Court's decision in *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005) was controlling law. Under *Discover Bank*, consumer arbitration provisions including class action waivers were unenforceable if they were contained in form or adhesive contracts and the amount in controversy was small. *Id.* at 160-61. The dispute resolution provision ("DRP") at issue in this case satisfied these criteria. On April 27, 2011, however, the U.S. Supreme Court issued its decision in *Concepcion*, specifically overruling *Discover Bank*. *Concepcion*, 131 S. Ct. at 1753.

4

After the issuance of *Concepcion*, Gateway promptly moved to compel arbitration of Lima's dispute pursuant to the DRP found within the One-Year Limited Warranty Agreement ("Limited Warranty") at issue in this dispute. (5 ER 748-77.) The district court took Gateway's motion under submission. (5 ER 893 at No. 76.) Over the next twelve months, the district court made several requests for additional briefing and evidence. (5 ER 893-95 at Nos. 76, 81, 90 & 93.) On August 7, 2012, the district court denied Gateway's motion, concluding that the DRP is unconscionable. (1 ER 28-49.)

Gateway timely appealed the denial of its motion. (1 ER 1-25.)

V.    **STATEMENT OF FACTS**

Before buying a XHD3000 monitor from Gateway, Lima researched the monitor's specifications and capabilities by visiting Gateway's website. (5 ER 829 at ¶ 27.) Gateway's website listed the monitor's specifications with a disclaimer at the bottom stating that the sale was "subject to Limited Warranty and Terms & Conditions agreement." (3 ER 288-89 at ¶ 7; 2 ER 212 at ¶ 2, Ex. A.) The term "agreement" was hyperlinked, allowing a consumer to view Gateway's Limited Warranty and Terms Agreement with the click of a mouse. (3 ER 288-89 at ¶ 7.)

After visiting Gateway's website, Lima contacted Gateway by telephone and purchased an XHD3000 monitor on March 28, 2008. (3 ER 289 at ¶ 9; 4 ER 718 at ¶ 3.) At the time of Lima's purchase, Gateway had procedures in place requiring

5

all of its phone sales representatives to disclose to customers that the Limited Warranty applied to their purchase, a copy of which would ship with their product. (3 ER 302 at ¶ 8.)

In addition to Gateway's disclosures of the Limited Warranty on its website and by telephone, Gateway again alerted Lima to the Limited Warranty after he made his purchase but before he received the monitor. Gateway mails sales receipts to customers who make purchases online or by telephone, and mails the receipts before shipping the products. (3 ER 290 at ¶ 15.) Gateway mailed Lima's sales receipt to him on March 29, 2008. (3 ER 290 at ¶ 16.) All Gateway's sales receipts, including Lima's, reference the Limited Warranty and invite the customer to visit Gateway.com or call Gateway toll-free to obtain a copy of the Limited Warranty. (3 ER 290 at ¶ 15.)

Then, on April 3, 2008, Gateway shipped Lima's monitor to him via UPS standard ground delivery. (3 ER 290 at ¶ 16.) Lima received the monitor several weeks after his purchase. (4 ER 718 at ¶ 5.) Along with the monitor, inside a bag with power cables, instruction manuals, and other accessories necessary for the monitor's operation, Gateway included a copy of both the Limited Warranty and the Terms Agreement, each of which contained an identical arbitration provision. (3 ER 290 at ¶¶ 13-14; 4 ER 718 at ¶ 5.)

6

Specifically, the Limited Warranty stated in the very first paragraph of the

first page, in bold capital letters, "**THIS AGREEMENT CONTAINS A**

**DISPUTE RESOLUTION PROVISION.  PLEASE SEE SECTION 7**

**BELOW.**"  (5 ER 779 at ¶ 2, Ex. 1.)  Section 7 of the DRP provides for arbitration

of any dispute between the purchaser and Gateway:

> You and Gateway agree that any Dispute between You
> and Gateway will be resolved exclusively and finally by
> arbitration administered by the National Arbitration
> Forum (NAF) and conducted under its rules, except as
> otherwise provided below.  You and Gateway will agree
> on another arbitration forum if NAF ceases operations.
> . . .  For the purposes of this provision, the term
> "Dispute" means any dispute, controversy, or claim,
> arising out of or relating to (i) this Agreement, its
> interpretation, or the breach, termination, applicability or
> validity thereof, (ii) the related order for, purchase,
> delivery, receipt or use of any product or service from
> Gateway, or (iii) any other dispute arising out of or
> relating to the relationship between You and Gateway
> . . . .

(5 ER 779 at ¶ 2, Ex. 1; 5 ER 782.)

The Limited Warranty that Lima received also included an opt out provision.

(5 ER 779 at ¶ 2, Ex. 1; 5 ER 781.)  Like the DRP, the opt out provision was stated

in bold capital letters in the first paragraph of the first page of the Limited

Warranty:

> **THIS AGREEMENT APPLIES TO YOU UNLESS**
> **YOU NOTIFY GATEWAY IN WRITING THAT**
> **YOU DO NOT AGREE TO THIS AGREEMENT**
> **WITHIN 15 DAYS AFTER YOU RECEIVE THIS**

7

**AGREEMENT AND YOU RETURN YOUR
PRODUCT OR CANCEL SERVICES** . . . .

(5 ER 779 at ¶ 2, Ex 1; 5 ER 781.)

Lima did not opt out.  (5 ER 779 at ¶ 3.)  On May 7, 2008, he contacted Gateway's customer service department.  (3 ER 290-91 at ¶ 18.)  Although he had not reviewed the Limited Warranty, he believed his monitor may have been covered under a warranty.  (*Id*.)  After Lima described the problem he was experiencing with his monitor, Gateway's customer service representative determined that the monitor was in "theft deterrent mode" and instructed Lima on how to take the monitor out of that mode.  Gateway provided this assistance under the Limited Warranty.  (*Id*.)

In mid-2009, after experiencing problems with his monitor, Lima called Gateway's customer service department.  (4 ER 718 at ¶ 6.)  Gateway declined to repair Lima's monitor because it was outside the warranty period.  (*Id*.)  Lima filed this action in November 2009, alleging violations of California's consumer protection laws.

Shortly before Lima filed his suit, the National Arbitration Forum ("NAF"), the forum designated to arbitrate the parties' dispute within the DRP, ceased hearing consumer disputes.  (4 ER 629.)  At this time, the DRP's "savings clause" became the operative clause for purposes of selecting the parties' arbitral forum.  The "savings clause" provides:  "You and Gateway will agree on another

8

arbitration forum if NAF ceases operations." (5 ER 779 at ¶ 2, Ex. 1; 5 ER 782 at § 7.) Within its Motion to Compel Arbitration, Gateway proposed several other reputable forums to arbitrate this dispute, including the AAA and JAMS. (5 ER 770.)

## VI.   SUMMARY OF *CONCEPCION*

In *Concepcion,* the U.S. Supreme Court held that the FAA preempted California's "*Discover Bank* rule," which classified most class arbitration waivers in consumer contracts as unconscionable. 131 S. Ct. at 1753. The Court noted that under the rule, "there is little incentive for lawyers to arbitrate on behalf of individuals when they may do so for a class and reap far higher fees in the process." *Id.* at 1750. The *Discover Bank* rule was based on the notion that the availability of class actions to aggregate claims was "often inextricably linked to the vindication of substantive rights." *Discover Bank v. Super. Ct.*, 36 Cal. 4th at 162.

The *Concepcion* majority rested its rejection of the *Discover Bank* rule on the primacy of the FAA and the conclusion that class actions are inconsistent with the fundamental attributes of arbitration. "Our cases place it beyond dispute that that the FAA was designed to promote arbitration." *Concepcion*, 131 S. Ct. at 1749. "The overarching purpose of the FAA, evidenced in the text of §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms

so as to facilitate streamlined proceedings." *Id*. at 1748 (italics added).  "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward:  The conflicting rule is displaced by the FAA." *Id.* at 1747. The FAA also preempts "state-law rules that stand as an obstacle to the accomplishment of the FAA's objective[ ] … to ensure that private arbitration agreements are enforced according to their terms." *Id.* at 1748 (alteration omitted). The Court concluded that the *Discover Bank* rule "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id.*  Crucially, the Court rejected as irrelevant the argument that "class proceedings are necessary to prosecute small-dollar claims," holding that "states cannot require a procedure that is inconsistent with the FAA even if it is desirable for unrelated reasons." *Id.* at 1753.

## VII.  <u>THE DISTRICT COURT'S DECISION</u>

The district court kept Gateway's Motion to Compel Arbitration under submission for almost twelve months.  During that time, it asked for additional briefing and/or evidence on four occasions.  Ultimately, it did not reject *Concepcion* per se, but unlike its sister courts, the district court chose a path that effectively denied Gateway of *Concepcion's* benefits.

In deciding Gateway's Motion to Compel Arbitration, the district court resolved a number of critical issues in Gateway's favor before turning to the issue

of unconscionability.  First, the district court ruled that Gateway had not waived its right to compel arbitration by not moving to compel at the outset of the case, for the simple reason that Gateway had no right to compel arbitration until the Supreme Court overruled the *Discover Bank* rule in *Concepcion*.  (1 ER 32-34.)

Second, the district court found that the parties had reached an agreement for the sale of a computer monitor when Lima contacted Gateway by telephone to order the monitor, and Gateway accepted Lima's credit card payment.  (1 ER 34.)

Third, the district court found that Lima assented to the terms of the Limited Warranty, which included the DRP, because:

- When Lima ordered the monitor on the phone, he was told that his purchase was subject to Gateway's Limited Warranty;

- The Limited Warranty's terms were available on Gateway's website, which Lima knew how to access; and

- The sales receipt, which Lima received before his product was shipped, reminded him that the Limited Warranty applied and was available on Gateway's website.

(1 ER 34-37.)  The court summarized its holding in this regard as follows:  "Here, Lima agreed to the Limited Warranty's terms at the time of sale, had the opportunity to read the Limited Warranty on Gateway's website, and ultimately had the opportunity to reject its terms and cancel the sale once he received a

11

written copy.  He did not do so.  Thus, Lima assented to the Limited Warranty's terms."  (1 ER 37.)

Fourth, the district court concluded that Lima did assent to the DRP when he agreed to purchase the monitor subject to Gateway's Limited Warranty.[1]  (1 ER 34-37.)  The Limited Warranty prominently states in capital letters and bold font that it applies to Lima's purchase unless within 15 days after receiving the warranty he notifies Gateway in writing that he does not agree to it and returns his product.  (1 ER 36-37.)

Having found that Lima assented to the terms of the DRP, the district court nevertheless ruled that it was unenforceable.  The district court reasoned that the DRP was "procedurally unconscionable to a high degree" because:  (1) it was contained in a contract of adhesion; (2) Lima needed to take affirmative action— return his monitor within 15 days of purchase—to reject the terms; (3) the presence of a restocking fee was a deterrent; and (4) Lima was surprised when he learned of the DRP.  Having concluded there existed a high degree of procedural

---

[1] The district court did rule against Gateway in concluding that Lima did not assent to and therefore was *not* bound by the "Terms of Sale" agreement ("Terms Agreement"), which was separate and apart from the Limited Warranty.  (1 ER 37-39.)  Despite finding that Lima did not assent to the Terms Agreement, however, the district court did find that Lima assented to the Limited Warranty.  And, because the DRP contained in the Terms Agreement is identical to the one in the Limited Warranty (2 ER 212 at ¶ 3; *see also* 2 ER 212 at ¶ 2, Ex. A; 5 ER 779 at ¶ 2, Ex. 1), the issue of whether Lima assented to and is therefore bound by the Terms Agreement is not dispositive and therefore is not addressed here.

12

unconscionability, the district court concluded that "at least a minimal level of substantive unconscionability" was present because the DRP's arbitration provision is broad, the unavailability of NAF resulted in some uncertainty about fees, and NAF's rules (which would not apply given its unavailability) required some confidentiality.  (1 ER 40-49.)

## VIII.  SUMMARY OF ARGUMENT

The Supreme Court's decision in *Concepcion* made two points abundantly clear:  (1) the fact that an arbitration provision is contained within a contract of adhesion is insufficient to render the provision unconscionable, and (2) the contractual defense of unconscionability must not be applied in a way that disfavors and undermines arbitration.  The district court failed to heed either of these holdings in ruling that Gateway's standard DRP was unenforceable.

First, the district court concluded the DRP was not just procedurally unconscionable but procedurally unconscionable *to a high degree*.  Yet, none of the district court's reasons, individually or collectively, support any meaningful degree of procedural unconscionability.  Neither the fact that the Limited Warranty was adhesive, nor the fact that Lima had a generous two-week window to opt out of the agreement, nor the supposed presence of a restocking fee is sufficient to show "oppression" because Lima was free to choose among many different monitors in the marketplace.  Nor could the scope of the DRP have constituted

13

"surprise" when the district court's own factual findings establish that Lima had opportunities to review the DRP, the existence and terms of which were conspicuously displayed in the Limited Warranty.

Having erroneously decided that the DRP manifested a high degree of procedural unconscionability, the district court compounded its error by concluding that only a minimal amount of substantive unconscionability would suffice to render the DRP unenforceable. Yet even here, one searches the DRP in vain for terms that shock the conscience (even minimally). The district court expressed vague concerns about: (a) fees that *could* apply in an alternative arbitral forum, even though the forum and fees remain open to negotiation; (b) the original, and now unavailable, arbitral forum's limited confidentiality provisions; and (c) the scope of the DRP, which Lima had ample opportunities to review and opt out of before and after his purchase.

The Court should therefore hold that the DRP is valid and enforceable, as two courts within this Circuit have already done.

## IX.    STANDARD OF REVIEW

"The district court's decision to grant or deny a motion to compel arbitration is reviewed de novo." *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir. 2004) (citations omitted). Similarly, this Court reviews de novo determinations regarding the validity, meaning, and scope of an arbitration

14

provision. *See Reddam v. KPMG LLP*, 457 F.3d 1054, 1058 (9th Cir. 2006).

Factual findings underlying the district court's decision, however, are reviewed for

clear error. *See Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936 (9th Cir.

2001); *see also Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 917 (9th

Cir. 2011).

## X.    ARGUMENT

### A.    LEGAL STANDARDS:  UNCONSCIONABILITY AS A DEFENSE TO AN ARBITRATION AGREEMENT.

There is a liberal policy favoring arbitration under federal and California

law. *See Concepcion*, 131 S. Ct. at 1745; *Armendariz v. Found. Health Psychcare

Servs., Inc.*, 24 Cal. 4th 83, 97–99, 114 (2000).  Arbitration agreements are valid,

irrevocable, and enforceable, except upon grounds that exist for the revocation of a

contract generally. *Concepcion*, 131 S. Ct. at 1746-47; *Armendariz*, 24 Cal. 4th at

97–99.  Unconscionability is one such ground. *Kilgore v. KeyBank N.A.*, 673 F.3d

947, 963 (9th Cir. 2012); *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771,

780-81 (2012).

Unconscionability has two elements—procedural and substantive—"the

former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the

latter on 'overly harsh' or 'one-sided' results." *Concepcion*, 131 S. Ct. at 1746

(citing *Armendariz*, 24 Cal. 4th at 114).  "[T]hese two elements must both be

present in order for a court to exercise its discretion to refuse to enforce a contract

15

or clause under the doctrine of unconscionability." *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1533 (1997). But they need not be present in the same degree. *Armendariz*, 24 Cal. 4th at 114. California courts employ a sliding scale in analyzing these two elements: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable," and vice versa. *Id*.

Although unconscionability is a defense to the enforcement of an arbitration agreement, it cannot be applied in such a way that disfavors and undermines arbitration as such an application "would disserve the overarching purpose of the FAA to ensure the enforcement of arbitration agreements according to their terms." *Newton v. Am. Debt Servs., Inc.*, 854 F. Supp. 2d 712, 719 (2012) (internal quotations omitted). Indeed, in explaining why FAA preemption must be construed broadly, *Concepcion* explained that "the judicial hostility towards arbitration that prompted the FAA had manifested itself in 'a great variety' of 'devices and formulas' declaring arbitration against public policy" and "not[ed] that California's courts have been more likely to hold contracts to arbitrate unconscionable than other contracts." 131 S. Ct. at 1747.

## B. THE DRP DOES NOT HAVE A HIGH DEGREE OF PROCEDURAL UNCONSCIONABILITY.

Procedural unconscionability pertains to the making of an arbitration agreement and focuses on two factors: oppression and surprise. *Ajamian*, 203 Cal.

16

App. 4th at 793; *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1073 (9th Cir. 2007).[2] "Oppression arises from an inequality of bargaining power which results in no real negotiation and an 'absence of meaningful choice.'" *A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982) (internal quotations and citations omitted). "'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.* (internal quotations and citations omitted). Neither oppression nor surprise is present in this case in any significant degree.

### 1.    The DRP Is Not Unenforceably Oppressive.

In determining that the DRP is oppressive, the district court relied on evidence that the DRP is contained in a contract of adhesion. (1 ER 42.) Specifically, the district court noted that: (1) Lima had no ability to negotiate the terms of the DRP; (2) the DRP arrived on a pre-printed form in the box with the monitor; and (3) the opt out provision required Lima to affirmatively reject the Limited Warranty by returning the monitor and paying a restocking fee. (*Id.*)

Gateway does not deny that the DRP is contained in an adhesion contract. But, California and federal courts alike have consistently held, a contract is not unenforceable simply because it is adhesive. *See, e.g.*, *Cruz v. Cingular Wireless*,

---

[2] *Davis* was abrogated on other grounds by *Concepcion* as explained in *Kilgore v. KeyBank, Nat'l Ass'n*, 673 F.3d 947, 960 (9th Cir. 2012).

*LLC*, 648 F.3d 1205, 1215 (11th Cir. 2011); *DVD Copy Control Ass'n, Inc. v.*
*Kaleidoscope, Inc.*, 176 Cal. App. 4th 697, 716 (2009) (a contract of adhesion is
"fully enforceable according to its terms"); *Morris v. Redwood Empire Bancorp*,
128 Cal. App. 4th 1305, 1318 (2005) ("[E]levat[ing] the fact of adhesiveness,
which is not per se oppressive . . . tends to obscure the real issue.").  Indeed,
adhesive contracts "are not at all uncommon and have numerous commercial
benefits" that must be recognized.  *Kaleidoscope*, 176 Cal. App. 4th at 716.

     *Concepcion* canonized this principle, recognizing the prevalence of these
contracts in the marketplace and holding, "the times in which consumer contracts
were anything other than adhesive are long past."  *Concepcion*, 131 S. Ct. at 1750;
*see also id.* at 1753 (Thomas, J., concurring) ("As I would read it, the FAA
requires that an agreement to arbitrate be enforced unless a party successfully
challenges the formation of the arbitration agreement, such as by proving fraud or
duress.").  Today, courts have no alternative but "to discount the weight to be
attributed to the adhesive nature of [arbitration agreements]."  *Bernal v. Burnett*,
793 F. Supp. 2d 1280, 1287 (D. Colo. 2011).

     By focusing on the non-negotiability of the DRP, the district court
improperly inflated the significance of adhesiveness driving the holding to
conclude there was "a high degree of procedural unconscionability."  (1 ER 42.)
Giving this much weight to the face of adhesion effectively decides the issue and

18

drives the district court to the inevitable conclusion that the contract is

unconscionable. Yet, this is exactly what *Concepcion* argues against. The fact is,

a nonnegotiable contract term is the norm in the consumer marketplace, and should

not, by its very nature, be considered oppressive or surprising.

The imbalance in power between the contracting parties also does not justify

the invalidation of an arbitration agreement. Again, the *Concepcion* court rejected

this notion. 131 S. Ct. at 1749 n. 5 ("[A] limitation [of FAA preemption to

instances of roughly equivalent bargaining power] appears nowhere in the text of

the FAA and has been explicitly rejected by our cases."). One California court has

observed that oppression in the context of a contract of adhesion really only occurs

in "absence of reasonable market alternatives." *Morris*, 128 Cal. App. 4th at 1320.

Thus, if the DRP had been nonnegotiable *and* Lima had no reasonable market

alternatives, the district court might have had some grounds for its conclusion with

regard to procedural unconscionability. But that is not the case here, where Lima

was free to choose among numerous monitors in a highly competitive marketplace.

Nor, contrary to the district court's conclusion, is Gateway's opt out

provision evidence of procedural unconscionability. In fact, the law suggests the

opposite – the presence of an opt out argues against procedural unconscionability.

*See Kilgore*, 673 F.3d at 963-64 (holding that the contract withstood scrutiny

because of many factors *including* that it contained an opt out provision); *Circuit*

19

*City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002) (finding no procedural unconscionability because, among other things, the agreement contained an opt out provision). If consumers are afforded the opportunity to opt out of a contract of adhesion after the purchase, the consumer is afforded another level of protection.

Finally, the district court pointed to a restocking fee as evidence of procedural unconscionability. To support this conclusion, the district court relied on a pre-*Concepcion* case, *Cohen v. DirecTV, Inc.*, 142 Cal. App. 4th 1442 (2006). This reliance was misplaced. As the *Cohen* court noted, a return fee without more is insufficient to support a finding of procedural unconscionability. *Id*. at 1456 n. 10. Because the district court's other "indicia" of procedural unconscionability (including "surprise," analyzed immediately below) are invalid, the restocking fee alone is not sufficient to justify a finding of a "high degree" of procedural unconscionability in this case.

Moreover, the district court erred in relying on the supposed existence of a restocking fee to add fuel to its unconscionability argument against the DRP: "In addition, by opting to reject the arbitration provision, Lima was subject to a hefty 15% restocking fee – a substantial deterrent." (1 ER 42.) The restocking fee is found *only* in the Terms Agreement, not in the Limited Warranty (or its DRP). The Terms Agreement – and the restocking fee provision contained therein – was

20

not, as the district court believes, a "substantial deterrent" for several reasons. First, the district court found the Terms Agreement unenforceable because Lima had not assented to its terms. Since the restocking fee was not enforceable, it was not a legal deterrent. Second, Lima testified that he had never read the Terms Agreement. Since Lima was not actually aware of the restocking fee, it was also not a practical deterrent. Finally, even assuming that the restocking fee presented a legal or practical deterrent, as the district court concluded, the restocking fee was easily avoidable because Lima could have opted out well before his Gateway product arrived. The restocking fee applies to "returns;" it was not a pre-requisite for Lima to exercise his opt out rights. Notably, the opt out provision in the Limited Warranty says nothing about a restocking fee. Finally, if Lima had read the Limited Warranty he would have been aware of his right to opt out well before his monitor arrived. When Lima purchased his monitor he knew that his purchase was subject to conditions posted on Gateway's website. The Limited Warranty was on the website. And after purchase, Gateway mailed Lima a sales receipt that again referenced the Limited Warranty. (1 ER 30.) Lima recalls receiving the sales receipt and receiving the monitor "several weeks after his purchase." (*Id*.) Lima could have exercised his right to opt out before any restocking fee associated with a return would have been incurred.

21

## 2.    **Lima Was Not Surprised by the DRP.**

There can be no surprise when the terms of an agreement are not overly complex and can be easily understood. *Jackson v. S.A.W. Entm't Ltd.*, 629 F. Supp. 2d 1018, 1023 (N.D. Cal. 2009). The same is true when the terms are capitalized, bolded, or not buried in the fine print. *Id.*; *see also Trend Homes, Inc. v. Superior Court*, 131 Cal. App. 4th 950, 959-60 (2005); *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1293 (2008) (finding no surprise where provision at issue was set forth clearly and conspicuously).

In concluding that the DRP was a surprise to Lima, the district court relied on Lima's declaration testimony that Gateway's telephone sales representative never told him about the DRP, and that he only discovered it weeks after receiving the monitor in the mail. (1 ER 42.) Regardless of Lima's assertions, the record establishes beyond any doubt that no surprise occurred.

The Limited Warranty was available to Lima prior to his purchase. It was posted on Gateway's website (3 ER 288-89 at ¶ 7; 2 ER 212 at ¶ 2, Ex. A) and was available by calling, mailing, or emailing Gateway's customer service group (*id*). Lima received notice of the Limited Warranty on the receipt he received after his purchase. (3 ER 290 at ¶¶ 15-16.) Moreover, each monitor came with a copy of the Limited Warranty in the box and Lima received such a copy. (3 ER 290 at ¶¶ 13-14; 4 ER 718 at ¶ 5.)

22

The first paragraph of the first page of the Limited Warranty warned Lima, in bold capital letters, that "**THIS AGREEMENT CONTAINS A DISPUTE RESOLUTION PROVISION.  PLEASE SEE SECTION 7 BELOW.**"  (5 ER 779 at ¶ 2, Ex. 1.)  Had Lima read Section 7 of the Limited Warranty, as he was directed to do, he would have seen the clear and conspicuous heading "Dispute Resolution" and within it the requirement to resolve "any dispute" between him and Gateway "through binding arbitration."  (*Id*.)

The DRP itself is written in plain English and provides a bolded summary of what the consumer is agreeing to.  (5 ER 779 at ¶ 2, Ex. 1.)  The DRP also summarizes the material terms of the arbitration.  (*Id*.)  With a bolded warning and an explanation about the arbitration provision, Lima could not have been surprised to find that a dispute arising out of his purchase of a product or service from Gateway, or his relationship with Gateway, was subject to arbitration.

Lima's assertion that he did not read the DRP until weeks after his purchase does not help the surprise argument.  As a general rule, "one who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument."  *Madden v. Kaiser Found. Hosps.*, 17 Cal. 3d 699, 710 (1976); *see also Frederick v. Frick*, 3 Cal. App. 3d 872, 875 (1970) ("Failure to read an entire contract is not a basis for revocation.").  Lima assented to the

23

terms of the DRP when he did not elect to exercise his right to opt out, as the district court found.

###    C.    THE DRP IS NOT SUBSTANTIVELY UNCONSCIONABLE ON ANY LEVEL.

Because there is little, if any, procedural unconscionability in the DRP, the district court would have needed to find a significant amount of substantive unconscionability to conclude that the DRP was unenforceable.  It did not.  The district court found only a "minimal level of substantive unconscionability" in the DRP.  (1 ER 48.)

Substantive unconscionability focuses on the actual terms of the agreement and considers whether they are so "overly harsh" or "one-sided" as to "shock the conscience." *Concepcion*, 131 S. Ct. at 1746; *Bruni*, 160 Cal. App. 4th at 1288-89. For example, where an arbitration agreement provides that one party's claims are subject to arbitration but the other party's are not, the agreement lacks a "modicum of bilaterality" and is substantively unconscionable. *Armendariz*, 24 Cal. 4th at 116-117.

The district court rejected all but one of Lima's arguments for substantive unconscionability, and instead focused on two of its own:  (1) Lima's reasonable expectations regarding the scope of the DRP and (2) the indefiniteness regarding the alternative arbitration forum's fees.  (1 ER 42-47.)  The only argument the district court adopted from Lima's briefs was that the confidentiality requirements

24

of the default (and now unavailable) arbitration forum – NAF – make the DRP substantively unconscionable. (1 ER 47-48.) None of these arguments provide a sufficient basis to find substantive unconscionability.

### 1. The Scope of the DRP Is Not Beyond Lima's Reasonable Expectations.

The district court held that the DRP is minimally unconscionable on a substantive level because its scope is beyond Lima's reasonable expectations. (1 ER 48.) This is just a slightly reworded version of the district court's procedural "surprise" argument. That is, the only way Lima could not have "expected" the DRP to extend to his claims is if he had not read it. But, again, the failure to read a contract is not a defense to its enforcement. *Madden*, 17 Cal. 3d at 710; *see also Frederick*, 3 Cal. App. 3d at 875. If Lima had read the Limited Warranty when he was informed about it on Gateway's website or when it arrived with his monitor, he would have been aware of its scope and aware that he had two weeks to opt out if he felt the scope was unreasonable in any way.

The district court concludes that "it is completely unexpected than an adhesive consumer warranty would require arbitration of *all* disputes between the parties." (1 ER 44.) But, the district court's ruling in this regard is form over substance. It is not the consumer's expectation about whether the arbitration clause would be found in a particular document that matters, but whether it would be there at all. It was certainly there in *Concepcion* and in numerous other cases

25

cited herein. And, these expectations should be judged in light of the FAA, which was enacted in favor of arbitration. Moreover, despite the district court's protestations to the contrary, the Limited Warranty is a logical place to find an arbitration provision, particularly given the claims brought. The Limited Warranty provides the bounds of Gateway's warranties and is the agreement that governs the parties' relationship over time. If a consumer has a problem with his or her product, it is likely the first place he or she looks.

### 2.    The Indefiniteness About the Alternative Forum's Fees is Insufficient to Support a Finding of Substantive Unconscionability.

The district court held that the DRP's option for an alternative arbitral forum – in the event that NAF is no longer available – raises "mutuality concerns" due to its indefiniteness about the fees Lima would need to pay to participate. (1 ER 45-46.) The district court did not cite any authority for its conclusion that these "concerns" were sufficient to support a finding of substantive unconscionability at any level.

Indeed, as the record establishes, now that the arbitration is to proceed before an alternative forum under different rules, the parties can select an organization that imposes fees that are mutually agreeable. Many organizations exist that charge reasonable fees for arbitration, and Gateway recommended two of them. (5 ER 770-771; 5 ER 725 at ¶¶ 2-3, Exs. 2-3.) Lima is free to do his own

26

due diligence and make his own recommendations.  It is premature to conclude that the DRP is unconscionable simply because the parties have not yet agreed to an alternative forum.  Even if the parties were unable to find an alternative forum with reasonable fees, California Code of Civil Procedure section 1284.3 permits consumers to submit a waiver to avoid certain fees if they are unable to pay.  And if Lima prevails in the arbitration, the DRP provides that Gateway will reimburse him for all of the fees he paid.  (5 ER 779 at ¶ 2, Ex. 1; 5 ER 782 at § 7.)

Finally, the district court's unsupported speculation that AAA or JAMS may not even accept the suit is clearly not sufficient to conclude that the DRP is unconscionable.  In fact, these tribunals say otherwise, providing especially for consumer arbitrations.  (5 ER 725 at ¶¶ 2-3, Exs. 2-3.)

### 3.    NAF's Confidentiality Requirement Alone Does Not Create Substantive Unconscionability.

The DRP originally designated NAF as the arbitral forum (5 ER 779 at ¶ 2, Ex. 1; 5 ER 782 at § 7), but NAF has since ceased accepting consumer arbitrations. The DRP therefore allows the parties to select a new forum.  (*Id*.)  Because unconscionability is determined at the time the contract is formed, however, the district court considered the NAF rules as part of the unconscionability analysis. (1 ER 47 at n.11.)

In doing so, the district court concluded that NAF's confidentiality requirement "contributes to the lack of mutuality" that renders the DRP

27

substantively unconscionable.  (1 ER 48.)  The district court did not consider the confidentiality requirement to be sufficient to support a finding of substantive unconscionability, concluding instead that it "contributed" to the analysis.  (*Id*.)  The district court reasoned that the confidentiality requirement is unfair because it places Gateway in a superior position by ensuring that Lima does not have access to arbitration precedent.  (*Id*.)  But there is no basis in the record to conclude that the confidentiality provision is unfair or gives Gateway any advantage.

As the U.S. Supreme Court held in *Concepcion*, confidentiality is not a vice of arbitration, but a virtue that is "fundamental" to the arbitration procedure.  *Concepcion*, 131 S. Ct. at 1750 (noting that the shift from bilateral to class arbitration makes confidentiality more difficult).  Even before *Concepcion*, however, confidentiality provisions in arbitration agreements were not per se unconscionable:  "The concern is not with confidentiality itself but, rather, with the scope of the language" of the particular confidentiality provision.  *Davis*, 485 F.3d at 1079.

In analyzing the scope of a confidentiality provision, courts have found the following factors relevant:  (1) the confidentiality requirement extends beyond the proceeding itself to the *content* of the pleadings, papers, orders, hearings, trials or awards.  *See Henderson v. Sup. Ct.*, No. B219024, 2010 WL 745161, at *9 (Cal. App. Mar. 5, 2010).  (2) The confidentiality provision is unlimited in scope.  *See*

28

*Ramirez-Baker v. Beazer Homes, Inc.*, 636 F. Supp. 2d 1008, 1023-24 (E.D. Cal. 2008). (3) The confidentiality rules are prejudicial. *See Woodside Homes, Inc. v. Super. Ct.*, 107 Cal. App. 4th 723, 732 (2003). (4) The confidentiality rules prohibit a fair resolution of the claims. *See Macias v. Ralphs Grocery Co.*, No. B202625, 2008 WL 3974197, at *10 (Cal. App. Aug. 28, 2008).

None of these factors are present here. In fact, NAF's confidentiality provision is far less restrictive than those at issue in the case relied upon by the district court, *Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003). In *Ting*, the defendant attempted to impose a "gag order" on potential arbitration plaintiffs by requiring any arbitration to remain confidential. *Id*. at 1151-52 n. 16. Here, only the arbitration *proceeding* is confidential, "unless the parties agree or the law requires otherwise." (1 ER 47.) Moreover, the NAF confidentiality rule specifically states that "Arbitration Orders and Awards are not confidential and may be disclosed by a Party. The Arbitrator and Forum may disclose case filings, case dispositions, and other case information filed with the forum . . . ." (RJN, Ex. B.)

### D.   Two District Courts Have Upheld the Enforceability of the DRP.

It is noteworthy that Gateway has prevailed on similar motions to compel arbitration, post-*Concepcion*, in two actions within this Circuit: *In re Gateway LX6810 Computer Prods. Litig.*, No. SACV 10-1563 (3 ER 435 at ¶ 1, Ex 1) and *Wilson v. Gateway, Inc.*, No. CV-09-07560 (RJN, Ex. A).

29

The same arbitration provision at issue in this appeal was also at issue in the *LX6810* matter.  (3 ER 435 at ¶¶ 1-2, Exs 1-2; 5 ER 779 at ¶ 2, Ex. 1.)  There, the plaintiffs made arguments similar to the ones on which the district court rests its ruling here.  The district court in that case (The Honorable Josephine Staton Tucker presiding) rejected those arguments, concluding that the DRP is not procedurally unconscionable at all.  (3 ER 435 at ¶ 1, Ex. 1.)  The district court granted Gateway's motion to compel.

Likewise, in the *Wilson* matter, another central district court (the Honorable George H. Wu presiding) considered another of Gateway's arbitration agreements with a substantively identical DRP to the one at issue here.  (RJN, Ex. A.)  The district court concluded that in light of the fact that "the arbitration provision [wa]s in a separate section, with its own heading, with some of the most important language in bold, and with the notice in bold, the uppercase letters directing readers to that section for a discussion of the dispute resolution procedures," there was only "a minimal degree of procedural unconscionability," and the plaintiff needed "to show a much higher degree of substantive unconscionability."  (RJN, Ex. A at 10.)  The *Wilson* court then concluded that the plaintiff could not satisfy this burden.  In doing so, the *Wilson* court rejected the same arguments made here regarding confidentiality requirements and fees.  (RJN, Ex. A.)  The *Wilson* court then granted Gateway's motion to compel arbitration.

## XI.    **CONCLUSION**

For all of these reasons, the district court's order should be vacated and the parties ordered to arbitration.

Dated:  April 26, 2013                    Respectfully submitted,

                                          JONES DAY


                                          By: */s/ Rhianna S. Hughes*
                                              Paul F. Rafferty
                                              Eric M. Kennedy
                                              Rhianna S. Hughes

                                          Attorneys for Defendant-Appellant
                                          GATEWAY, INC.

31

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel certifies that the brief used a proportionally spaced Times New Roman typeface, 14-point, and that the text of the brief contains 7,152 words according to the word count provide by Microsoft Word, as required by Federal Rule of Appellate Procedure 32.

Dated:  April 26, 2013

Respectfully submitted,

JONES DAY


By: */s/ Rhianna S. Hughes*
    Paul F. Rafferty
    Eric M. Kennedy
    Rhianna S. Hughes

Attorneys for Defendant-Appellant
GATEWAY, INC.

## <u>STATEMENT OF RELATED CASES</u>

The following matter is related to the above-captioned case: *Wilson v. Gateway, Inc.*, No. CV-09-07560. *Wilson* raises similar issues relating to the enforceability of one of Gateway's similar arbitration agreements on a class action basis. *Wilson* is currently pending before the Ninth Circuit Court of Appeals, but, on April 25, 2013, it was stayed pending settlement.

Dated:  April 26, 2013                    Respectfully submitted,

                                          JONES DAY


                                          By: */s/ Rhianna S. Hughes*
                                              Paul F. Rafferty
                                              Eric M. Kennedy
                                              Rhianna S. Hughes

                                          Attorneys for Defendant-Appellant
                                          GATEWAY, INC.

## ADDENDUM OF STATUTES AND RULES

Pursuant to Federal Rule of Appellate Procedure 28(f) and Ninth Circuit Rule 28-2.7, Defendant-Appellant Gateway, Inc. submits the following Addendum of Statutes and Rules.

## 9 U.S.C. § 16

(a) An appeal may be taken from—

(1) an order—

(A) refusing a stay of any action under section 3 of this title,

(B) denying a petition under section 4 of this title to order arbitration to proceed,

(C) denying an application under section 206 of this title to compel arbitration,

(D) confirming or denying confirmation of an award or partial award, or

(E) modifying, correcting, or vacating an award;

(2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or

(3) a final decision with respect to an arbitration that is subject to this title.

(b) Except as otherwise provided in section 1292 (b) of title 28, an appeal may not be taken from an interlocutory order—

(1) granting a stay of any action under section 3 of this title;

(2) directing arbitration to proceed under section 4 of this title;

(3) compelling arbitration under section 206 of this title; or

(4) refusing to enjoin an arbitration that is subject to this title.

## 28 U.S.C. § 1332(d)

(d)

(1) In this subsection—

(A) the term "class" means all of the class members in a class action;

(B) the term "class action" means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action;

(C) the term "class certification order" means an order issued by a court approving the treatment of some or all aspects of a civil action as a class action; and

(D) the term "class members" means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action.

(2) The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—

IRI-50473v1

(A) any member of a class of plaintiffs is a citizen of a State different from any defendant;

(B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or

(C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

**28 U.S.C. § 2107**

(a) Except as otherwise provided in this section, no appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree.

(b) In any such action, suit, or proceeding, the time as to all parties shall be 60 days from such entry if one of the parties is—

(1) the United States;

(2) a United States agency;

(3) a United States officer or employee sued in an official capacity; or

(4) a current or former United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on behalf of the United States, including all instances in which the

IRI-50473v1

United States represents that officer or employee when the judgment, order, or decree is entered or files the appeal for that officer or employee.

(c) The district court may, upon motion filed not later than 30 days after the expiration of the time otherwise set for bringing appeal, extend the time for appeal upon a showing of excusable neglect or good cause. In addition, if the district court finds—

(1) that a party entitled to notice of the entry of a judgment or order did not receive such notice from the clerk or any party within 21 days of its entry, and

(2) that no party would be prejudiced,

the district court may, upon motion filed within 180 days after entry of the judgment or order or within 14 days after receipt of such notice, whichever is earlier, reopen the time for appeal for a period of 14 days from the date of entry of the order reopening the time for appeal.

(d) This section shall not apply to bankruptcy matters or other proceedings under Title 11.

## Cal. Code of Civ. Proc. § 1284.3

(a) No neutral arbitrator or private arbitration company shall administer a consumer arbitration under any agreement or rule requiring that a consumer who is a party to the arbitration pay the fees and costs incurred by an opposing party if the consumer does not prevail in the arbitration, including, but not limited to, the fees

4

and costs of the arbitrator, provider organization, attorney, or witnesses.

(b)

(1) All fees and costs charged to or assessed upon a consumer party by a private arbitration company in a consumer arbitration, exclusive of arbitrator fees, shall be waived for an indigent consumer. For the purposes of this section, "indigent consumer" means a person having a gross monthly income that is less than 300 percent of the federal poverty guidelines. Nothing in this section shall affect the ability of a private arbitration company to shift fees that would otherwise be charged or assessed upon a consumer party to a nonconsumer party.

(2) Prior to requesting or obtaining any fee, a private arbitration company shall provide written notice of the right to obtain a waiver of fees to a consumer or prospective consumer in a manner calculated to bring the matter to the attention of a reasonable consumer, including, but not limited to, prominently placing a notice in its first written communication to the consumer and in any invoice, bill, submission form, fee schedule, rules, or code of procedure.

(3) Any consumer requesting a waiver of fees or costs may establish his or her eligibility by making a declaration under oath on a form provided to the consumer by the private arbitration company for signature stating his or her monthly income and the number of persons living in his or her household. No

private arbitration company may require a consumer to provide any further statement or evidence of indigence.

(4) Any information obtained by a private arbitration company about a consumer's identity, financial condition, income, wealth, or fee waiver request shall be kept confidential and may not be disclosed to any adverse party or any nonparty to the arbitration, except a private arbitration company may not keep confidential the number of waiver requests received or granted, or the total amount of fees waived.

(c) This section applies to all consumer arbitration agreements subject to this article, and to all consumer arbitration proceedings conducted in California.

## Fed. R. App. Proc. 4 (a)(1)

(a) Appeal in a Civil Case.

(1) Time for Filing a Notice of Appeal.

(A) In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from.

(B) The notice of appeal may be filed by any party within 60 days after entry of the judgment or order appealed from if one of the parties is:

(i) the United States;

(ii) a United States agency;

(iii) a United States officer or employee sued in an official capacity; or

(iv) a current or former United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf — including all instances in which the United States represents that person when the judgment or order is entered or files the appeal for that person.

(C) An appeal from an order granting or denying an application for a writ of error coram nobis is an appeal in a civil case for purposes of Rule 4(a).

(2) Filing Before Entry of Judgment. A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry.

(3) Multiple Appeals. If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later.

(4) Effect of a Motion on a Notice of Appeal.

7

(A) If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion:

(i) for judgment under Rule 50(b);

(ii) to amend or make additional factual findings under Rule 52(b), whether or not granting the motion would alter the judgment;

(iii) for attorney's fees under Rule 54 if the district court extends the time to appeal under Rule 58;

(iv) to alter or amend the judgment under Rule 59;

(v) for a new trial under Rule 59; or

(vi) for relief under Rule 60 if the motion is filed no later than 28 days after the judgment is entered.

(B)(i) If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A)—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.

(ii) A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), or a judgment's alteration or amendment upon such a motion, must file a notice of appeal, or an amended notice of appeal—in compliance with

8

Rule 3(c)—within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion.

(5) Motion for Extension of Time.

(A) The district court may extend the time to file a notice of appeal if:

(i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and

(ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.

(B) A motion filed before the expiration of the time prescribed in Rule 4(a)(1) or (3) may be ex parte unless the court requires otherwise. If the motion is filed after the expiration of the prescribed time, notice must be given to the other parties in accordance with local rules.

(C) No extension under this Rule 4(a)(5) may exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later.

(6) Reopening the Time to File an Appeal. The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered, but only if all the following conditions are satisfied:

IRI-50473v1

(A) the court finds that the moving party did not receive notice under Federal Rule of Civil Procedure 77 (d) of the entry of the judgment or order sought to be appealed within 21 days after entry;

(B) the motion is filed within 180 days after the judgment or order is entered or within 14 days after the moving party receives notice under Federal Rule of Civil Procedure 77 (d) of the entry, whichever is earlier; and

(C) the court finds that no party would be prejudiced.

(7) Entry Defined.

(A) A judgment or order is entered for purposes of this Rule 4(a):

(i) if Federal Rule of Civil Procedure 58 (a) does not require a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79 (a); or

(ii) if Federal Rule of Civil Procedure 58 (a) requires a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a) and when the earlier of these events occurs:

• the judgment or order is set forth on a separate document, or

• 150 days have run from entry of the judgment or order in the civil docket under Federal Rule of Civil Procedure 79 (a).

10

(B) A failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58 (a) does not affect the validity of an appeal from that judgment or order.

IRI-50473v1

9th Circuit Case Number(s) | 12-56518

**NOTE**: To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) [                    ] .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) [                    ]

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) [ April 26, 2013 ] .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Gordon M. Fauth, Jr., Esq.
Alexis A. Phocas, Esq.
LITIGATION LAW GROUP
1801 Clement Avenue, Suite 101
Alameda, CA 94501

Signature (use "s/" format) | /S/ Cindy Gonzales

American LegalNet, Inc.
www.FormsWorkFlow.com