No. 12-56518

_____

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

_____

**MARK D. LIMA,**
on behalf of himself and all others similarly situated**,**

*Plaintiff and Appellee*,

v.

**GATEWAY, INC.**

*Defendant and Appellant.*

_____

On Appeal from the United States District Court
For the Central District of California
The Honorable Dolly M. Gee
Case No. CV:09-01366-DMG-MLG

_____

**APPELLANT GATEWAY, INC.'S**
**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPENING BRIEF**

_____

Paul F. Rafferty
Eric M. Kennedy
Rhianna S. Hughes
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA  92612-4408
Telephone: (949) 851-3939
Facsimile:  (949) 553-7539

Attorneys for Defendant-Appellant
GATEWAY, INC.

## INTRODUCTION:

Pursuant to Federal Rule of Evidence 201, and in support of their concurrently filed Opening Brief, Defendant-Appellant Gateway, Inc. ("Gateway") respectfully requests that the Court take judicial notice of the following documents, which are a matter of public record and are not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned:

1.  Exhibit A, which is a true and correct copy of the Order Re: Defendants' Motions to Compel Arbitration in the matter of *Wilson v. Gateway, Inc., et al.*, No. CV 09-7560-GW-VBK (C.D. Cal., 2009) (Dkt. No. 321, Nov. 10, 2011), and all other orders and hearings referenced therein, including:

    • Exhibit A-1, which is a true and correct copy of the court's tentative ruling on Defendant Gateway's Renewed Motion to Compel Arbitration in the *Wilson* matter.  (Dkt. No. 307, Sept. 22, 2011.)

- Exhibit A-2, which is a true and correct copy of the reporter's transcript of the April 21, 2011[1] hearing held in the *Wilson* matter.

- Exhibit A-3, which is a true and correct copy of the reporter's transcript of the July 21, 2011 hearing held in the *Wilson* matter.

- Exhibit A-4, which is a true and correct copy of the reporter's transcript of the August 29, 2011 hearing held in the *Wilson* matter.

- Exhibit A-5, which is a true and correct copy of the reporter's transcript of the September 22, 2011 hearing held in the *Wilson* matter.

- Exhibit A-6, which is a true and correct copy of the reporter's transcript of the October 24, 2011 hearing held in the *Wilson* matter.

2.    Exhibit B, which is a true and correct copy of the Code of Procedure for the National Arbitration Forum ("NAF"), a copy of which can be retrieved from NAF's website at:

---

[1] In Exhibit A, the Court seemingly errs in referencing the date of the April 2011 hearing in the *Wilson* matter. This hearing was held on April 21, 2011, rather than April 27, 2011.

http://www.adrforum.com/users/naf/resources/CodeofProcedure2008-print2.pdf.

Each of the documents described above is relevant to the instant appeal. Exhibit A, and all of its component parts, relate to Gateway's efforts to compel arbitration in a related case (the *Wilson* matter) under a substantively identical dispute resolution provision. These documents show why, after an extensive analysis, the *Wilson* court rejected many of the arguments *Lima* court raised here, and ultimately upheld Gateway's DRP. Exhibit B, on the other hand, is a copy of Code of Procedure for NAF that use to apply in this case and for which the district court relied, in part, in entering its finding that that the DRP has a minimal degree of substantive unconscionability.

These documents are crucial to this appeal, and therefore, should be judicially noticed.

## ARGUMENT:

Judicially noticeable matters not otherwise included in the record on appeal may, nonetheless, be considered by the appellate court. *See* Fed. R. Evid. 201(d); *Papai v. Harbor Tug & Barge Co*., 67 F.3d 203, 207 n.5 (9th Cir. 1995), *rev'd on other grounds,* 520 U.S. 548 (1997). "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from

sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c).

This Court may take judicial notice of "undisputed matters of public record," including documents on file in another case in a federal district court. *Harris, v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (taking judicial notice of declaration and exhibits thereto filed in federal district court); *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 & n.2 (9th Cir. 2002) (taking judicial notice of "various filings" in related state-court proceeding); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo*, 971 F.2d 244, 248 (9th Cir. 1992) (taking judicial notice of final judgment in related California Superior Court litigation).

A request for judicial notice may be made for the first time in an appellate proceeding. *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("a court may take judicial notice of its own records in other cases, as well as the records *of an inferior court* in other cases" (emphasis added)). The Court may take judicial notice of filings and "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United States ex rel. Robinson Rancheria Citizens Council v. Borneo*, 971 F.2d 244, 248 (9th Cir. 1992) (citations omitted).

The Court may also take judicial notice of the rules, regulations, and orders of administrative agencies. *International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Zantop Air Transport Corp.*, 394 F.2d 36 (6th Cir. 1968); *see also Coughlin v. Shimizu*, 991 F. Supp. 1226, 1232 (D. Ore. 1998) (denying judicial notice of AAA rules only because of parties' inability to agree as to which version of the rules applied).

The documents for which Gateway is seeking judicial notice fall within the aforementioned categories. As such, they are not reasonably subject to dispute and are thus the proper subject of judicial notice pursuant to Rule 201 of the Federal Rules of Evidence.

## CONCLUSION:

For the foregoing reasons, Gateway requests that the Court take judicial notice of Exhibits A, including A-1 through A-6, and B, attached hereto.

Dated:  April 26, 2013                 Respectfully submitted,

Jones Day


By: */s/ Rhianna S. Hughes*
    Paul F. Rafferty
    Eric M. Kennedy
    Rhianna S. Hughes

Attorneys for Defendant-Appellant
GATEWAY, INC.

IRI-49394v1

# EXHIBIT A

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER WILSON,<br><br>   Plaintiff,<br><br>  v.<br><br>GATEWAY, INC., <u>et. al.</u>,<br><br>   Defendants. | No. CV-09-7560-GW(VBKx)<br><br>**ORDER RE: DEFENDANTS' MOTIONS TO COMPEL ARBITRATION** |

## I. <u>Background</u>

On October 16, 2009, Plaintiff Peter Wilson filed a Class Action Complaint against Gateway, Inc. ("Gateway"), and other defendants. *See* Docket Item Number ("Doc. No.") 1. On September 14, 2010, Gateway filed a Third-Party Complaint for equitable indemnity/contribution against National Electronics Warranty Corporation ("NEW") (*see* Doc. No. 46); and on November 23, 2010, Plaintiff amended his complaint to add NEW as a defendant therein. *Id.* at No. 115.

On January 5, 2011, Gateway moved to compel arbitration and/or stay this action because of the Supreme Court's grant of certiorari in *Laster v. AT&T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009), *cert. granted*, 130 S.Ct. 3322 (May 24, 2010) ("*Concepcion*"). *Id.* at No. 173. On January 18, 2011, NEW joined in that motion. Doc. No. 176. On February 10, 2011, this Court denied the motion as to Gateway

1  without prejudice primarily on the grounds that Gateway had fully litigated this case
2  for over a year without moving to compel arbitration and for over eight months after
3  the Supreme Court's granting of certiorari in *Concepcion*. *Id.* at No. 186.

4        On February 24, 2011, NEW filed its own motion to compel arbitration or stay
5  the action. *Id.* at No. 206. On April 21, 2011, a hearing on that motion was held and
6  the Court took the motion under submission. *Id.* at No. 267.

7        On April 27, 2011, the Supreme Court issued its decision in *AT&T Mobility*
8  *LLC v. Concepcion*, ___ U.S. ___, 131 S.Ct. 1740 (2011), which *inter alia* held that
9  the Federal Arbitration Act preempted the California rule set out in *Discover Bank v.*
10  *Superior Court*, 36 Cal.4th 148 (2005), which deemed unenforceable most mandatory
11  consumer arbitration agreements that included class action waivers.

12        On May 23, 2011, Gateway filed another motion to compel arbitration. *See*
13  Doc. No. 275. On July 21, 2011, this Court heard oral arguments on the Defendants'
14  motions to compel arbitration, and ordered further briefing. *Id.* at No. 293. On
15  September 22, 2011, this Court issued a "tentative ruling" on the motions and heard
16  further oral arguments. *Id.* at No. 307. On October 24, 2011, the Court heard
17  additional arguments and indicated that it would grant the motions. *Id.* at No. 310.

18  **II.**    **Order**

19        For the reasons stated in this Court's September 22, 2011 tentative ruling and
20  on the record at the hearings of April 27, 2011, July 21, 2011, August 29, 2011,
21  September 22, 2011 and October 24, 2011, Defendants Gateway and NEW's motions
22  to compel arbitration are granted and the case is dismissed without prejudice. <u>See</u>
23  <u>Interactive Flight Techs. Inc. v. Swissair Swiss Air Transp. Co.</u>, 249 F.3d 1177, 1178-
24  79 (9th Cir. 2001).

25

26  Dated: This 10th day of November, 2011.

27                                    GEORGE H. WU
28                          United States District Judge

# EXHIBIT A – 1

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-7560-GW(VBKx) | Date | September 22, 2011 |
|---|---|---|---|
| Title | *Peter Wilson v. Gateway, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Wil Wilcox | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Robyn C. Crowther | Paul F. Rafferty |
| Matthew W. O'Brien | Adam Sevell |
| Kerry Cunningham - by telephone | Gail E. Lees |
| | David M. Walsh |

**PROCEEDINGS:**    **DEFENDANT GATEWAY, INC.'S MOTION TO COMPEL ARBITRATION (filed 05/23/11)**

The Court's Tentative Ruling is circulated and attached hereto. Court hears further oral argument. For reasons stated on the record, Defendant's Motion to Compel Arbitration is continued to **October 24, 2011 at 8:30 a.m.** Court to issue ruling.

|  | : | 35 |
|---|---|---|
| Initials of Preparer | JG | |

_Wilson v. Gateway, Inc._, Case No. CV-09-7560

Tentative Rulings on: Motion 1 - Gateway Inc.'s Renewed Motion to Compel
    Arbitration, and Motion 2 - National Electronics Warranty LLC's Motion to
    Compel Arbitration, or, in the Alternative, to Stay Action[1]

## I. Factual Background[2]

Defendant Gateway Inc. ("Gateway") is a corporation in the business of direct
sales of personal computers. See Third Amended Complaint ¶ 18 ("TAC"). Gateway
operated three divisions: 1) the Professional Business division ("Pro Business"); 2) the
Consumer Business division; and 3) the retail division. Id. ¶ 20. Among other types of
transactions, Gateway's Pro Business sold computers in bulk to educational institutions
for distribution to employees, students, or others. Id. ¶¶ 20-21. Gateway's Pro Business
also sold various extended service plan warranties ("ESPs") to customers who wished to
insure that their products would be serviced for a period beyond the limited warranty
provided to them at the time of sale. Id. ¶ 22.

In 2004, Gateway subsidiary Gateway Companies, Inc. ("GCI") and defendant
National Electronics Warranty LLC ("NEW") entered an agreement regarding the ESPs.
Id. ¶¶ 26-27. NEW is a provider of extended service plans and product protection
programs for consumer products. Id. ¶ 23. Under the agreement, GCI and Gateway
could market and sell ESPs providing for the repair or replacement of the products they
sold, while NEW would be responsible for administering the ESPs. Id. ¶¶ 27, 30. NEW
was required to answer telephone calls from consumers, handle and process all claims,
and to pay all costs arising out of the administration the ESPs. Id. ¶ 30. NEW normally
contracted with third-party service providers to provide warranty repair service. Id. ¶ 37.

---

[1] National Electronics Warranty LLC ("NEW") initially filed this motion on February 24, 2011. In the
motion, NEW sought to compel arbitration or, in the event the court decided not to compel arbitration, to
stay the action until the Supreme Court issued an opinion in AT&T Mobility LLC v. Concepcion, 131 S.
Ct. 1740 (2011). However, before this Court ruled on NEW's motion, the Supreme Court decided
Concepcion on April 27, 2011. Since Concepcion has already been decided, the motion to stay the action is
now moot, and the Court would consider this motion exclusively as a motion to compel arbitration.

[2] The facts included in this section have been taken primarily from the Third Amended Complaint, and are
provided merely as a background. The Court is not making any factual findings at this time.

However, at some point after entering into the agreement, NEW and Gateway agreed that GCI would provide the repair service that NEW was required to provide, and NEW would reimburse GCI for servicing the ESPs. Id.

On August 27, 2007, Gateway announced it was being acquired by Acer, Inc. ("Acer"). Id. ¶ 41. The acquisition by Acer did not include Gateway's Pro Business. Id. Subsequently, on September 4, 2007, MPC Corporation ("MPC") agreed to acquire Gateway's Pro Business. Id. ¶ 42. Under this agreement, MPC became responsible for outstanding ESPs. Id. ¶ 43. NEW consented to Gateway's transfer of its ESP obligations to MPC. Id. ¶ 47. Immediately upon the close of the MPC deal, Gateway disclaimed any liability for its obligations to ESP consumers and directed them to MPC. Id. ¶ 50.

At that time, MPC was in a bleak financial situation. Id. ¶ 43. Within a few months of the deal with MPC run into problems at the American Stock Exchange that culminating with MPC being delisted as a result of its sustained losses on November 4, 2008. Id. ¶¶ 51-52. Despite these problems, Gateway never took any of the measures provided for in the agreement with MPC in the event of a warranty default. Id. ¶ 53. Thus, on November 6, 2008, MPC filed a voluntary petition for bankruptcy pursuant to Chapter 11 of the United States Bankruptcy Code. Id. ¶ 54. Finally, on December 29, 2008, MPC announced that it would liquidate all of its remaining assets and close its doors. Id. ¶ 55. As a result, MPC determined that it would not be able to service the ESPs after its bankruptcy. Id.

On July 20, 2005, Plaintiff Peter Wilson ("Plaintiff") purchased a Gateway computer, along with a 4-year ESP. Id. ¶ 84. Plaintiff made the purchase as a first-year student at Master's College. Id. On February 6, 2009, with approximately five months remaining until Plaintiff's ESP expired, the computer ceased functioning. Id. ¶ 115. Plaintiff contacted Gateway directly to exercise his right to service under the ESP. Id. ¶ 116. Even though Gateway knew that MPC had already ceased operations, a Gateway representative informed Plaintiff that all service and support for Plaintiff's computer was now being handled by MPC. Id. 117. When Plaintiff contacted MPC he learned that MPC could not service his computer because it was out of business. Id. 118. Plaintiff then contacted Gateway again, only to be once more directed to MPC. Id. Plaintiff also

contacted the Better Business Bureau, but Gateway continued to claim that it was no longer responsible for the ESP. Id.

Along with the computer, Gateway provided Plaintiff with a booklet entitled "Gateway Business Service Plans." Id. ¶ 86, Ex. A. This booklet included a section entitled "Gateway Limited Warranty Agreement." Id. ¶ 87. This section included the following statement: **THIS AGREEMENT CONTAINS A DISPUTE RESOLUTION CLAUSE. PLEASE SEE SECTION 5 BELOW.** Id. Ex. A at 17. Section five of the agreement included the following:

> **5. Dispute Resolution.** You and Gateway agree that any Dispute between You and Gateway will be resolved exclusively and finally by arbitration administered by the National Arbitration Forum (NAF) and conducted under its rules, except as otherwise provided below. You and Gateway will agree on another arbitration forum if NAF ceases operations. The arbitration will be conducted before a single arbitrator, and will be limited solely to the Dispute between You and Gateway. The arbitration, or any portion of it, will not be consolidated with any other arbitration and will not be conducted on a class-wide or class action basis. The arbitration shall be held at any reasonable location near your residence by submission of documents, by telephone, online or in person whichever method of presentation You choose. If You prevail in the arbitration of any Dispute with Gateway, Gateway will reimburse You for any fees you paid to NAF in connection with the arbitration. Any decision rendered in such arbitration proceedings will be final and binding on the parties, and judgment may be entered thereon in any court of competent jurisdiction. Should either party bring a Dispute in a forum other than NAF, the arbitrator may award the other party its reasonable costs and expenses, including attorneys' fees, incurred in staying or dismissing such other proceedings or in otherwise enforcing compliance with this dispute resolution provision. **You understand that, in the absence of this provision, You would have had a right to litigate through a court, including the right to litigate claims on a class-wide or class-action basis, and that You have expressly and knowingly waived those rights and agreed to resolve any Disputes through binding arbitration in accordance with the provisions of this paragraph.** This arbitration provision shall be governed by the Federal Arbitration Act, 9 U.S.C. § Section 1, *et seq.* For the purposes of this provision, . . . the term "Gateway" means Gateway, Inc. . . . and/or any third party who provides products or services purchased from or distributed by Gateway . . . ."

Id. Ex A at 18. The agreement also included the following clause: "If any term of this
Agreement is illegal or unenforceable, the legality and enforceability of the remaining
provisions shall not be affected or impaired." Id.

## II. Procedural Background

On October 16, 2009, Plaintiff filed a class action complaint against Gateway. Id.
¶ 125. An amended complaint was filed on February 24, 2010. On May 24, 2010, the
Supreme Court granted certiorari in AT&T Mobility v. Concepcion, 130 S. Ct. 3322. On
September 14, 2010, Gateway filed a third party complaint against NEW. Subsequently,
on November 23, 2010, Plaintiff filed a second amended class action complaint against
both Gateway and NEW. On January 4, 2011, Gateway filed a motion to compel
arbitration and stay proceedings. NEW joined Gateway's motion on January 18, 2011.
On February 10, 2011, this Court denied Gateway's motion without prejudice. It
concluded that Gateway had "waived its right to compel arbitration by vigorously
litigating this case virtually from its inception, and by failing to compel arbitration or
seek a stay in May 2010, when certiorari was granted in [AT&T Mobility LLC v.
Concepcion, 131 S. Ct. 1740 (2011)]." See Minutes of February 10, 2011 at 2, ECF No.
186 ("Feb. Minutes"). Nevertheless, the Court indicated that the denial would be without
prejudice in case there was something in the Supreme Court opinion that suggested that
Gateway had not waived its right to arbitrate.

On February 24, 2011, NEW filed its own motion to compel arbitration or, in the
alternative, to stay action. On April 21, 2011, the Court issued a tentative ruling, indica-
ting that "NEW's request for arbitration probably must be treated differently than Gate-
way's, as Gateway's failure to timely invoke its right to arbitrate caused Plaintiff to
expend significant resources." See Minutes of April 21, 2011 at 2, ECF No. 267 ("Apr.
Minutes"). The Court indicated that it would likely find a waiver if it concluded that "the
Plaintiff would be prejudiced for the same reasons it gave in connection with Gateway's
motion to compel arbitration." Id. Similarly, the Court also indicated that without a
showing of prejudice the Court might conclude that NEW had not waived its right to
arbitrate. Id. The Court then took the motion under submission. Id. at 1.

On April 27, 2011, the Supreme Court announced its decision in Concepcion.

4

Subsequently, on May 23, 2011, NEW filed a supplement to its motion to compel arbitration. That same day, Gateway filed another motion to compel arbitration.

## III. Analysis

### Motion 1

#### A.  Whether Gateway Has Waived its Right to Compel Arbitration

Gateway argues that it has not waived its right to compel arbitration because it did not have an existing right to arbitration until the Supreme Court's decision in Concepcion. Gateway claims that until April 27, 2011, it could not have succeeded in compelling arbitration by relying on an arbitration agreement which contained a class action waiver. Gateway alleges that the California Supreme Court had found such provisions unenforceable as a matter of law in Discover Bank v. Superior Court, 36 Cal. 4th 148 (2005).

"Waiver of a contractual right to arbitration is not favored." Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986). "Any examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." Id.; see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983) (explaining that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"). "A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." Fisher, 791 F.2d at 694. There can be no waiver of the right to arbitrate where there is no existing right to arbitration. Letizia v. Prudential Bache Sec., Inc., 802 F.2d 1185, 1187 (9th Cir. 1986).

The initial step in the analysis of whether Gateway waived its right to arbitrate is to determine whether Gateway had a right to compel arbitration before Concepcion abrogated Discover Bank. In Discover Bank, the California Supreme Court held that class action waivers "found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages,

and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money" are unconscionable under California law and should not be enforced. Discover Bank, 36 Cal. 4th at 162-63.  This might arguably be the type of class action waiver involved in the situation before us.  Thus, Gateway most likely could not have enforced the class action waiver contained in the agreement.

However, Discover Bank did not make the whole arbitration agreement unenforceable.  The next question is whether the arbitration agreement could be enforced without the class action waiver.  That is, whether Gateway could have compelled class arbitration of the dispute.  Here, the arbitration agreement contains a severability clause. Thus, non-enforcement of the class action waiver would not have made the whole arbitration agreement unenforceable.  However, the Supreme Court has decided that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so."  Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 130 S. Ct. 1758, 1775 (2010).  Given that Plaintiff never agreed to submit to class arbitration, it could not have been compelled to do so.  Stolt-Nielsen was decided on April 27, 2010.  Therefore, Gateway did not have a right to compel arbitration since at least April 27, 2010.

The next question is whether Gateway had a right to compel arbitration between the time this action started and the Stolt-Nielsen decision.  The Supreme Court granted certiorari in Stolt-Nielsen on June 15, 2009, months before Plaintiff filed its original complaint.  See Stolt-Nielsen S.A. v. AnimalFeeds Intern. Corp., 129 S. Ct. 2793 (2009). The question that the Court was going to decide was "whether imposing class arbitration on parties whose arbitration clauses are 'silent' on that issue is consistent with the [FAA]."  Stolt-Nielsen, 130 S. Ct. at 1764.  Thus, it seems unlikely that at that time any court would have granted a motion to compel class arbitration based on an agreement to arbitrate that, since the class action waiver was unenforceable, was silent on that issue. Consequently, Gateway did not have an existing right to compel arbitration before Concepcion was decided on April 27, 2011.

The only remaining question is whether Gateway waived its right to arbitration by

not filing a motion to compel as soon the Supreme Court granted certiorari in
Concepcion, even if it did not have a right to arbitrate the dispute at that time.  The Ninth
Circuit has held that, in a case where the defendants waited approximately two years to
file their motion to compel arbitration, "[T]he delay in filing a motion to compel was not
inconsistent conduct [with their right to arbitrate because] [a]n earlier motion to compel
would have been futile."  Conover v. Dean Witter Reynolds, Inc., 837 F.2d 867, 868 (9th
Cir. 1988).  "It was quite understandable for the defendants to file their motion after the
Supreme Court's decision in Byrd because defendants believed it treated the issue as an
open one."  Id.  Therefore, the court reversed a finding of waiver of the right to compel
arbitration.  Id..  However, it is worth noting that the defendant in Conover could not
have moved to compel arbitration at the time the Supreme Court granted certiorari in
Byrd because he did not know that the Court was going to address a question that was
relevant to his case.  In fact, in Byrd a concurring justice "posed a question which the
parties had not raised and which the Court did not need to decide."  Conover v. Dean
Witter Reynolds, Inc., 794 F.2d 520, 521 (9th Cir. 1986), rev'd 837 F.2d 867 (9th Cir.
1988).  Since the question was only raised in a concurring opinion, and the Court did not
make a determination about that issue, the defendant's motion was initially denied.  It
was not until the Supreme Court decided the same question a year later that the denial of
defendant's motion was reversed.  Therefore, Conover does not answer the issue of
waiver that is disputed here.

        In situations like Gateway's, some district courts have held that there was no
waiver despite the defendant's failure to file a motion to compel prior to a relevant
Supreme Court decision.  See e.g. In re Cal. Title Ins. Antitrust Litig., No. 08–01341
JSW, 2011 U.S. Dist. LEXIS 71621, at *13 (N.D. Cal. June 27, 2011) (holding that the
defendants did not waive their right to compel arbitration due to a delay in filing a motion
to compel because, since "prior to the ruling in Concepcion, in the absence of class-wide
arbitration provision, class arbitration would not have been available," "[i]t would indeed
have been futile for [the defendants] to have moved to compel arbitration prior to the
decision in Concepcion"); Olivares v. Hispanic Broad. Corp., No. CV 00-00354-ER,
2001 U.S. Dist. LEXIS 5760, at *4 (C.D. Cal. Apr. 26, 2001) (holding that, in a case
where the defendant did not move to compel arbitration at the time the Supreme Court

granted certiorari on a case that would decide whether claims like the defendant's were arbitrable, the defendant had not waived its right to compel arbitration because, given that prior to the Supreme Court decision the defendant did not have a right to compel arbitration, the time when the defendant actually filed the motion "was the first opportunity . . . to file such a motion"). Here, the situation is analogous. Based on the state of the law at the time this action was initially filed, an earlier motion to compel arbitration would have been futile. In spite of that, Gateway filed an initial motion to compel arbitration in January 2011. Gateway's motion was dismissed without prejudice. Then, Gateway filed its second motion to compel arbitration less than a month after Concepcion was decided. In light of the above, this Court has reconsidered its February 2011 decision, and now concludes that Gateway has not waived its contractual right to arbitration.

    B.  <u>Whether the Arbitration Agreement is Valid</u>

The Federal Arbitration Act ("FAA") provides, in part:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. ¶ 2. This provision reflects "both a 'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.'" Concepcion, 131 S. Ct. at 1745 (citations omitted). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." Id. (citations omitted); see also Id. at 1748 (citing Volt Info. Scis., Inc. v. Bd of Trs., 489 U.S. 468, 478(1989)) ("The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'").

The Supreme Court has explained that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration

agreements without contravening § 2." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996); see also Concepcion, 131 S. Ct. at 1746.  When it rejected the Discover Bank rule, the Court explained that "although § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." Concepcion, 131 S. Ct at 1748.  Thus, the Court held that the FAA preempts Discover Bank's rule classifying most class action waivers in consumer contracts as unconscionable.  Nevertheless, the defense of unconscionability may still be applied to invalidate an arbitration agreement.  However, the Supreme Court in Concepcion cautioned that:

> When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA. Preston v. Ferrer, 552 U.S. 346, 353, 128 S. Ct. 978, 169 L. Ed. 2d 917 (2008). But the inquiry becomes more complex when a doctrine normally thought to be generally applicable, such as duress or, as relevant here, unconscionability, is alleged to have been applied in a fashion that disfavors arbitration.  In Perry v. Thomas, 482 U.S. 483, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987), for example, we noted that the FAA's preemptive effect might extend even to grounds traditionally thought to exist "'at law or in equity for the revocation of any contract.'"  Id., at 492, n. 9, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (emphasis deleted).  We said that a court may not "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what . . . the state legislature cannot." Id., at 493, n. 9, 107 S. Ct. 2520, 96 L. Ed. 2d 426.

!31 S. Ct. at 1747.  Therefore, an unconscionability analysis is necessary to determine whether the arbitration agreement is valid.

"[U]nconscionability has both a 'procedural' and a 'substantive' element." A & M Produce Co. v. FMC Corp., 135 Cal.App.3d 473, 486 (1982); see also Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000).  "[T]hese two elements must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.  Stirlen v. Supercuts, Inc., 51 Cal.App.4th 1519, 1533 (1997).  But they do not need to be present in the same degree. Armendariz, 24 Cal. 4th at 114.  These two elements work on a sliding scale: "the more

substantively oppressive the contract term, the less evidence of procedural

unconscionability is required to come to the conclusion that the term is unenforceable,

and vice versa." Id.

> The procedural element focuses on two factors:
> "oppression" and "surprise." "Oppression" arises from an
> inequality of bargaining power which results in no real negotiation
> and "an absence of meaningful choice." "Surprise" involves the
> extent to which the supposedly agreed-upon terms of the bargain
> are hidden in a prolix printed form drafted by the party seeking to
> enforce the disputed terms.

A & M Produce, 135 Cal.App.3d at 486 (citations omitted).

> The procedural element of an unconscionable contract
> generally takes the form of a contract of adhesion, "which,
> imposed and drafted by the party of superior bargaining strength,
> relegates to the subscribing party only the opportunity to adhere to
> the contract or reject it."

Sonic-Calabasas A, Inc. v. Moreno, 51 Cal. 4th 659, 685 (2011) (quoting Little v. Auto

Stiegler, Inc., 29 Cal. 4th 1064, 1071 (2003)). Here, Gateway does not dispute that the

arbitration agreement is an adhesion contract. Gateway relies on Dean Witter Reynolds,

Inc. v. Superior Court, 211 Cal.App.3d 758 (1989) to argue that Plaintiff had a

meaningful choice because he had reasonably available alternative sources of supply

from which to obtain the desired goods. However, the Ninth Circuit has noticed a

disagreement among the California Courts of Appeal over this issue, and it has rejected

the Dean Witter analysis. See Shroyer v. New Cingular Wireless Servs., Inc., 498 F.3d

976, 985 (9th Cir. 2007) ("We have consistently followed the courts that reject the notion

that the existence of 'marketplace alternatives' bars a finding of procedural

unconscionability."). "[A]bsent unusual circumstances, use of a contract of adhesion

establishes a minimal degree of procedural unconscionability notwithstanding the

availability of market alternatives." Id. (quoting Gatton v. T-Mobile USA, Inc., 152

Cal.App.4th 571, 585 (2007)). Therefore, here there is a minimal degree of procedural

unconscionability based on the "oppression" factor.

Regarding the "surprise" factor, Plaintiff argues that the arbitration provision is

buried on the sixteenth page of a twenty-page booklet. Gateway relied on Trend Homes,

Inc. v. Superior Court, 131 Cal.App.4th 950 (2005) to show that a provision that was on

the eighth page on a nine-page agreement, not in bold or uppercase, did not amount to surprise. However, <u>Trend Homes</u> is distinguishable as to the "surprise" factor because in that situation, "both the buyer and seller placed their initials immediately below the provision." <u>Id.</u> at 959. Here, the section of the booklet containing the arbitration agreement contained a heading, in bold, uppercase letters, indicating that there was a dispute resolution section below, and directing the reader to section five of the agreement. Section five was entitled "dispute resolution," and, after an explanation of the dispute resolution procedures, it contained the following language in bold:

> **You understand that, in the absence of this provision, You would have had a right to litigate through a court, including the right to litigate claims on a class-wide or class-action basis, and that You have expressly and knowingly waived those rights and agreed to resolve any Disputes through binding arbitration in accordance with the provisions of this paragraph.**

TAC Ex. A at 18. Plaintiff argues that he did not actually learn of the existence of this provision until after this litigation began. Gateway claims that Plaintiff could only have been surprised by the agreement if he had never read it, but that this is not a defense to the enforcement of the agreement. The case that Gateway relies on, <u>Madden v. Kaiser Found. Hosps.</u>, 17 Cal. 3d 699 (1976), states the general rule that "one who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument." <u>Id.</u> at 710; <u>see also</u> <u>Federico v. Frick</u>, 3 Cal.App.3d 872, 875 (1970) ("Failure to read an entire contract is not a basis for its revocation."). Here, since the arbitration provision is in a separate section, with its own heading, with some the most important language in bold, and with a notice in bold, uppercase letters directing a readers to that section for a discussion of the dispute resolution procedures, the "surprise" factor is not satisfied.

In conclusion, there is only a minimal degree of procedural unconscionability based on the "oppression" factor. As a result, for the arbitration agreement to be unconscionable Plaintiff needs to show a much higher degree of substantive unconscionability.

The substantive element focuses on "'overly harsh' or 'one-sided' results."

Armendariz, 24 Cal. 4th at 114.  Plaintiff argues that the arbitration agreement is one-sided based on the following: 1) the agreement requires that the proceedings be confidential; 2) the "repeat-player effect" at NAF would favor Gateway; and 3) the provision requires claimants to pay $250 in arbitration fees for a full hearing.[3]

> *[Further discussion of these factors and any others raised by Plaintiff will be entertained at the hearing.]*

C.  Whether Plaintiff's Claims Are Arbitrable

Plaintiff argues that his claims for injunctive relief are not subject to arbitration as a matter of law.  Plaintiff relies on Broughton v. Cigna Healthplans, 21 Cal. 4th 1066, 1079-80 (1999) (holding that when a plaintiff "is functioning as a private attorney general, enjoining future deceptive practices on behalf of the general public," "arbitration is not a suitable forum, and the Legislature did not intend this type of injunctive relief to be arbitrated").  See also Cruz v. PacifiCare Health Sys., Inc., 30 Cal. 4th 303, 307 (2003) (concluding that Broughton is still good law despite certain Supreme Court decisions, and extending Broughton to include claims to enjoin unfair competition under Cal. Bus. & Prof. Code § 17200).

Nevertheless, Plaintiff has not addressed the effect, if any, that Concepcion has on that line of cases.  In Concepcion, the majority stated that "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA."  Concepcion, 131 S. Ct. at 1747.  Some district courts have relied on Concepcion to determine that the Broughton line of cases no longer applies.  See Arellano v. T-Mobile USA, Inc., No. C 10–05663 WHA, 2011 U.S. Dist. LEXIS 52142, at *4 (N.D. Cal. May 16, 2011) ("The recent Concepcion decision compels preemption"; "the [FAA] preempts California's exemption of claims for public injunctive relief from arbitration, at least for actions in federal court."); Zarandi v. Alliance Data Systems Corp., No. CV 10–8309 DSF (JCGx), 2011 U.S. Dist. LEXIS 54602, at *4-5 (C.D. Cal. May 9, 2011) (explaining that the argument that some claims

---

[3] Plaintiff also argues that the phrase "YOU and Gateway will agree on another arbitration forum if NAF ceases operation" highlights the one-sidedness of the agreement.  However, it is not clear how allowing both parties to a dispute to agree on another arbitration forum shows that the agreement is one-sided.

are not subject to arbitration under California law "is no longer viable after <u>Concepcion</u>" because the "FAA preempts state law to the extent it prohibits arbitration of a particular type of claim"). Since the language in <u>Conception</u> seems to clearly address this issue, the Court would conclude that Plaintiff's claims are arbitrable.[4]

### **Motion 2**

#### A. <u>Whether NEW Has Waived its Right to Compel Arbitration</u>

As explained above in the analysis of whether Gateway had waived its right to compel arbitration, NEW also did not have an existing right to compel arbitration since at least April 27, 2010, the time when <u>Stolt-Nielsen</u> was decided. NEW was not added as a defendant until the second amended class action complaint on November 23, 2010. Therefore, NEW did not have a right to compel arbitration at that time. Moreover, rather than wait until <u>Concepcion</u> was decided, NEW both joined Gateway's January 2011 motion and filed its own motion in February 2011. Consequently, NEW has not waived its contractual right to compel arbitration.

#### B. <u>Whether the Arbitration Agreement is Valid</u>

If the above analysis shows that the arbitration agreement is not unconscionable, the only remaining question is whether NEW, who is not a party to the agreement, should be able to enforce it. The arbitration agreement provides that "the term "Gateway" means Gateway, Inc. . . . and/or any third party who provides products or services purchased from or distributed by Gateway . . . ." TAC Ex. A at 18. Here, NEW was responsible for administering the ESP that Gateway was selling. Thus, NEW is a third party who provides a service purchased by Plaintiff from Gateway. Consequently, given that NEW would be included in the term "Gateway" for purposes of the arbitration agreement, NEW can enforce the agreement against Plaintiff. Therefore, the Court would grant NEW's motion to compel arbitration.

#### C. <u>Whether Plaintiff's Claims Are Arbitrable</u>

---

[4] Plaintiff also argues that his claims are not arbitrable because Gateway cannot rely on the arbitration provision because Gateway is not a party to the ESP. Nevertheless, this argument fails because Gateway is a party to the arbitration agreement, and the agreement establishes that "any Dispute between You and Gateway will be resolved exclusively and finally by arbitration." TAC Ex A at 18.

The analysis for Gateway's motion shows that Plaintiff's claims are arbitrable based on the <u>Conception</u> decision.  The same analysis applies for Plaintiff's claims against NEW.  Therefore, the Court would conclude that Plaintiff's claims against NEW are arbitrable.[5]

---

[5] Plaintiff is also arguing that his claims against NEW are not arbitrable because, since Gateway is not a party to the ESP, NEW cannot rely on the arbitration provision.  However, as explained above, the arbitration agreement includes any third party who provides products or services purchased from or distributed by Gateway.  Thus, NEW is included in the agreement because it was providing a service purchased from Gateway.

**EXHIBIT A-2**

1       CENTRAL DISTRICT OF CALIFORNIA

2              WESTERN DIVISION

3    THE HON. GEORGE H. WU, JUDGE PRESIDING

4

5    PETER WILSON, et al.,           )
                                     )
6                     Plaintiffs,    )
                                     )
7              vs.                   )  No. CV 09-07560-GW
                                     )
8    GATEWAY INC., et al.,           )
                                     )
9                     Defendants.    )
     _____)

10

11

12

13

14    REPORTER'S TRANSCRIPT OF TELEPHONIC PROCEEDINGS

15             Los Angeles, California

16        Thursday, April 21, 2011; 9:58 A.M.

17

18

19

20

21

22           Wil S. Wilcox, CSR 9178
          Official U.S. District Court Reporter
23          312 North Spring Street, # 432-A
            Los Angeles, California 90012
24            Phone: (213) 290-2849

25

2

```
1    APPEARANCES OF COUNSEL:

2

3    FOR THE PLAINTIFF:  MEISELMAN DENLEA PACKMAN CARTON & EBERZ PC
                         BY: JEFFREY I. CARTON
4                        ATTORNEY AT LAW
                         1311 Mamaroneck Avenue
5                        White Plains, NY 10605
                         914-517-5000
6                        Fax: 914-517-5015
                         Email: lbrocchini@mdpcelaw.com
7

8    FOR THE PLAINTIFF:  CALDWELL LESLIE AND PROCTOR PC
                         By:  ROBYN C. CROWTHER
9                        ATTORNEY AT LAW
                         1000 Wilshire Boulevard Suite 600
10                       Los Angeles, CA 90017-2463
                         213-629-9040
11                       Fax: 213-629-9022
                         Email: obrien@caldwell-leslie.com
12

13   FOR THE DEFENDANTS: JONES DAY
                         BY:  PAUL F. RAFFERTY
14                       ATTORNEY AT LAW
                         3161 Michelson Drive
15                       Suite 800
                         Irvine, CA 92612
16                       949-553-7588
                         Fax: 949-553-7539
17                       Email: pfrafferty@jonesday.com

18

19   FOR THE DEFENDANTS: GIBSON DUNN AND CRUTCHER LLP
                         BY: GAIL E. LEES
20                       ATTORNEY AT LAW
                         333 South Grand Avenue 50th
21                       Floor
                         Los Angeles, CA 90071-3197
22                       213-229-7000
                         Fax: 213-229-7520
23                       Email: glees@gibsondunn.com

24

25
```

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

3

```
 1   APPEARANCES OF COUNSEL: (Continued

 2

 3   FOR THE DEFENDANTS: PAUL HASTINGS JANOFSKY & WALKER LLP
                        BY: DAVID M. WALSH
 4                      AND: ADAM M. SEVELL
                        ATTORNEYS AT LAW
 5                      515 South Flower Street 25th Floor
                        Los Angeles, CA 90071
 6                      213-683-6000
                        Fax: 213-627-0705
 7                      Email:  Davidwalsh@paulhastings.com
                                Adamsevell@paulhastings.com
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

4

```
 1        LOS ANGELES, CA.; THURSDAY, APRIL 21, 2011; 9:58 A.M.
 2                              -oOo-
 3             THE COURT:  All right.  Let me call the matter of
 4    Wilson versus Gateway.
 5             Are you guys finished reading the stuff, either
 6    yes or no?  Has everybody finished reading it?
 7             MR. RAFFERTY:  Yes, Your Honor.  I think so.
 8             THE COURT:  Let me have appearance of counsel.
 9             MR. CARTON:  Good morning, Your Honor.
10    Jeff Carton for the plaintiff Wilson and the putative class
11    of representatives that he seeks to represent.
12             THE COURT:  All right.
13             MS. CROWTHER:  And Robin Crowther, also on behalf
14    of the plaintiffs, Your Honor.  Good morning.
15             MR. RAFFERTY:  Good morning, Your Honor.
16    Paul Rafferty, Jones Day for Gateway.
17             THE COURT:  All right.
18             MR. WALSH:  Good morning, Your Honor.  Dave Walsh
19    and Adam Sevell of Paul Hastings on behalf of NEW.
20             THE COURT:  Okay.
21             MS. LEES:  Good morning, Your Honor.  Gail Lees on
22    behalf of the Chartis entities who are not parties to any of
23    today's motions.
24             THE COURT:  All right.  There are, I think, four
25    motions that are on.  I have a couple of questions.  I
```

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

5

1   issued tentatives, but they are tentatives.

2          The question that I have is, let me ask the

3   plaintiff's counsel.  Exhibit A that is attached to the

4   plaintiff's opposition, is Exhibit A -- oh, actually, maybe

5   it's not that one.

6          MR. CARTON:  I think that would be to the

7   complaint.  Are you referencing these business service

8   plans?

9          THE COURT:  Yeah.  Is that the plaintiff's in fact

10  extended service plan or is it just a generic one?

11         MR. CARTON:  That's a good question, Your Honor.

12  I believe it was produced in discovery as --

13         MR. RAFFERTY:  It is the former.  It is the exact

14  plan.

15         MR. CARTON:  I think it's actually --

16         THE COURT:  So, in other words, it is the one that

17  the plaintiff received?

18         MR. RAFFERTY:  That's correct, Your Honor.

19         MR. CARTON:  The one that Mr. Wilson received as

20  well as anyone else who purchased a warranty at that time.

21         THE COURT:  Okay.  All right.  Then the second

22  question I have is, how does the plaintiff -- in other

23  words, it seems to me that, as I understand it at this point

24  in time according to the allegations and the subsequent

25  filing, there was a service contract administrative

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

6

1    agreement between NEW and, I guess, Gateway Computer, Inc.,
2    GCI, effective October 1st, 2004, and then that was for a
3    four-year period of time with automatic two-year extensions,
4    unless one side or the other indicated a withdrawal.
5            And then there was a May 31st, 2007, reverse
6    service contract administrative agreement whereby NEW
7    contracted with GM LLC., to perform the services as the
8    obligor.
9            And then there was also on that same date a second
10   amendment to the service contract administrative agreement
11   whereby it was indicated that GCI was sold to MPC and that
12   GCI assigned the service contract administrative agreement
13   to GM LLC.  And so, therefore, for all intents and purposes,
14   since May 31st, 2007, the parties to the contract, the
15   service contract administrative agreement would be NEW and
16   GM LLC.
17           But I don't understand how the plaintiff gets
18   involved in those contracts, because my understanding of
19   what Exhibit A says and is doesn't refer to the service
20   contract administrative agreement, unless I'm missing
21   something.
22           MR. CARTON:  No, but you may be conflating
23   different elements of the case.
24           THE COURT:  Okay.
25           MR. CARTON:  When Mr. Wilson buys his computer --

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

7

1      THE COURT:  Yes.

2      MR. CARTON:  -- he is given a single 20-page

3  integrated document, which is Exhibit A to the complaint --

4      THE COURT:  Yes.

5      MR. CARTON:  -- denominated Gateway business

6  service plan.  That agreement contains not only the initial

7  limited warranty, which accompanies the purchase of any

8  computer, but certain additional extended warranties that

9  various consumers like Mr. Wilson are eligible to purchase.

10      THE COURT:  Yes.

11      MR. CARTON:  The machinations or

12  interrelationships that subsequently arise as between NEW,

13  GCI, GM, Gateway, and ultimately, MPC, do not involve

14  Mr. Wilson.

15      THE COURT:  That's right, which is the problem

16  because it seems to me that, as I understand the Gateway

17  business service plans which is Exhibit A, the obligor is

18  not Gateway but the obligor is AGI -- sorry, AIGWG in most

19  states except California, and in California it's

20  AIG Warranty Services and Insurance Agency.

21      MR. CARTON:  And I would respectfully suggest,

22  Your Honor, that's where the court goes in the direction,

23  but it is not germane to the litigation nor relevant to the

24  motions.

25      THE COURT:  Why?  Let me just put it this way.  In

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

8

1   other words, you have to have a contract in order to give

2   rise to contractual obligations.

3            MR. CARTON:  To which there are multiple parties.

4            THE COURT:  Yes.

5            MR. CARTON:  Those parties obviously include

6   Gateway.  They include Gateway's obligor, AIG, and they

7   include Mr. Wilson.

8            THE COURT:  Yes.

9            MR. CARTON:  The breach of that contract arises

10  when Gateway purports to assign, sell, transfer -- it almost

11  does not matter which words we use -- to MPC those

12  obligations, which effectively renders that warranty

13  worthless because there is no entity capable of servicing

14  the warranty.

15           THE COURT:  The problem is, is that you have not

16  demonstrated that the sale of what GCI sold to MPC covers

17  your client.  That's the problem.

18           MR. CARTON:  And I respectfully disagree,

19  Your Honor.  How else would MPC announce at the time of its

20  financial difficulties that it had assumed all of the

21  warranty obligations and other obligations of the

22  professional business if those obligations had not been

23  transferred to it by Gateway in the first instance?

24           The very provision in the contract, obviously,

25  which has underlaid much of the litigation says that Gateway

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

9

1    may assign this agreement and/or any associated service

2    plan.  You have to look at those service plans as an

3    integrated entirety.

4         How else is it that Gateway would then defer or

5    refer customers calling with respect to what they believe is

6    Gateway's warranty obligation to MPC?  How else would MPC

7    publicly announce that they had assumed those obligations?

8    And how else would Gateway have transferred them?  Either

9    through an assignment or a sale.

10        Now, we challenge the conscionability or

11   unconscionability of the assignment provision, but that's

12   the breach of contract that Mr. Wilson absolutely has

13   standing to assert and it's a standing --

14        THE COURT:  Let me put it this way.  I obviously

15   agree with you in the sense that if, in fact, you could

16   demonstrate that Wilson's extended service plan that's

17   described in Exhibit A is covered by the service contract

18   administrative agreement which is Exhibit B, then I would

19   agree with you that Wilson probably has a contractual claim

20   as against the defendants -- or, well, defendant NEW and

21   defendant Gateway.

22        The problem that I have is that since this service

23   contract administrative agreement was in existence starting

24   on October 1st of 2004, and we have a document which

25   apparently Wilson got when he purchased the computer in 2005

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

10

1    which doesn't reference the service contract administrative

2    agreement in any way, but instead refers to an obligor as

3    being AIG in one of its variations, I don't understand how

4    Wilson gets to be in or involved in the service contract

5    administrative agreement.

6         MR. CARTON:  Well, again, Wilson only needs to

7    allege as with whom or which entity it is that he

8    contracted, which he has done.  How they then exercise their

9    rights to provide the service, the contractual obligations

10   which Gateway commits to providing, how they work that out

11   amongst themselves is what they are currently fighting

12   about.

13        If NEW and Gateway each say that the other is

14   responsible to Mr. Wilson, how is Mr. Wilson not entitled to

15   say, well, it's got to be one of you, but regardless, the

16   contract that I received at the time of purchase is the

17   contract under which I'm asserting my rights to contend that

18   when you transferred your contractual obligations to an

19   entity that could no longer perform them, you breached that

20   contract, and you can do that either on an implied or an

21   express basis.

22        THE COURT:  Let me hear from the defense.  What's

23   the defense response?

24        MR. RAFFERTY:  Speaking for Gateway, Your Honor,

25   first, the tentatives with respect to the Rule 12 motions do

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

11

1   accurately summarize in the first three pages the case.  I

2   think the court has it exactly.

3           With respect to the court's question, the court is

4   also correct that the SCAA and what even occurred subsequent

5   to the sale of MPC is not at all relevant to Wilson's

6   contract claim.

7           THE COURT:  Sorry.  When you say the SC--

8           MR. RAFFERTY:  The service contract administration

9   agreement.  We call it the SCAA.  That's the document that

10  the court has inquired of.

11          THE COURT:  All right.

12          MR. RAFFERTY:  After the sale of the professional

13  business to MPC, nothing at all changed with respect to

14  Wilson's alleged instant contract claims.  At that time, he

15  continued to have only contract claim against the AIG

16  entities now Chartis to continue to provide extended

17  service, plans which were originally provided by NEW.

18          Nothing within the SCAA changes anything nor

19  implicates --

20          THE COURT:  Well, no.  If you concede at any point

21  that Wilson's service plan was subject to NEC, then I think

22  plaintiff is right because there is no provision that -- in

23  Exhibit A which references NEW.

24          But if, for some reason, at any point in time

25  Wilson gets the benefit or NEW becomes the obligor for those

Los Angeles, California, Thursday, April 21, 2011; 9:39 A.M.

1  service requirements, then we have these series of

2  contracts, starting with the service contract administrative

3  agreement, then the reverse service contract administrative

4  agreement, then the second amendment to the service contract

5  administrative agreement, which you can trace back to

6  Gateway, or at least GM LLC., that has a responsibility to

7  Wilson.

8          MR. RAFFERTY:  No, that's not what I said.

9  Chartis, the AIG entities, are the only party to the

10  contract, which is the extended service plan.

11          The SCAA, the second amendment, all of the things

12  that occurred in 2007, 2008, that is a separate issue

13  related to NEW and Gateway's dispute as to who should have

14  provided service under the ESP plan existing between Wilson

15  and the AIG entities.

16          THE COURT:  But I don't understand.  Why would NEW

17  and Gateway dispute who should have provided the services if

18  Chartis should have provided -- been the one that provided

19  the services.  I don't understand why NEW and Gateway aren't

20  pointing at Chartis and just simply saying it's Chartis'

21  obligation.  Why are you guys fighting with each other about

22  it?  Because if you guys fight about it, it seems to me that

23  plaintiff is right.

24          MR. RAFFERTY:  Well, actually, we sued Chartis

25  twice and Chartis is still in the wings, which is why they

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

13

1   are here today.  Chartis is a contracting party who arguably

2   should have provided services under the ESP, so we allege.

3   However, that doesn't make Gateway a party to the ESP.

4           THE COURT:  Let me stop.  We are only talking now

5   about the contract causes of action.  I'm not talking now

6   about the other causes of action because I don't understand

7   why, if Chartis is the obligated party in terms of repairs,

8   why is Gateway referring Wilson to MPC?

9           MR. CARTON:  Why was Gateway performing the

10  repairs in the first instance?  Chartis is really more of a

11  guarantor.  It's an insurer to whom, obviously, Gateway

12  tries to, in effect, leverage their potential exposure.  But

13  for a period of time, Gateway's actually servicing the

14  contracts subject to whatever relationship they established

15  with NEW.

16          Your Honor, I come at this perhaps from a somewhat

17  more pedestrian approach, which is the very dialogue that we

18  are having now at the pleading stage, I think, goes in large

19  respect to what the ultimate outcome of their motion should

20  be.

21          THE COURT:  I would normally agree with you except

22  that I think there is a void in the pleadings which I'm

23  trying to figure out how Wilson gets to go after NEW and

24  Gateway when the service plan, which is apparently

25  Exhibit A, doesn't reference Gateway as being the obligor to

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

14

1    do the repairs.

2            MR. CARTON:  Can I just interject?  And I

3    apologize, but I think we are right at the critical juncture

4    because, again, I would suggest that Your Honor went a

5    bridge too far.  The breach of contract --

6            THE COURT:  Let me stop you.

7            MR. CARTON:  Okay.

8            THE COURT:  When you have a breach of contract

9    claim --

10           MR. CARTON:  Yes.

11           THE COURT:  -- you have to either include the

12   contract or state the operable terms of the contract.

13           MR. CARTON:  Correct.

14           THE COURT:  You haven't.

15           MR. CARTON:  The contract is the Gateway business

16   service plan's 20-page document.  That is the contract.

17   There are multiple parties to that contract.

18           THE COURT:  Well, actually, I only got 17 pages,

19   so if there is more than 17 pages . . .

20           MR. CARTON:  Well, 18 and 19 are blank.  It leads

21   to a back cover.

22           THE COURT:  Okay.

23           MR. CARTON:  So there is a 17-page contract.

24           THE COURT:  All right.

25           MR. CARTON:  There are multiple parties to that

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

15

1    contract.

2                    THE COURT:  But the parties are Gateway.

3                    MR. CARTON:  Gateway.

4                    THE COURT:  The purchaser.

5                    MR. CARTON:  Correct.

6                    THE COURT:  And AIG.

7                    MR. CARTON:  As an obligor.

8                    THE COURT:  In one of its forms.

9                    MR. CARTON:  Correct.

10                   THE COURT:  Yes.

11                   MR. CARTON:  We don't sue NEW on a breach of

12   contract basis.  There is no contractual claim that we

13   assert as against NEW.

14                   MR. RAFFERTY:  Because it only exists against AIG.

15                   MR. CARTON:  No, that's not true.

16                   THE COURT:  Let me just stop before we go to that

17   red herring.

18                   Let me ask.  Under the contract, Gateway is not

19   obligated to do anything because the obligor is AIG.  So

20   even though I understand that the plaintiff is saying that

21   Gateway breached the contract, I don't understand how

22   Gateway breached the contract.

23                   MR. CARTON:  By selling or transferring or

24   assigning the contract to MPC.  The breach of contract that

25   we allege is not Chartis's failure to repair the computer.

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

16

1    THE COURT: Let me stop you. Where is it that GCI

2  sold the contract to MPC? I thought that GCI was sold to

3  MPC itself?

4    MR. RAFFERTY: Correct.

5    MR. CARTON: Together with the responsibilities

6  and obligations that exist in this contract.

7    THE COURT: So when did GCI get this obligation?

8  Because the obligation is not included in Exhibit A. That's

9  what I am saying.

10    MR. CARTON: That obligation arose as part of the

11  dealings as between Gateway and NEW.

12    THE COURT: That's the problem. I don't see that

13  in the complaint.

14    MR. CARTON: In the service contract and in the

15  reverse service contract. When they agreed as amongst

16  themselves how the actual service was going to be provided

17  and the mechanism for consumers to receive that service --

18    THE COURT: Okay. Let me just break it down a

19  little bit simpler. Gateway agrees that AIG is going to be

20  providing these services.

21    MR. CARTON: Gateway agrees that its going to have

22  obligations for a limited period of time --

23    THE COURT: No. Read the contract. AIG is the

24  obligor.

25    MR. CARTON: Correct. There is an initial limited

Los Angeles, California, Thursday, April 21, 2011; 9:39 A.M.

17

1    warranty.  Not everybody purchases the extended warranty.

2            THE COURT:  But your client did obtain the

3    extended warranty?

4            MR. CARTON:  He did.

5            THE COURT:  Okay.  And under the extended

6    warranty, in other words, I presume that you are talking

7    about that which is contained in Pages 3, 4, 5, 6, and 7,

8    and under that portion of the service plan, AIG is the

9    obligor?

10           MR. CARTON:  Extending assuming certain

11   obligations beyond those --

12           THE COURT:  You are not suing under the limited

13   warranty.  The limited warranty had already expired.

14           MR. CARTON:  I don't think you can separate the

15   two.  You can separate them temporally, but you can't

16   separate them in terms of the overall interrelationship

17   between the parties.

18           THE COURT:  Yes, you can because that's the whole

19   point of having an extended service plan.  In other words,

20   if the limited warranty covered that which was covered by

21   the extended service plan, nobody would buy an extended

22   service plan because it would be stupid.

23           MR. CARTON:  So, then, Your Honor, why is Gateway

24   reflecting on its books $60 million of potential liabilities

25   for extended warranties for a party to which Your Honor

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

18

1   would say is not a contract?

2           MR. WALSH:  That's not true.

3           MR. CARTON:  How does Gateway, Your Honor,

4   transfer those liabilities to either GCI or, ultimately, MPC

5   if it's not a party to the contract?

6           THE COURT:  That's what I want to know.

7           MR. CARTON:  That makes two of us.

8           THE COURT:  Well, you are presuming the fact.  In

9   other words, I don't presume the fact.  It might very well

10  be that --

11          MR. CARTON:  We've alleged it.  Your Honor, we've

12  alleged the party with whom we've contracted.  We've alleged

13  that that contractual obligation was transferred to another.

14          THE COURT:  But normally, again, that's why I'm

15  saying, you either include the contract or you include the

16  operative terms of the contract.  You've included the

17  contract.  I'm looking at the contract.  The contract

18  doesn't say what you are saying it says.

19          MR. CARTON:  But where else would Gateway seek the

20  permission to transfer its obligation to another entity

21  other than the provision that says it can assign this

22  agreement and/or any associated service plan.

23          THE COURT:  But what I don't understand is since

24  it's already assigned the obligation to AIG --

25          MR. CARTON:  It hasn't.

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

19

1    THE COURT:  It has here because AIG is the

2  administrator under this plan and the obligor.

3    MR. CARTON:  It's named AIG as the obligor and

4  administrator to a plan to which Gateway is the initial

5  contractual party.  Gateway has the ability to turn around

6  and seek the assistance of a third party with respect to the

7  administration and the service under these warranties.

8    THE COURT:  For example, the contract says we will

9  provide technical support to you for your personal computer

10  or server.  We is defined as the obligor, which is AIG.

11    MR. CARTON:  And yet it's Gateway's number.  It's

12  Gateway's personnel.  It's Gateway that's providing the

13  service together with whatever they can work out with NEW,

14  and it's Gateway that ultimately sends people.  Why isn't

15  Gateway saying then, before the sale to MPC, we had nothing

16  to do with your extended warranty?  They are not saying

17  that.

18    THE COURT:  Well, that may be a basis for a claim,

19  but we are talking about a breach of contract claim.

20    MR. CARTON:  Well, I think that would certainly

21  give rise to a jury's ability to take away from this

22  document and the party's behavior that there was at least an

23  implied contract, if not an express one.

24    Again, I think at the pleading stage, Your Honor,

25  I have more than amply alleged sufficient facts for which a

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

20

1   jury could contend that the reasonable consumer believes to

2   have entered into a contract with Gateway for extended

3   service beyond the period --

4           THE COURT:  Did you make a claim for promissory

5   estoppel?

6           MR. CARTON:  We have not alleged one at this time.

7           THE COURT:  I think you are attempting to argue

8   promissory estoppel.  You are not arguing breach of

9   contract.

10          MR. CARTON:  No, I'm arguing breach of implied

11  contract.

12          THE COURT:  But in order to have an implied

13  contract, the terms have to be -- you have to identify what

14  the terms are, and I don't understand what the terms are of

15  the implied contract.

16          MR. RAFFERTY:  Your Honor, the court also did

17  address specifically the conflating of the extended warranty

18  back in the limited warranty.  It addressed it at Page 3 of

19  its tentative directly and concludes that it rejected this

20  theory at the last hearing and it still does not make sense.

21  We would agree with that.

22          THE COURT:  Again, let's move on from the breach

23  of contract claims because I think, to my mind, there is a

24  problem still.  But it seems to me that the plaintiffs do

25  have claims.  You have a 17200 claim.

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

21

```
 1              MR. CARTON:  UCL.
 2              THE COURT:  And the defendant's, apparently, are
 3    not challenging that, and there potentially are claims also
 4    under the --
 5              MR. CARTON:  CLRA.
 6              THE COURT:  Yes.  So this case is definitely going
 7    forward at some point.  It's just a question of the manner
 8    in which it goes forward.
 9              MR. CARTON:  We appreciate that, but, again,
10    Your Honor, we would like the opportunity to take it
11    forward, not only with respect to the UCL, but on a breach
12    of contract basis as well.  I think we've alleged more than
13    sufficient facts and circumstances from which the court can
14    conclude that there is, at a minimum, an implied contract.
15              THE COURT:  We are going around and around
16    because, again, the implied contract has to have terms.
17    Again, I don't see the --
18              MR. CARTON:  I don't want Your Honor getting more
19    frustrated.
20              THE COURT:  Well --
21              MR. CARTON:  Let me ask perhaps a rhetorical
22    question, Your Honor.
23              THE COURT:  Yes.
24              MR. RAFFERTY:  Don't answer it, then.
25              MR. CARTON:  No advisory is needed.
```

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

22

1    MR. RAFFERTY:  It's in controversy, Your Honor.

2    MR. CARTON:  Can Your Honor at least leave open

3    the possibility that a breach of contract could arise if

4    Gateway were to exercise some contractual right that it

5    believed it had vis-a-vis Wilson and the class members when

6    it sold or transferred or assigned the obligations to

7    service extended warranties to a third party?

8    THE COURT:  Let me just put it this way:  I've

9    already indicated that if Wilson could in some way establish

10   that his situation falls within the service contract

11   administrative agreement, the answer to your question would

12   be yes because I can trace from that to the reverse service

13   contract administrative agreement which does obligate

14   Gateway to do the services.

15   Once that happens then, yes, they are obligated,

16   and they are still obligated because under the amendment to

17   the service contract administrative agreement, it basically

18   makes the contract there between GM LLC. and NEW, so, yes, I

19   can understand that.

20   MR. CARTON:  But doesn't that effectively answer

21   the question then?

22   THE COURT:  No.

23   MR. CARTON:  Why would GM and NEW be negotiating

24   the service and administration of contracts if Gateway had

25   no obligation and simply were to say this is all

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

23

1   Chartis/AIG?  Does that make sense?  That makes no sense.

2           THE COURT:  Again, it's your burden to allege a

3   contract.  I can see situations where, again, it gives rise

4   to -- I mean, that's part and part to your 17200 claim and

5   part and part as to your other claim, the noncontractual

6   claim.

7           But, again, breach of contract is supposed to be

8   something that's fairly specific, and you have to show the

9   existence of a contract and what the terms are and how the

10  defendant breached the terms.  I don't see how Gateway could

11  have breached a term in this situation by not providing

12  services which it was not obligated to provide under the

13   .xhibit A.

14          MR. CARTON:  And at the risk of repetition, can I

15  ask you to frame the breach differently?  Don't frame the

16  breach as not providing services.  Frame the breach as

17  selling or transferring the contractual obligation to an

18  entity that's incapable of providing it.  That's the breach.

19  If Gateway --

20          THE COURT:  But that assumes a fact not in

21  evidence.  It assumes their obligation under the service

22  agreement.  If they don't have an obligation under the

23  service agreement, it doesn't make any difference.  It may

24  have been bad, but it's not bad to you, to your client

25  because your client wasn't covered.

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

24

1          That's the problem.  If your client is covered

2    under the situation, then I've already indicated there would

3    be no problem.

4          MR. CARTON:  How could my client not be covered?

5          THE COURT:  He's not --

6          MR. CARTON:  He calls and is told that he's got to

7    go to MPC.

8          THE COURT:  That doesn't create a contract, unless

9    maybe you want to argue some sort of promissory estoppel.

10   But it's not a contract.  It's not a breach of contract.

11   That's what I'm saying, apparently.

12         MR. CARTON:  We respectfully disagree and would

13   ask perhaps for one more opportunity to replead that

14   contractual basis.

15         THE COURT:  Let me think about it.

16         All right.  Let's go to the other portions,

17   though.  I've pretty much indicated my other rulings insofar

18   as the other portions of the third amended complaint.

19         Does anybody want to argue those other things?

20         MR. CARTON:  My colleague would like to address

21   the CLRA aspect, Your Honor.

22         THE COURT:  All right.

23         MS. CROWTHER:  Yes, Your Honor.  Good morning.

24   Robin Crowther.

25         The CLRA claims are alleged against both Gateway

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

25

1    and NEW and your tentative leaves open the possibility of

2    allowing us to proceed under A19 of the CLRA, which is the

3    insertion of an unconscionable assignment provision, but

4    seems to indicate that you don't believe that

5    representations made after the time of sale can support a

6    CLRA claim, and that's the issue that I'd like to take up.

7             THE COURT:  Okay.

8             MS. CROWTHER:  The CLRA does not limit its

9    application to conduct that induces somebody to buy

10   something or to lease something and stop at that point.  And

11   the reason we know that is when you look at the definitions

12   that apply under the CLRA, the CLRA governs transactions

13   that are intended to or do result in a sale or a lease to a

14   consumer.  So what's critical is the definition of

15   transaction, and that appears in Section 1761E of the

16   Civil Code.

17            The transaction is the making of or performance

18   pursuant to an agreement.  It is not limited to the making

19   of.  And, in fact, certain portions of the CLRA only apply

20   after the sale.

21            For example, one provision of the CLRA says it's

22   illegal to make a representation that a product or service

23   contains obligations not previously represented to be so.

24   There has to be predicate interaction between the consumer

25   and someone before that section would even apply.

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

26

1    And then you look at 1761E and it says that
2    transaction includes the performance pursuant to an
3    agreement that is intended to or does result in a sale or a
4    lease to a consumer --
5        THE COURT:  Let me stop you.  Doesn't the CLRA --
6    you have to fall within one of the subdivisions of A; in
7    other words, A14, A16 or A19?
8        MS. CROWTHER:  All of those apply to transactions,
9    yes.
10        THE COURT:  Okay.  Then, how does your client's
11    situation fall within either A14 or A16, which is what's
12    specifically addressed?  I mean, I understand your argument
13    about transactions generally, but A14 is something that's
14    very specific.  A16 is something that's very specific.  How
15    does your client fall within 14 or 16?
16        MS. CROWTHER:  Because in 14, it's 14 that is the
17    representation of rights, remedies or obligations which
18    something does not have.  When Wilson called Gateway, he was
19    told that he had to go to MPC to get service under his
20    extended warranty plan and that Gateway could not service
21    it.  That's wrong.
22        The assignment between Gateway and MPC was
23    unconscionable and not enforceable, and what happens under
24    the law is that Gateway reclaimed the obligation that it had
25    before.

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

27

1      So when Wilson called Gateway and said, sorry,
2   what they actually said at one point was we can't help you.
3   I think it was, it sucks to be you.  We are no longer able
4   or obligated to provide you with any service.  That was
5   wrong.  That was a false representation.  And it was in the
6   performance of the agreement that Wilson entered for
7   extended warranty service.  It violated A14.

8      For A16, A16 says you violate the CLRA when you
9   represent that goods or services are supplied in accordance
10  with previous representations.  At times, the third amended
11  complaint alleges that Gateway told Wilson that MPC would
12  service his warranty and that his rights and remedies
13  remained unaffected.  Not true.  MPC was belly up.  Couldn't
14  service him at that time.

15      In addition, Gateway said you can't look to
16  Gateway to provide you with service.  Not true.  The
17  assignment was unconscionable and, therefore, Gateway
18  remained obligated to provide service to Wilson.

19      THE COURT:  All right.  Let me hear a response
20  from the defense.

21      MR. WALSH:  Your Honor, we will submit on the
22  overwhelming --

23      THE COURT:  I want you to respond to her argument.

24      MR. WALSH:  Well, we call those breach of
25  contracts.  When somebody doesn't perform as they promise to

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

28

1  perform after the contract is entered into, we call that

2  breach of contract.

3          In this case there is no allegations of any

4  representation or misrepresentations made at the time of

5  sale.  And if respected counsel's argument were to prevail,

6  then, every breach of contract would necessarily if you

7  breached your contract after entering into it would become a

8  CLRA claim.  And that's not the intent.

9          MR. RAFFERTY:  My two cents, Your Honor.

10          THE COURT:  Yes.

11          MR. RAFFERTY:  I think the court adequately

12  summarized these arguments that were in the briefing.

13  Within Page 6 of its tentative it concluded, and I think

14  it's absolutely correct, it states:  "In a January 2011

15  order, this court itself referred to language in cases

16  indicating that conduct occurring after the sale of a

17  product cannot constitute deceptive acts intended to result

18  in the sale or lease of goods or services under the CLRA,"

19  citing to the Harlan case.  That's also supported by the

20  Kent case.

21          That's correct.  I think what NEW is saying now is

22  if we are hooked in on the last prong for CLRA, we might as

23  well submit and fight this out another day.  But the court

24  is absolutely right that these first two exceptions should

25  not apply.

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

29

1     THE COURT:  I would agree.

2     MS. CROWTHER:  Can I address Harlan briefly?

3     THE COURT:  Sure.

4     MS. CROWTHER:  Harlan is a decision by a district

5  court judge in the Southern District of California.  It's

6  useful, but not binding.

7     THE COURT:  That's true, unless it's persuasive.

8     MS. CROWTHER:  But it's also incorrect.  The

9  analysis of the CLRA claim takes place in one paragraph.  It

10  doesn't cite to anything except 1770A.  And what that court

11  overlooked, Your Honor, is the definition of transaction in

12  1761E that applies to performance.

13     The CLRA does not stop at the time the consumer

14  buys the product, especially here when what the consumer

15  purchased was extended service.  If there are

16  misrepresentations that are made to the consumer over the

17  lifetime of that agreement, they violate the CLRA.

18     And the misrepresentations here are we are not

19  obligated to provide you service.  And you addressed the

20  issue of reliance.  Of course the consumers relied on that

21  statement.  How do you not rely on, we are not going to help

22  you?  They were all told, not Gateway's problem.  That

23  statement told to each one of them was wrong and it was part

24  of the performance of the extended service plan.  And we

25  have sufficiently alleged that those --

Los Angeles, California, Thursday, April 21, 2011, 9:39 A.M.

30

1          THE COURT:  Let me stop you.  I understand your

2    position.  Anything else?

3          MS. CROWTHER:  If we are going to move on from the

4    CLRA, then I'd like to talk about A19.  I'm not sure from

5    your tentative whether you would allow us to proceed under

6    the CLRA under A19 or whether --

7          THE COURT:  I indicated my tentative is to allow

8    you to proceed under A19.

9          MS. CROWTHER:  Then that's as persuasive as I can

10   get.

11         MR. RAFFERTY:  Your Honor, can I address the A19

12   quickly?

13         THE COURT:  Sure.

14         MR. RAFFERTY:  I know we are way behind schedule

15   here.

16         I want to talk about A19 quickly in light of the

17   discussion you had between counsel a few minutes ago.  The

18   assignment provision that everyone is complaining about is

19   in the ESP, correct?  The ESP, we are not a party.  NEW is

20   not a party to the ESP.  Gateway is not a party to the ESP.

21         So the argument that we at NEW wrote that

22   assignment provision and then somehow -- I think the hook

23   and you said it was a very, very, very conditional hook or

24   however you -- and then allowed Gateway to exercise it flies

25   in the face of your earlier tentative determinations that

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

31

```
1  Gateway isn't able to use that assignment provision because
2  it's not a party to the contract in which the provision
3  appears.
4          So it would seem that A19 does not provide any
5  kind of basis in this scenario because the claim was alleged
6  against Gateway and NEW and neither of them acted using that
7  provision.
8          THE COURT:  Anything else?
9          MR. RAFFERTY:  No, Your Honor.
10         THE COURT:  Okay.  I will consider the motion to
11 dismiss some more.
12         Insofar as the motion to compel arbitration, the
13 motion to strike class allegations, I will not strike the
14 class allegations at this point in time.
15         At some point in time, if the plaintiff wants to
16 move for a class certification, he will have to move for
17 class certification, but the problem is that we still don't
18 know what this case is about yet and so I'm not going to
19 preclude him at this point in time because I don't know
20 what's going to be left in this case.
21         Insofar as the motion to compel arbitration,
22 again, it's kind of late.  Although, I suppose NEW is going
23 to claim that really they weren't really involved in this
24 case until fairly recently.  I guess that the stronger it is
25 that there is a contract out there, if that contract is one
```

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

32

1   that has an arbitration provision, then I guess they stake

2   out a position that the matter should be arbitrated.

3           But then, obviously, then it comes into the issue

4   about the Supreme Court's decision in Concepcion and whether

5   or not that's going to go -- how that's going to go and who

6   knows how that's going to go.  It's something that's in the

7   works and in the works and in the works.

8           So I'm not going to grant the motion to compel at

9   this point in time, but I'm not going to strike it at this

10  point in time either.

11          Again, what I want to do is I will address that

12  issue because I think how I address that issue will depend

13  in part how I rule ultimately on the issue of whether there

14  is a breach of contract available to the plaintiff, and if

15  there is, then I will re-entertain that issue again at that

16  point in time.

17          If there is not, then let me ask.  If there is no

18  breach of contract, why would there be an arbitration

19  provision?

20          MR. CARTON:  Well, if I could just -- before you

21  even get to that level.  There is no breach of contract

22  alleged as against NEW.  So, again, I think that that is a

23  slightly different way to analyze the situation.  We don't

24  contend that NEW had a contractual right for which we are

25  seeking relief affirmatively on a breach of contract basis.

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

33

1      THE COURT:  Well, but if, in fact, the original

2  contract was between NEW and Gateway such that NEW agreed to

3  provide the computer repair services, et cetera, et cetera,

4  then NEW had the obligation.

5      Thereafter, however, it and GM LLC. entered into a

6  reverse contract administrative agreement which obligated

7  GM LLC. to conduct these repairs.

8      MR. CARTON:  But Wilson was a party to neither the

9  SCAA or the reverse SCAA.

10      THE COURT:  The more you say that the more you say

11  that he does not have a contractual action against anybody

12  in this matter.

13      MR. CARTON:  I don't think so.  Again, I really

14  think there is a separate line concerning the breach of

15  contract that Wilson is entitled to allege against Gateway

16  as compared or contrasted with NEW's right to assert a

17  contractual provision to which it's not a party.

18      THE COURT:  If the contract you are referring to

19  does not obligate Gateway to do the repairs, then the fact

20  that they don't do the repairs is not a breach.

21      MR. CARTON:  But if Gateway has the right under

22  the contract to transfer that obligation to another --

23      THE COURT:  I don't understand how Gateway can

24  transfer an obligation which it does not have to someone

25  else.  In other words, Gateway would have to reassume the

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

34

```
 1    obligation itself.
 2              MR. CARTON:  Unless you interpret the extended --
 3    the business service plans as an integrated whole with
 4    multiple parties --
 5              THE COURT:  Yes.
 6              MR. CARTON:  -- with certain obligations that
 7    Gateway was able to contract away to others, certain of
 8    which it retained for itself.  And it retained the right.
 9    In its contract with Mr. Wilson, Gateway assertedly claimed
10    the right to assign, not only the limited warranty, but any
11    of the associated business service plans.
12              We contend that's an unconscionable provision.
13    But let's assume, for argument's sake, that that is a
14    contractual right that Gateway negotiated ostensibly with
15    Mr. Wilson and class members.
16              When Gateway now exercises that contractual right
17    in such a way to ultimately frustrate the very intention of
18    these extended service plans, it is breaching the contract.
19              MR. RAFFERTY:  That's a limited contract, a
20    limited warranty.
21              MR. CARTON:  Well, again, that's defense counsel's
22    argument that the limited warranty should stand on its own
23    separate and apart from the extended service plan.
24              It's the plaintiff's position, as we've alleged in
25    the third amended complaint, that this is a single
```

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

35

1   integrated warranty.  It's consecutively numbered in terms

2   of its pagination.  Each of the four plans incorporates by

3   reference terms and definitions that are found in the

4   others.

5          And so if you look at the breach of contract

6   through that narrow a prism, Gateway says I have a contract

7   with Mr. Wilson that gives me the right to transfer or

8   assign, not Mr. Wilson, just me, Gateway, I have the right

9   to assign this limited warranty and/or any associated

10  business service plans, that's my contractual right.

11         THE COURT:  Yes, but the problem is, is that the

12  breach is not as to the limited warranty.  The breach is as

13  to the extended warranty.

14         MR. CARTON:  Well, but, again, I think that is a

15  distinction with a difference that the court should not

16  draw, the plaintiff doesn't allege.  You can't draw a

17  distinction between subsets of an integrated whole.  There

18  is a single contract at the time of purchase.

19         THE COURT:  But you can trace the obligations even

20  of a consolidated contract, if you will, and you look at

21  what the obligations are, and if he's not suing on the basis

22  of a limited -- the limited warranty, you don't look at the

23  obligations of the limited warranty because they've already

24  expired.

25         MR. CARTON:  Look at it not so much as an

Los Angeles, California, Thursday, April 21, 2011; 9:39 A.M.

36

1   obligation than as a right or privilege of contract that

2   Gateway has exercised in such a way as to frustrate the

3   purpose of the contract.

4   　　　　THE COURT:  But it did not as to the limited

5   warranty portion and, therefore --

6   　　　　MR. CARTON:  But, again, the limited warranty,

7   Your Honor, has language that specifically extends beyond

8   the limited warranty to the extended warranties.  So you

9   can't say that the breach only concerns the limited warranty

10  because it doesn't.

11  　　　　THE COURT:  It does in terms of the facts of this

12  case as to him.

13  　　　　MR. CARTON:  Not so, because the very warranty

14  that was transferred was the extended warranty which Gateway

15  has.  The contractual right that Gateway ostensibly

16  exercised is found in a subset of the overall agreement.

17  　　　　MR. RAFFERTY:  We are not a party to it and we

18  didn't transfer it, Your Honor.

19  　　　　THE COURT:  Well, that is an issue, isn't it?

20  　　　　Okay.  Thank you.  I will take this matter under

21  submission and hopefully will do something in the near

22  future with it.

23  　　　　MR. CARTON:  Thank you, Your Honor.

24  　　　　MS. CROWTHER:  Thank you, Your Honor.

25  　　　　MR. RAFFERTY:  Thank you very much for the time.

Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.

37

```
 1          (At 10:43 a.m. proceedings were adjourned.)

 2

 3                        --oOo--

 4                       CERTIFICATE

 5

 6

 7          I hereby certify that pursuant to Section 753,

 8   Title 28, United States Code, the foregoing is a true and

 9   correct transcript of the stenographically reported

10   proceedings held in the above-entitled matter and that the

11   transcript page format is in conformance with the

12   regulations of the Judicial Conference of the United States.

13

14   Date:  August 11, 2011

15

16

17                        /S/____WIL S. WILCOX_____

18                        U.S. COURT REPORTER
                              CSR NO. 9178
19

20

21

22

23

24

25
```

**Los Angeles, California; Thursday, April 21, 2011; 9:39 A.M.**

# EXHIBIT A-3

1

1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA

3    WESTERN DIVISION

4    THE HONORABLE GEORGE H. WU, JUDGE PRESIDING

5

6    PETER WILSON,                        )
                                          )
7                      Plaintiff,         )
                                          )
8                                         )
           vs.                            )    No. CV 09-7560-GW-VBK
9                                         )
     GATEWAY, INC., et al.,               )
10                                        )
                     Defendants.          )
11   _____)

12

13

14

15           REPORTER'S TRANSCRIPT OF PROCEEDINGS

16

17                 Los Angeles, California

18          Thursday, July 21, 2011, 9:34 A.M.

19      Defendant Gateway's Motion to Compel Arbitration

20

21                          PAT CUNEO CSR 1600, CRR-CM
                            Official Reporter
22                          Roybal Federal Building
                            Room 181-E
23                          255 East Temple Street
                            Los Angeles, California 90012
24                          (213) 617-1817
                            grammacuneo@aol.com
25

```
 1    APPEARANCES OF COUNSEL:

 2    FOR THE PLAINTIFF:      CALDWELL, LESLIE & PROCTOR PC
                              BY:  ROBYN C. CROWTHER, ATTORNEY AT LAW
 3                            and  JEANNE A. FUGATE, ATTORNEY AT LAW
                              1000 Wilshire Boulevard
 4                            Suite 600
                              Los Angeles, California  90017-2463
 5                            (213) 629-9040
                              crowther@caldwell-leslie.com
 6                            fugate@caldwell-leslie.com

 7    FOR THE DEFENDANT:      JONES DAY
                              BY:  PAUL F. RAFFERTY, ATTORNEY AT LAW
 8                            3161 Michelson Drive
                              Suite 800
 9                            Irvine, California  92612
                              (949) 553-7855
10                            prafferty@jonesday.com

11    FOR THE DEFENDANT:      PAUL, HASTINGS, JANOFSKY & WALKER LLP
                              BY:  DAVID M. WALSH, ATTORNEY AT LAW
12                            and  ADAM SEVELL, ATTORNEY AT LAW
                              515 South Flower Street
13                            25th Floor
                              Los Angeles, California  90071-2228
14                            (213) 683-6181
                              davidwalsh@paulhastings.com
15
      FOR THE DEFENDANT:      GIBSON, DUNN & CRUTCHER LLP
16                            BY:  GAIL E. LEES, ATTORNEY AT LAW
                              333  South Grand Avenue
17                            Los Angeles, California  90071
                              (213) 229-7163
18                            glees@gibsondunn.com

19

20

21

22

23

24

25
```

3

```
 1    LOS ANGELES, CALIFORNIA; THURSDAY, JULY 21, 2011; 9:34 A.M.

 2                              -oOo-

 3              THE COURT:  All right.  Let me call the matter of

 4    Wilson vs. Gateway.

 5              MS. CROWTHER:  Good morning.  Robyn Crowther and

 6    Jeanne Fugate from Caldwell, Leslie & Proctor for the

 7    plaintiffs.

 8              THE COURT:  All right.

 9              MR. RAFFERTY:  Good morning, Your Honor.

10    Paul Rafferty, Jones Day, for Gateway.

11              THE COURT:  All right.

12              MR. WALSH:  Good morning, Your Honor.  David Walsh

13    and Adam Sevell of Paul Hastings on behalf of NEW.

14              THE COURT:  All right.

15              MS. LEES:  Good morning, Your Honor.  Gail Lees of

16    Gibson Dunn on behalf of the Chartis defendant.

17              THE COURT:  Okay.

18              THE CLERK:  There is also an attorney on the line,

19    Judge.

20              THE COURT:  Who is that?

21              THE CLERK:  Her name is Kerry Cunningham.

22              THE COURT:  All right.  On the phone we have?

23              MS. CUNNINGHAM:  This is Kerry Cunningham from

24    Meiselman Denlea in New York.

25              THE COURT:  Who are you representing?
```

4

```
 1              MS. CUNNINGHAM:  The plaintiff.

 2              THE COURT:  Okay.  We're here on the motion to

 3  compel arbitration.  Gateway has made a renewed motion to

 4  compel arbitration, and the NEW has made an initial motion

 5  to compel arbitration.

 6              Let me ask.  Insofar as -- well, let me put

 7  Gateway's renewed motion off to the side for a moment.

 8              As to NEW's motion to compel arbitration, my

 9  inclination would be to grant it because I had indicated

10  last time that the problem with Gateway's requests to compel

11  arbitration was the court's feeling that they had waived

12  their ability to seek arbitration at this point in time but

13  that the same problem would not arise as to NEW.

14              I presume you're standing there to tell me

15  something.

16              MS. CROWTHER:  I'm waiting for the question.

17              THE COURT:  Oh, there is no question.  I was

18  waiting for to you tell me something.

19              MS. CROWTHER:  All right.  I think that would be

20  the wrong thing to do, Your Honor.

21              THE COURT:  Why?

22              MS. CROWTHER:  For a number of reasons.  If we

23  want to talk -- let me address first, we've been talking

24  about arbitration for many months both on motions by Gateway

25  and by NEW.
```

5

```
 1              At each juncture, the reason that the motion is
 2    being brought now as opposed to the outset of the case was
 3    because of the Supreme Court's ruling if *Concepcion*.
 4    *Concepcion* has held that the California rule of *Discover*
 5    *Bank* that says class action waivers in some circumstances
 6    will render an arbitration clause unconscionable and
 7    unenforceable is preempted by the Federal Arbitration Act.
 8              However, in all of the briefing that the
 9    plaintiffs have done on motions to compel arbitration, we
10    have never relied on *Discover Bank*.  Instead, we've argued
11    on the one hand that the motion to compel arbitration has
12    been waived; that the right has been waived.
13              THE COURT:  As to Gateway, yes.
14              MS. CROWTHER:  And as to NEW.
15              THE COURT:  Why?
16              MS. CROWTHER:  NEW came in in November of 2010
17    when Gateway -- at which time --
18              THE COURT:  When they came in, they made their
19    motion, I think, within 60 days of their coming in; and,
20    also, they did not litigate substantial merits of this case
21    vis-a-vis a motion to dismiss or something else of that sort
22    as Gateway did.
23              MS. CROWTHER:  Actually, Your Honor, first they
24    opposed our motion for leave to amend to add them at all.
25              THE COURT:  Right.  But that doesn't waive their
```

1    right to seek arbitration.  I mean, because -- I mean,

2    again, I'll put it this way.  I would not consider it to be

3    such.

4        MS. CROWTHER:  Second, they did move to dismiss

5    the Second Amended Complaint before they moved to compel

6    arbitration.  They did.

7        THE COURT:  Yes; but, again, the -- we're now

8    talking about, you know, their coming in and they're making

9    a motion to compel arbitration within a relatively brief

10   period of time of their entry.

11       It wasn't the same situation with Gateway where

12   Gateway had litigated for, I think it was over a year,

13   before they made their motion.

14       And, also, in both situations, *Concepcion*, you

15   know, is an overlay as well, you know.  So if I had been

16   wrong insofar as deeming Gateway to have waived because of

17   the relationship between *Concepcion*, *Discovery Bank*,

18   et cetera, I cannot put that on NEW as well.

19       MS. CROWTHER:  Well, here's the last reason why I

20   think they waived is because what both defendants are

21   telling you now is that the only problem with this

22   arbitration clause was its class action waiver.

23       And in the other cases, besides *Concepcion*,

24   including *Concepcion*, there was no severability clause; and

25   so if the class action waiver was unenforceable, it blew up

1    the entire arbitration clause.

2             We have a severability clause here; and if they

3    were right that the only problem was the class action

4    waiver, they should have come in, asked you to sever the

5    class action waiver and send it to arbitration.

6             They didn't want to go to arbitration without the

7    class action waiver which is fine.  But they waived it.

8    They had every opportunity to move to compel arbitration

9    before they moved to dismiss and before they moved to

10   dismiss a second time.

11            And if you look at NEW, *certiorari* had already

12   been granted in *Concepcion* when they were named as a

13   defendant in this case.

14            And to say that they can move to dismiss and wait

15   and join Gateway's motion and then see that Gateway's motion

16   is denied and then make their own motion with two other

17   substantive motions, and they were also here arguing the

18   court that what we should be moving towards was class cert.

19            So it's not just the pleadings they filed; it's

20   the way that they approached the case.  They had an

21   opportunity to move to compel.  They didn't and they waived

22   it.

23            Now, I'm conscious that you have a full calendar

24   and you're in trial so I also want to get to the substantive

25   problems even if you find that they don't win.

```
 1          THE COURT:  I prefer you to my trial who are
 2   nowhere near as -- well, I shouldn't say that.  They might
 3   be here.
 4                    (Laughter.)
 5          MS. CROWTHER:  I wish I could take that as a
 6   compliment; but given your comments, I'm not sure that it
 7   even qualifies.
 8          The other reason why you should not grant NEW's
 9   motion to compel arbitration is that the arbitration clause
10   is unenforceable for reasons that have nothing to do with
11   Concepcion.
12          The first problem is the unavailability of the
13   National Arbitration Forum and its rules.
14          Now, the clause that Gateway and NEW are trying to
15   enforce, which they wrote and imposed on our client in a
16   contract of adhesion, says that the arbitration will take
17   place exclusively before the NAF and pursuant to its rules.
18          They argue that we -- that they say:  We'll agree
19   on an alternative forum if the NAF is not available or
20   ceases operations.  The NAF is operating; it just isn't
21   allowed to take consumer claims because it was shut down by
22   the Minnesota AG for essentially paying kickbacks to the
23   corporate defendants in cases that it handled.
24          The other problem, though, is that the NAF rules
25   themselves are no longer in effect for consumer claims
```

1    and --

2              THE COURT:  Let me just stop you.  If, in effect,

3    the NAF is not available, it seems to me then the parties

4    arbitrate outside of the NAF in a mutually agreeable forum;

5    and if there is not a mutually agreeable forum and if there

6    is a dispute as to what a mutually agreeable forum is, then

7    that is an issue which this court can resolve.

8              MS. CROWTHER:  Under the *Carr v. Gateway* opinion

9    from the Illinois Supreme Court, that's not true.

10             THE COURT:  Well, we are not in front of the

11   Illinois Supreme Court, although I understand that Illinois

12   law is supposed to apply.  Am I correct on that?

13             MS. CROWTHER:  No, no.  It's California law but

14   there are actually four others courts that have considered

15   this arbitration clause and asked whether the NAF was

16   integral to the decision to arbitrate and found that it was

17   because --

18             THE COURT:  I don't understand how it could be if

19   in a sense that if the cause itself indicates that if NAF is

20   unavailable, then the parties can arbitrate in other

21   mutually acceptable arbitratable -- whatever the word -- in

22   another forum that permits, you know, for arbitration.

23             So, I mean, how -- it can't be essential because

24   if there is a recognition that it might not be available.

25             MS. CROWTHER:  The problem is the rules.  The

1  problem is that savings clause doesn't say:  We'll arbitrate

2  in another forum according to its rules.

3          What it says is, first, that the arbitration will

4  be exclusively before the NAF and pursuant to its rules and,

5  second, that we can agree to a different forum.

6          But if you look at the NAF rules themselves, the

7  NAF rules say no one but the NAF is allowed to enforce them.

8          So we have an impossibility.

9          THE COURT:  Why?

10         MS. CROWTHER:  That's their --

11         THE COURT:  One can utilize their rules without

12 the NAF enforcing them.

13         MS. CROWTHER:  Not according to their rules, and

14 what you would be doing, Your Honor --

15         THE COURT:  Let me ask.  If, for example, the

16 Federal Rules of Civil Procedure said:  Only we, the federal

17 court, can have these Federal Rules of Civil Procedure and

18 then we had some state court that said:  Oh, we like them.

19 We're going to use them.

20         Does that bar the state the court from using them?

21         MS. CROWTHER:  It doesn't really matter, Your

22 Honor, because what we agreed to, to the extent that our

23 client accepted their arbitration clause, was rules that say

24 they can only be applied by the NAF.

25         So here's what you'd be doing if you allowed this

1  to happen.  You would rewrite the arbitration clause itself
2  to say that we agree to use different rules; and then you'd
3  rewrite the NAF rules to say that the rule that says nobody
4  else can apply them doesn't matter.

5        And you might not think it makes any sense; but
6  it's not this court's job to rewrite them.  What the other
7  opinions considering the NAF say is that the judge doesn't
8  take out the blue pencil and rewrite the clause so that it
9  is enforceable.

10        The NAF is the one who decided that no one else
11  can use its rules.

12        THE COURT:  I had thought the Federal Arbitration
13  Act favors the enforceability of arbitration provisions.

14        MS. CROWTHER:  Well, if were you enforcing the
15  arbitration provision, that would be true.  But what you
16  would be doing is enforcing a different provision that
17  nobody agreed to.

18        And what you would be doing is saying to the
19  defendants, who are the ones who put in these terms, it
20  doesn't matter if they cannot be applied.

21        THE COURT:  So, in other words, what you're saying
22  is this.  That if for some reason there had been a bomb that
23  exploded in the NAF building such that the NAF was no longer
24  in existence that there could not be, unless the parties
25  agree to a new arbitration forum; that there could not be

1    arbitration is what you're basically saying.

2              MS. CROWTHER:  No, because you're focusing on the

3    forum where I'm focusing on the rules; and if the rules said

4    that they were permit an alternative forum to enforce them,

5    that would be fine.

6              THE COURT:  Rules are rules.  I mean, it's kind of

7    like, you know, it's like the Rules of Civil Procedure.  It

8    doesn't make any difference whether or not the Rules of

9    Civil Procedure are enforced by a federal court or by a

10   state court just as long as there is an agreement that they

11   be applied, what difference does it make?

12             MS. CROWTHER:  The difference is, Your Honor, that

13   we agreed, to the extent you're going to impose these rules

14   on us, we agreed to them that say only the NAF can do it.

15             THE COURT:  Let me stop you.  Let me hear a

16   response from the defense in that record.

17             MR. WALSH:  I guess in that regard I'll focus on

18   the application of the NAF rules.  The provision that

19   counsel is referring to says that the NAF rules and the NAF

20   will be the arbitrator and the forum on the rules for this

21   case except as provided below.

22             And then it says below:  In the event the NAF is

23   not available as Your Honor has cited, that the parties will

24   select an alternative forum to have the arbitration done.

25             Section 5 of the FAA provides Your Honor with the

1    authority do that anyway; and so this notion that the rules

2    have a -- well, it's a Catch 22.  You can't use the rules

3    because the NAF doesn't exist so this entire concept that we

4    agreed to that we would pick a separate forum would fail and

5    the contract would fail based on the arguments plaintiff is

6    trying to make.

7         The reality is at the time of contract the parties

8    absolutely contemplated that somebody else would be the

9    arbitrator if necessary.  Unlike the cases that counsel

10   alluded to, including the *Carr* case in the Illinois Supreme

11   Court, there was no provision in those cases for the

12   selection of an alternative arbitrator.

13        Those cases did not give the parties the right to

14   choose somebody else.  Our case -- our provision does give

15   them the right and it gives them the right at the time of

16   contracting.

17        So the parties were clearly aware that if a bomb

18   were to go off in the NAF headquarters, that they could go

19   forward with arbitration as the FAA prefers.

20             THE COURT:  All right.

21             Anything else from either side on this point?

22             MS. CROWTHER:  On the point of the NAF or on --

23             THE COURT:  Yes.

24             MS. CROWTHER:  I just want to read you what Rule 1

25   of the NAF rules that would be in effect says.

14

```
 1              "This code shall be administered only by the
 2     National Arbitration Forum or by any entity or individual
 3     providing administrative services by agreement with the
 4     National Arbitration Forum."
 5              Nobody forced them to choose the NAF nor did
 6     anybody force them to say that we would select an
 7     alternative forum but not their rules nor does it say
 8     "except as provided below," "except that we aren't going to
 9     follow this provision of the NAF rules."
10              And here's the problem, Your Honor.  If I want --
11     if I go to arbitration and I want to compel them to do
12     something and I cite the NAF rules, what's to stop them from
13     saying:  Oh, this arbitrator at AAA can't apply those rules.
14              Moreover --
15              THE COURT:  What is so special about their rules?
16              MS. CROWTHER:  It doesn't matter.  What
17     arbitration agreements are supposed to be is the private
18     agreement between the parties.  You may think it makes no
19     sense to agree to this term but --
20              THE COURT:  No, I didn't say anything about
21     whether or not the agreement makes sense or not.  It just
22     seems to me what the parties did agree to would cover this
23     particular situation.
24              MS. CROWTHER:  Well, how can we -- how can the
25     agreement say:  We'll be exclusively governed by the rules
```

15

1    of the NAF but not the rule of the NAF that says only the

2    NAF can enforce it?  That's the rule and this is supposed to

3    be about enforcing the private terms.

4            THE COURT:  No.  If that were the case, then there

5    wouldn't have been an alternative should the NAF be

6    unavailable.  But by definition, since the parties agree

7    that if for some reason the NAF becomes unavailable, that

8    this is what will transpire, then this is what will

9    transpire.

10           MS. CROWTHER:  But, Your Honor, you're confusing

11   the arbitration forum with the rules; and what they could

12   have done was said:  To the extent the NAF says that it

13   rules can't apply anywhere else, we don't follow that.

14           THE COURT:  The mere fact that the NAF says that

15   our rules can only be applied by us makes no difference.

16           MS. CROWTHER:  How can it make no difference if

17   those are the rules that are exclusively to govern our

18   dispute?  It may make no sense.  It may make no sense to say

19   that all arbitrations have to be in Minnesota, but if that

20   was the NAF -- *(overtalking)*

21           THE COURT:  -- saying that all arbitrations have

22   to be done in Minnesota makes some sense because one can

23   always select a forum for purposes of arbitration; and

24   assuming that there's nothing else that would bar a forum

25   selection clause in an arbitration provision, it's fine.

| | |
|---|---|
| 1 | But in this particular situation, what you're |
| 2 | saying is that because the rule No. 1 of the NAF says that |
| 3 | only the NAF can apply these rules, which is not referenced |
| 4 | in any other portion of the arbitration provision, by |
| 5 | saying, for example, if the parties had said, you know, |
| 6 | that, you know, Rule 1 is so important to us that, you |
| 7 | know -- but, you know, that if for some reason the NAF |
| 8 | becomes unavailable, there will be no basis for arbitration. |
| 9 | Well, I could understand that; but that's not what |
| 10 | the agreement says.  The agreement says, you know, you go to |
| 11 | NAF; but if NAF becomes unavailable, then this transpires; |
| 12 | and so this is what's transpiring. |
| 13 | MS. CROWTHER:  All right.  I'm going to make this |
| 14 | one last point; but then there are lots of other things to |
| 15 | talk about. |
| 16 | What you're doing, Your Honor, is rewriting the |
| 17 | parties' agreement. |
| 18 | THE COURT:  No, I'm not.  I'm following through |
| 19 | with what the parties said. |
| 20 | MS. CROWTHER:  No, the parties said -- |
| 21 | THE COURT:  You disagree with my ruling.  I |
| 22 | understand that.  But the mere fact you disagree doesn't |
| 23 | mean that I'm rewriting. |
| 24 | MS. CROWTHER:  But what you were -- the parties |
| 25 | said:  We'll proceed by the NAF rules; and you're saying by |

1    the NAF rules except this one.

2         And there's no law that says you can pick and

3    choose amongst the forum's rules to say which ones make

4    sense and which ones don't.

5         THE COURT:  I actually will leave it up to the

6    arbitrator.  The arbitrator that you select may decide that

7    your argument is right; say it can't be applied in which

8    case the arbitrator has made a decision.

9         MS. CROWTHER:  Well, Your Honor, I think what this

10   clause says --

11        THE COURT:  But it's up to the arbitrator to

12   decide that particular point.  It's not up to me.

13        MS. CROWTHER:  I think what this says it that the

14   rules are integral to our agreement to arbitrate because we

15   agreed to exclusively provide by them and it's just not

16   available.

17        In the other cases where there have been a refusal

18   to appoint a substitute arbitrator, the argument wasn't:

19   There's no arbitrator who can hear this dispute.  The

20   argument was:  The appointment of this arbitrator was

21   integral to the agreement.

22        The same applies to rules.  It's not that there's

23   not -- that there's anything wrong with the rules.  The

24   problem is they can't be applied.

25        THE COURT:  I understand that is the plaintiffs'

1    position but, unfortunately, it's not the court's position.

2    You know, the court will find that there is a basis for

3    selecting another arbitration forum; and you can raise this

4    issue as to whether or not the arbitration forum cannot

5    apply the NAF rules and, therefore, at that point in time,

6    you know, it can't go forward.

7            And if the arbitrator says:  Yes, that is how this

8    matter has to be interpreted, then, you know, that's the

9    decision that it will make in which case the case will come

10   back here.

11           MS. CROWTHER:  I think you're putting it backwards

12   but it leads actually perfectly into another reason why you

13   can't force this arbitration clause which is that it is

14   unconscionable for reasons that have nothing to do with

15   *Concepcion*.

16           Under the *Fitz* and *Harper* decisions, when there is

17   a contract of adhesion that incorporates rules of

18   arbitration and it doesn't provide them and it doesn't fix

19   them, those are un -- that indicates procedural

20   unconscionability so --

21           THE COURT:  In what way?  In what specific way

22   you're referencing here?

23           MS. CROWTHER:  Here is a great example.  Because

24   these rules weren't fixed and weren't provided, there was no

25   way for the plaintiff to know, for example, that he was

1   agreeing that --

2           THE COURT:  I thought you just made the argument

3   that the primary intent of the parties was to NAF rules and

4   that it was so important to them that had they -- there

5   been, you know, some slight difference in the NAF rules,

6   that the parties would not have agreed and, therefore, the

7   court would be rewriting the contract if it attempts to

8   touch any rule.

9           So you're saying that:  Well, the parties really

10  thought these rules were essential; but they're

11  unconscionable rules that we've agreed to.

12          MS. CROWTHER:  Well, let's being realistic.  The

13  parties that thought that they were integral were Gateway

14  and NEW; and this happens in contracts of adhesion all the

15  time.

16          The defendants write terms, they are imposed on

17  the plaintiff, the plaintiff goes to court, the defendants

18  move to compel, and what the court considers is whether the

19  agreement that is there is conscionable or not.

20          THE COURT:  What is the aspect that is

21  unconscionable?

22          MS. CROWTHER:  There are five different aspects

23  that are unconscionable in this case; and all of them, Your

24  Honor, are pursuant to Ninth Circuit cases so, again,

25  whether they disagree --

1            THE COURT:  So is *Concepcion*.

2            MS. CROWTHER:  Not anymore.  But until *Concepcion*

3    was decided, it applied and the same is true for these

4    cases.

5            THE COURT:  And, frankly, had we been in a

6    pre-*Concepcion* environment, you know, what can I say?  But

7    we're in a post-*Concepcion* environment apparently.

8            MS. CROWTHER:  But there's a lot to say still,

9    Your Honor.

10            THE COURT:  All right.  What are the five?

11            MS. CROWTHER:  The five are it's in a contract of

12    adhesion.

13            THE COURT:  Okay.

14            MS. CROWTHER:  That the rules that would govern

15    the arbitration were not attached; and this is actually

16    California appellate law.  It's not Ninth Circuit.  It's

17    *Harper v. Ultimo* and the *Fitz* case; that both say that when

18    you don't attach the rules, that that's procedurally

19    unconscionable.

20            The third is that the rules were not fixed.  What

21    the NAF rules say is that the rules that will govern the

22    dispute are those that are in effect at the time the claim

23    is filed.

24            We can't file a claim so we don't even know what

25    the rules are; but in any event, they would not have been

1    settled until we filed.

2            And under the *Ting* decision of the Ninth Circuit,

3    when the rules are not fixed, that is unconscionable.

4            Next, the NAF rules, to the extent they did apply,

5    have a confidentiality provision.  The only part that can be

6    disclosed is the award itself.

7            And in *Davis* and in *Ting*, the Ninth Circuit

8    discussed the way that those confidentiality provisions are

9    not mutual.  They work to the advantage of the repeat player

10   corporate defendants and against the individuals and,

11   therefore, that confidentiality provision, if it doesn't

12   allow disclosure of the papers and pleadings and proceedings

13   of the arbitration, is unconscionable.

14           Finally, Your Honor, there's the repeat player

15   effect; and this is actually documented in the NAF itself

16   which is the fact that they are repeat players and we've got

17   millions of individuals here who were affected, means that

18   they have a one-sided advantage particularly as goes to the

19   confidential proceedings.

20           THE COURT:  All right.  Let me ask the defense to

21   respond to the five other than saying that now we are in

22   post-*Concepcion* which basically overturns the five.  Aside

23   from saying that, what is your argument?

24           MR. WALSH:  Can I lead with post could not

25   *Concepcion*?

```
 1              THE COURT:  Pardon?
 2              MR. WALSH:  Can I lead with Concepcion?  It seems
 3    like a good argument, Your Honor.
 4              Adhesion is dealt with in Concepcion so I won't
 5    deal with that.
 6              THE COURT:  Yes.
 7              MR. WALSH:  The rules were made available to each
 8    individual owner of the program three different ways at the
 9    time of -- three -- three different ways at the time of
10    sale.
11              It was on the Internet, it was available -- you
12    could call and get a copy sent to you, and I can't remember
13    the third way.  On the phone, on the Internet, and on a
14    website.  They e-mailed them to you, it's on a website --
15              THE COURT:  Two ways.  Available on Internet and
16    website is the same.
17              MR. WALSH:  Yeah, I know, but they would e-mail
18    them to you as compared with also being published on the
19    website and available so that's three down from the four I
20    pointed to first.
21              The terms are fixed in time on the date,
22    specifically by their own terms on the date in which you
23    bought your agreement.  That's the date the terms become
24    fixed.
25              Confidentiality provision, the law cited by
```

1    counsel is -- is not quite so clear.  We do make -- it's

2    clear in the NAF rules that the award is not confidential.

3    There are circumstances under which the rest of the

4    proceedings are not confidential.

5              But the goal of avoiding the confidentiality

6    provision is to know that people are being successful in

7    bringing these claims.

8              There is no record of claims being brought

9    successfully against us.  So the concept that

10   confidentiality is depriving people of the right to bring

11   these claims doesn't obtain.

12             And, finally, the repeat player effect is

13   exhaustively discussed in plaintiffs' papers without a shred

14   of evidence that NEW has ever availed itself of arbitration

15   at the NAF or that it has a relationship with the NAF or

16   that it is -- plaintiff assert or cites to a variety of

17   other companies that have had relationships with NAF without

18   any evidence at all of NEW's involvement with it.

19             So if you have any other questions.

20             THE COURT:  All right.

21             MR. RAFFERTY:  Well, Your Honor, Paul Rafferty for

22   Gateway.  Does the court want any further comment on the

23   issue of whether the rules were provided or not provided?

24             THE COURT:  No.

25             MR. RAFFERTY:  Okay.

```
 1              THE COURT:  Anything else?
 2              MS. CROWTHER:  Yeah.  The facts, Your Honor, that
 3    they are relying on as to whether or not we had access to
 4    the rules are the same facts that were present in ting.
 5              The rules were allegedly available somewhere else
 6    and you could go find them.  The same was true in Fitz and
 7    Harper.  Harper was Better Business Bureau.
 8              You could go to the Better Business Bureau and
 9    find them; but those courts held that when you have a
10    contract of adhesion that incorporates someone else's rules,
11    you have to give them to the contracting party.
12              THE COURT:  California law.
13              MS. CROWTHER:  And you have to fix them.
14              THE COURT:  We're not under California law at this
15    point.
16              MS. CROWTHER:  Oh, but, no, Your Honor, actually
17    California law controls the unconscionability because --
18              THE COURT:  Yes, but the extent of
19    unconscionability application to the FAA after Concepcion is
20    different in my mind.
21              MS. CROWTHER:  But Concepcion didn't say that all
22    unconscionability law is preempted.
23              THE COURT:  I understand that.
24              MS. CROWTHER:  And it didn't say that -- in fact,
25    Justice Scalia specifically acknowledged in a footnote that
```

```
 1    provisions that states make which are to try and make sure

 2    that arbitration applies fairly to both parties --

 3              THE COURT:  But the question is that in the

 4    post-Concepcion environment, the question is whether or not

 5    a case such as Ting, as represented by you, states that even

 6    though the rules are available and the individual is

 7    notified of their availability instantly through website or

 8    you can get an e-mail, or whatever, is so unconscionable

 9    that it destroys the arbitration provision.

10              That, to my mind, would not survive in the

11    post-Concepcion environment.

12              MS. CROWTHER:  Respectfully, Your Honor, that

13    would be for the Ninth Circuit to dictate.  You have

14    controlling law in Ting.

15              THE COURT:  No, it's not controlling once the

16    Supreme Court throws the wrench in.  In other words, you

17    know, again, you might be right.  I might be wrong.  But

18    that's why there is the Ninth Circuit and after the Ninth

19    Circuit there is the Supreme Court.

20              MS. CROWTHER:  Your Honor, Ting says that

21    something -- and, by the way, we're not looking for one

22    silver bullet that says that this clause is unconscionable.

23              What we're looking for is a sliding scale of

24    things that are procedurally unconscionable and things that

25    are substantively unconscionable; and you look at them and
```

1   decide whether this clause is permeated with
2   unconscionability.
3          There are five; and with all due respect to
4   Mr. Walsh, he's incorrect that the rules that would apply
5   would be the ones that were in effect at the time the
6   contract was purchased.
7          It's Rule 1C of the NAF rules that says the rules
8   that are going to apply are those that are in effect at the
9   time the claim is filed.
10         And that's exactly what was true in *Ting*.  You
11  know, it's that they aren't fixed.  So if our client in 2006
12  when he wanted to buy his computer wanted to know what rules
13  would govern a claim in the future, he couldn't figure it
14  out.  They didn't exist and they don't exist today.
15         And I just want to put this in context, Your
16  Honor, of what happens on September 9, 2009, when our client
17  has a claim he wants to assert.
18         He calls Gateway which would be the number in his
19  warranty; and Gateway tells him, as they have many times in
20  the past:  We can't help you.  We don't have your account.
21  You have to call MPC.
22         He calls MPC and the phone just rings and rings
23  and rings because they're bankrupt; and then if he figured
24  out he was supposed to go to the NAF, he tried to file a
25  claim with the NAF; and they say:  Sorry.  We don't accept

1   consumer arbitrations anymore.

2          And so what's he left to do?  Gateway won't talk

3   to him.  They say now that I've sued them and they've

4   litigated with me for sixteen months that, oh, we'll just

5   agree to something else.  But when the consumers were in

6   question, they wouldn't.

7          THE COURT:  Well, you're arguing actually a

8   different point because we were focusing on whether or not

9   the court would compel the plaintiff to arbitrate vis-a-vis

10  NEW.

11         The question now at this point in time, assuming

12  that the court grants NEW's request to arbitrate the matter,

13  by definition, is the court forced to also say that:  Well,

14  therefore, now Gateway, despite the court's prior ruling,

15  has to -- that matter has to go to arbitration as well.

16         MS. CROWTHER:  I know of no law that says that.

17  No one has cited any.  But, Your Honor, that point -- the

18  point I was just making which is the plight of the consumer

19  applies to NEW just like Gateway.  They didn't even tell him

20  that NEW existed so there was no way to assert a claim.

21         THE COURT:  Why is it somehow all of a sudden then

22  NEW's, you know, contractual provision for arbitration

23  somehow evaporates because of what somebody else did?

24         MS. CROWTHER:  It doesn't evaporate.  Well, first

25  of all, they did the same thing that Gateway did.  Remember

```
1    our Complaint alleges that this was a joint course of
2    conduct; and when we were here last time on motions to
3    dismiss, that at least was going to go forward as to both of
4    them under the UCL and perhaps on the CRLA.
5              And so they were working in concert and that's
6    what the allegations are here; and if that -- for that
7    reason, if Gateway is liable -- and we allege and our
8    allegations are believed -- NEW is liable as well.
9              The second thing is that I'm not talking about
10   what Gateway did to blow up NEW's arbitration provision.
11   What I'm saying is the reason we know this is unconscionable
12   and one-sided is that the plaintiff class, the members of
13   that class, had no way to start a proceeding against these
14   defendants other than to come to court.
15             If we -- when you go to the AAA, they say:  Show
16   me your agreement to arbitrate with us; and we didn't have
17   one.  And they say we would have agreed with him but they
18   wouldn't even talk to him.
19             So to say that now that their class waiver which
20   they didn't try to sever before and seek arbitration at the
21   outset --
22             THE COURT:  Are you talking about NEW?
23             MS. CROWTHER:  I'm talking about both.
24             THE COURT:  Well, again, you know, the court
25   doesn't treat them exactly the same at this point in time
```

```
 1   because they are different.  NEW didn't come into this
 2   litigation until more than a year after the case was filed.
 3              MS. CROWTHER:  They knew --
 4              THE COURT:  And once they were brought in by the
 5   plaintiff, that they within -- I think it's approximately 60
 6   days -- made a motion to compel arbitration.
 7              MS. CROWTHER:  They were actually --
 8              THE COURT:  And they had previously joined the
 9   Gateway's request to compel arbitration.
10              MS. CROWTHER:  They were brought in by Gateway
11   first as by a third-party Complaint and then we added them.
12              But Concepcion had already granted cert; and if
13   what you're going to find today, Your Honor, is that the
14   only part of this arbitration provision that was
15   unconscionable is the class waiver, you should also say that
16   defendants, if what you really want is arbitration and you
17   don't want to litigate, come to the court, ask to sever that
18   provision as your contract allows you to do and go to
19   arbitration.
20              The reason that both of their conduct was
21   inconsistent with a desire to arbitrate was because they
22   could have tried -- they could have tried to get it and they
23   didn't.
24              And it doesn't matter that for NEW it was from
25   November to February whereas for Gateway it was for more
```

 1   than a year.  They did the same thing.

 2              THE COURT:  I understand your position.  Anything

 3   else?

 4              MS. CROWTHER:  Yes, Your Honor.

 5              The last thing that I want to say -- the last

 6   thing that I really want to emphasize is that there are four

 7   other courts that have considered this arbitration provision

 8   with the NAF.  Actually, there are more.

 9              And the Pennsylvania appellate court says that the

10   majority of them, fine; that the unavailability of the NAF

11   renders the arbitration provision unenforceable.

12              And in our case there is a penalty if you go

13   anywhere other than the NAF.  It was supposed to be only by

14   the NAF's rules.  There's no -- the NAF's --

15              THE COURT:  You're summarizing now.  I understand

16   your position.  Anything else that's new?

17              MS. CROWTHER:  The last thing is that the failure

18   to fix the NAF rules demonstrates what this is:  The

19   unconscionability and the one-sidedness.

20              And, finally, Your Honor, if what you're going to

21   do is say Gateway gets out of its waiver because NEW didn't

22   waive, I'd like to brief that issue.

23              THE COURT:  I want you to brief the issue,

24   frankly, because that is a question I have and it wasn't

25   really briefed by the parties well if at all.

1          I want to know that if I determine to grant NEW's

2     request to compel arbitration, will I have to also allow

3     Gateway to go -- Gateway's request for arbitration, to grant

4     it, even though I have found that Gateway had waived by its

5     conduct here?  I want that issue briefed.

6          Yes.

7          MR. RAFFERTY:  Your Honor, we'd like to be heard

8     on the issue of waiver because we don't think that the tier

9     within the *Hoffman* decision on waivers --

10         THE COURT:  You can argue that one after you brief

11    what I want you to brief.

12         MR. RAFFERTY:  Very well, Your Honor.  If we argue

13    it successfully today, though, it moots this issue.

14         THE COURT:  Yes, but trust me.

15         MR. RAFFERTY:  Because you'll move to compel both

16    parties.

17         THE COURT:  Yes, but I want that issue to be

18    briefed before I address this matter.

19         How long will it take you guys to do that?

20         MS. CROWTHER:  It wouldn't take me more than two

21    weeks to write a brief.

22         THE COURT:  Okay.  And how many days will it take

23    you to name that tune?

24         MR. RAFFERTY:  What is the court's pleasure, Your

25    Honor?  We'll take two weeks to --

1     THE COURT:  Settlement is always this court's

2  pleasure --

3                         (Laughter.)

4     THE COURT:  -- but apparently not enough attorneys

5  really care about my pleasure.

6     MR. RAFFERTY:  We'll take two weeks, Your Honor.

7     THE COURT:  Two weeks?  All right.

8     MS. CROWTHER:  Who goes first, Your Honor?  I'm

9  not sure.

10     THE COURT:  It will be simultaneous and that way

11  there will be no arguing as to who has to go first.  So two

12  weeks from today's date would be -- umm -- the 4th of

13  August; and I'm not going to give two weeks to respond.

14     I want the matter to be -- the original

15  cross-briefs to be filed on the 4th of August and a

16  response by -- actually, I'll give you two weeks -- by the

17  18th and I'll put the matter back on calendar for the

18  29th of August.

19     MS. CROWTHER:  Your Honor, could we do the 8th

20  and 22nd for the briefs?  I'm on vacation and I just want

21  to be able to look at the briefs.

22     THE COURT:  Sure.  The 8th and the 22nd will

23  be fine, and I'll put you guys back on the 29th.

24     MS. CROWTHER:  Could we do a different hearing

25  date?  I have to be in Omaha that day.

```
1                    (Pause in the proceedings.)

2              THE COURT:  The problem is that I have problems.

3              I tell you what.  I'll put you on for

4     September 1st but I may have to continue that date

5     because -- and if I continue that date, it won't be until

6     the 15th of September.  So I'll put you down tentatively

7     for September 1st.

8              MS. CROWTHER:  Between those two, I'd rather do

9     the 29th.  I'll figure out how to be back from Omaha.

10             THE COURT:  Okay.  I don't want to ruin your

11    plans.

12             MS. CROWTHER:  I don't think you could.

13             THE COURT:  Well, trust me.  I could find a way.

14    But I won't.  At this point, we'll put it on the 29th and

15    we'll put it at 9 o'clock.

16             MR. RAFFERTY:  Are we arguing the issue of waiver

17    today involving Gateway if the court is concerned with

18    waiver?

19             THE COURT:  No.  I'm going to continue that --

20    basically, my understanding of what you're arguing is you're

21    arguing Concepcion vis-a-vis waiver.  Am I correct?

22             MR. RAFFERTY:  What we're arguing, Your Honor, is

23    that --

24             THE COURT:  Because the only difference between

25    what I, you know, what happened when I made my initial
```

```
 1    ruling and now is Concepcion.

 2              MR. RAFFERTY:  Not true, Your Honor.

 3              THE COURT:  What else is there?

 4              MR. RAFFERTY:  Under the Hoffman standard, the

 5    court has to be convinced -- and the burden is heavy -- and

 6    Wilson has to establish its burden that Gateway had no

 7    reasonable perception whatsoever that it could have a motion

 8    granted to compel arbitration, not to bring a motion, but to

 9    have it granted.

10              All of the case law was directly --

11              THE COURT:  Well, apparently, I'm willing to

12    pretty much grant almost anything if I'm convinced.

13              MR. RAFFERTY:  The Discover Bank issue provided

14    three standards at which time an arbitration provision was

15    deemed unconscionable.

16              THE COURT:  Well, the problem really is, again,

17    I'm going to allow you to argue; but I'm fixated on this

18    other point because, you know, my inclination would be no.

19              But, you know, depending upon -- because,

20    obviously, if for this some reason if I grant arbitration,

21    as I'm tentatively indicating I'm going to do vis-a-vis NEW,

22    if for have some reason I have to do it as well for Gateway

23    because of issues that, you know, there might be a risk of

24    inconsistent decisions or something else of that sort, it

25    will strengthen your argument that I should reconsider the
```

1    waiver point because that's simply as a practical matter

2    because I'm going to be having to allow Gateway to arbitrate

3    because NEW is in arbitration.

4            Although the question is:  Would the Gateway

5    arbitration be governed by the arbitration provisions in --

6    as to NEW?  In other words, would it have to be the same NAF

7    rules supposedly that would apply or that would go to the

8    arbitrator to decide whether or not they do apply, et

9    cetera, et cetera?  All that stuff.

10           MR. RAFFERTY:  We're all operating under Gateway's

11   limited warranty.  It's the same provision.

12           THE COURT:  Okay.

13           MR. RAFFERTY:  But I do ask the court to refresh

14   on the issue of waiver because the Ninth Circuit --

15           THE COURT:  Refresh?  I'm always fresh.

16           MR. RAFFERTY:  I know you are, Your Honor.

17           Ninth Circuit is very clear, other circuits are

18   very clear.  Pending a change of law, unless this court is

19   convinced by a heavy burden that we could have a motion

20   granted against *Discover Bank* in an identical provision that

21   Gateway had which was deemed unconscionable, this court

22   cannot find a waiver as a matter of law.

23           THE COURT:  Well, but all those things have to be

24   dependent upon the specific situation.

25           MR. RAFFERTY:  And the situation is the limited

1  warranty of Gateway and it's identical to the three

2  requirements of *Discover Bank*.  There was no chance Gateway

3  could have had a motion granted.  Therefore, there is no

4  waiver under all of the case law we've cited.

5         And I want to point out that the only three cases

6  that Wilson cited are completely inapplicable because under

7  the third standard the -- *(overtalking)*

8         THE COURT:  I --

9         MR. RAFFERTY:  -- issue was not nominal.

10         THE COURT:  I understand your position.  I have

11  looked at the cases.  I may, in the end, agree with you; but

12  I want the other issue briefed before I decide the issue.

13         MR. RAFFERTY:  Very well.  Thank you, Your Honor.

14         THE COURT:  All right.  Thank you.

15         MR. RAFFERTY:  Thank you, Your Honor.

16         MS. CROWTHER:  Thank you, Your Honor.

17         THE COURT:  Have a nice whatever.

18         *(At 10:14 a.m. proceedings were concluded.)*

19

20                        -oOo-

21

22

23

24

25

1                           **CERTIFICATE**

2

3              I hereby certify that pursuant to Section 753,

4    Title 28, United States Code, the foregoing is a true and

5    correct transcript of the stenographically reported

6    proceedings held in the above-entitled matter and that the

7    transcript page format is in conformance with the

8    regulations of the Judicial Conference of the United States.

9
     Date:  July 26, 2011
10

11

12

13

14                              /s/   PAT CUNEO

15                              OFFICIAL COURT REPORTER
                                CSR NO. 1600
16

17

18

19

20

21

22

23

24

25

# EXHIBIT A-4

1      UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA

3                    ---

4      HONORABLE GEORGE H. WU, DISTRICT JUDGE PRESIDING

5
                     ---
6

7   PETER WILSON,                    )
                                     )
8          PLAINTIFF,                )
                                     )
9          VS.                       )  CASE NO. CV 09-7560-GW
                                     )  9:10 A.M. TO 9:43 A.M.
10  GATEWAY, INC., ET AL.,           )
                                     )
11         DEFENDANTS.               )
    _____    )

12

13

14

15
            REPORTER'S TRANSCRIPT OF PROCEEDINGS
16                 MOTIONS CALENDAR

17            LOS ANGELES, CALIFORNIA
              MONDAY, AUGUST 29, 2011
18

19

20

21
                MARGARET J. BABYKIN
22                 COURT REPORTER
            442 - U. S. DISTRICT COURTHOUSE
23            312 NORTH SPRING STREET
            LOS ANGELES, CALIFORNIA  90012
24              (626) 963-0566

25

```
 1   APPEARANCES:

 2   ON BEHALF OF THE PLAINTIFF:

 3           CALDWELL LESLIE & PROCTOR, PC
             BY:  ROBYN C. CROWTHER
 4                JEANNE A. FUGATE
                  ATTORNEYS AT LAW
 5           1000 WILSHIRE BOULEVARD
             SUITE 600
 6           LOS ANGELES, CALIFORNIA  90017

 7           MEISELMAN, DENLEA, PACKMAN
               CARTON & EBERZ
 8           BY:  KERRI CUNNINGHAM
                  ATTORNEY AT LAW
 9           NEW YORK, NEW YORK
             (TELEPHONICALLY)
10
     ON BEHALF OF THE DEFENDANT:
11
             JONES DAY
12           BY:  PAUL F. RAFFERTY
                  ATTORNEY AT LAW
13           3161 MICHELSON DRIVE
             SUITE 800
14           IRVINE, CALIFORNIA  92612

15   ON BEHALF OF DEFENDANT N.E.W.:

16           PAUL HASTINGS LLP
             BY:  DAVID M. WALSH
17                ADAM SEVELL
             515 SOUTH FLOWER STREET
18           TWENTY-FIFTH FLOOR
             LOS ANGELES, CALIFORNIA  90071
19
             GIBSON, DUNN & CRUTCHER LLP
20           BY:  GAIL E. LEES
                  ATTORNEY AT LAW
21           313 SOUTH GRAND AVENUE
             LOS ANGELES, CALIFORNIA  90071
22

23

24

25
```

3

1                        I N D E X

2    CV 09-7560-GW                        AUGUST 29, 2011

3    HEARING:  DEFENDANT GATEWAY, INC.'S MOTION TO COMPEL
              ARBITRATION
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

```
 1          LOS ANGELES, CALIFORNIA; MONDAY, AUGUST 29, 2011; 9:10 A.M.
 2               THE CLERK:  LET ME CALL THE MATTER OF -- LET ME SEE,
 3     WHICH WOULD BE SHORTER -- WILSON VERSUS GATEWAY.  HOPE SPRINGS
 4     ETERNAL.
 5               MS. CROWTHER:  GOOD MORNING, YOUR HONOR.
 6               ROBYN CROWTHER AND JEANNE FUGATE FROM CALDWELL LESLIE
 7     & PROCTOR FOR THE PLAINTIFFS.
 8               THE COURT:  ALL RIGHT.
 9               MR. RAFFERTY:  GOOD MORNING, YOUR HONOR.
10               PAUL RAFFERTY FOR GATEWAY.
11               AND I MUST SAY I'VE NEVER ASSOCIATED THIS CASE WITH
12     SHORTER.  SO, THAT'S A PLEASANT SURPRISE TO ME.
13               MR. WALSH:  GOOD MORNING, YOUR HONOR.
14               DAVE WALSH OF PAUL HASTINGS AND ADAM SEVALL OF PAUL
15     HASTINGS ON BEHALF OF N.E.W.
16               MS. LEES:  GOOD MORNING, YOUR HONOR.
17               GAIL LEES FROM GIBSON DUNN ON BEHALF OF THE CHARTIS
18     ENTITIES.
19               THE CLERK:  COUNSEL ON THE LINE, PLEASE STATE YOUR
20     APPEARANCE.
21               MS. CUNNINGHAM.
22               MS. CUNNINGHAM:  OH, HI.  I'M SORRY.  I CAN'T HEAR
23     VERY WELL.
24               THIS IS KERRI CUNNINGHAM FROM MEISELMAN, DENLEA,
25     PACKMAN, CARTON & EBERZ IN NEW YORK FOR THE PLAINTIFF.
```

1          THE COURT:  ALL RIGHT.  I THINK -- I'LL JUST INDICATE

2    TO DEFENSE COUNSEL THAT FAMILIARITY DID NOT BREED CONTEMPT

3    PROBABLY YET, BUT WHAT CAN I SAY.

4          ALL RIGHT.  INSOFAR AS THIS MATTER IS CONCERNED, YOU

5    KNOW, I HAVE GIVEN THIS CASE A LOT MORE THOUGHT SINCE LAST

6    TIME.

7          YOU GUYS CAN SIT DOWN IF YOU WANT.

8          MR. RAFFERTY:  THANK YOU, YOUR HONOR.

9          THE COURT:  THE COURT WOULD NOTE THAT IN THE

10   PLAINTIFF'S ALLEGATIONS IN ITS -- IN HIS THIRD AMENDED

11   COMPLAINT, HE ALLEGES, FOR EXAMPLE, IN PARAGRAPH 3 THAT THE PRO

12   E.S.P.'S -- THAT'S E-S-P APOSTROPHE S -- WERE JOINTLY CREATED

13   AND ADMINISTERED BY GATEWAY AND DEFENDANT NATIONAL ELECTRONIC

14   -- SORRY, NATIONAL -- I'VE FORGOTTEN WHAT THE "E" STANDS FOR.

15         ELECTRONIC?

16         MS. CROWTHER:  EXTEND -- N-E-W IS ELECTRONICS.

17         THE COURT:  OKAY.  ELECTRONICS WARRANTY LLC OR

18   SOMETIMES REFERRED TO AS N.E.W.

19         AND THAT IN FOOTNOTE 1 OF THE THIRD AMENDED COMPLAINT

20   IT STATED THAT, QUOTE,

21         "AS USED HERE IN THE TERM PRO-ESP'S AND PRO-ESP

22         WARRANTIES REFER TO THE EXTENDED SERVICE PLAN

23         WARRANTIES CREATED BY N.E.W. AND GATEWAY."

24         IN PARAGRAPH 17 IT INDICATES THAT -- WELL, IT MAKES

25   THE STANDARD AGENCY ALLEGATIONS AS BETWEEN GATEWAY AND N.E.W.

1           AND THEN IN PARAGRAPH 28 IT SAYS THAT THE SERVICE

2    CONTRACTS, INCLUDING THE PRO-ESP'S WERE N.E.W.'S AND G.C.I.'S

3    JOINT PRODUCT -- ALSO ALLEGES THAT N.E.W. PREPARED INITIAL FORM

4    OF SERVICE CONTRACT -- SORRY, SERVICE CONTRACTS AS WERE THE

5    AMENDMENTS WITH THE MUTUAL APPROVAL OF G.C.I.

6           AND ALSO IN FOOTNOTE 3 IT ALLEGES THAT, QUOTE,

7               "THE ADMISSION OF N.E.W. FROM ACTION" -- SORRY, "FROM

8               CERTAIN ALLEGATIONS IN THE FIRST, SECOND, AND THIRD

9               CLAIMS" -- AND THOSE WERE THE BREACH OF CONTRACT

10   CAUSES OF ACTION --

11              "SHOULD NOT BE INTERPRETED AS SIGNIFYING N.E.W.'S

12              LIMITED ROLE BECAUSE AS SET FORTH IN DETAIL HEREIN

13              N.E.W. AND GATEWAY ACTED IN CONCERT TO DEPRIVE

14              PLAINTIFF AND OTHERS SIMILARLY SITUATED OF THEIR

15              BARGAINED-FOR CONTRACT RIGHTS, END OF QUOTE.

16           IT SEEMS -- I GUESS, THAT I GUESS WOULD BE -- WELL,

17   THAT AND OTHER ITEMS ARE THE BASIS FOR N.E.W.'S CONTENTION THAT

18   N.E.W. HAS -- EVEN THOUGH IT DOES NOT HAVE A -- IT IS NOT A

19   PARTY TO THE CONTRACT BETWEEN PLAINTIFF AND GATEWAY, WHICH

20   CONTAINS THE ARBITRATION PROVISIONS, THAT N.E.W. IS ENTITLED TO

21   SEEK ARBITRATION FROM THE PLAINTIFF IN THIS MATTER.

22           AM I CORRECT?

23           MR. WALSH:  DAVE WALSH FOR N.E.W.

24           THAT, YOUR HONOR, AND THE FACT THAT THE ARBITRATION

25   CLAUSE IN THE LIMITED WARRANTY AS COMPARED WITH E.S.P. STATES

7

1  THAT ALL CLAIMS MADE AGAINST GATEWAY WITH RESPECT TO BOTH THAT

2  CONTRACT AND THE E.S.P. ARE SUBJECT TO ARBITRATION.

3              THE COURT:  OKAY.

4              MR. WALSH:  AND, SO, THEREFORE, DERIVATIVE OF THEIR

5  RIGHT TO COMPEL ARBITRATION.  THAT'S HOW WE ARGUED THAT WE

6  SHOULD BE ENTITLED TO --

7              THE COURT:  OKAY.

8              MR. WALSH:  -- AS WELL.

9              THE COURT:  LET ME -- REFRESH MY RECOLLECTION.

10             DOES THE ARBITRATION PROVISION INCORPORATE, AS SOME

11  DO, THE ARBITRATION ALSO COVERS ANY AGENTS, ET CETERA, ET

12  CETERA, OR IT DOESN'T HAVE THAT INFORMATION -- THAT TYPE OF

13  LANGUAGE?  I DON'T THINK IT DOES, FRANKLY, BUT I'M JUST -- I

14  CAN'T RECALL AT THIS POINT.

15             MS. CROWTHER:  YOUR HONOR, I BELIEVE YOU'RE RIGHT.

16  IT DOES NOT HAVE THAT LANGUAGE.

17             THE COURT:  OKAY.

18             WHILE HE'S LOOKING THAT UP, LET ME INDICATE TO BOTH

19  SIDES I HAVE ALSO BEEN RETHINKING MY RULING -- MY PREVIOUS

20  RULING IN REGARDS TO WAIVER.

21             AND THE LAST TIME -- NOT THE LAST TIME, BUT I GUESS

22  -- I CAN'T REMEMBER.  IT WAS IN -- I GUESS THE RULING WAS ON

23  -- IN FEBRUARY -- ON OR ABOUT FEBRUARY 10TH OF THIS YEAR -- I

24  INDICATED THAT THE COURT WOULD BE FINDING WAIVER.  BUT WHEN I

25  DID THAT, I SAID IT WOULD BE WITHOUT -- MY RULING WAS WITHOUT

1    PREJUDICE.

2            LET ME ASK THIS.  IT SEEMS TO THE COURT THAT FISHER

3    -- THE FISHER CASE PRIMARILY INDICATED THAT THERE WOULD NOT BE

4    WAIVER UNTIL SUCH TIME AS THE ACTUAL LAW WHICH BARRED THE

5    REQUEST FOR ARBITRATION WAS CHANGED OR THE LAW THAT AFFECTED

6    THE ABILITY TO SEEK ARBITRATION WAS CHANGED.

7            AND, OBVIOUSLY, HERE WHAT HAD HAPPENED WAS THAT, AS I

8    UNDERSTAND IT, IF I HAVE MY DATES CORRECT, THAT THE PLAINTIFF

9    FILED THE CLASS ACTION AGAINST GATEWAY ON OR ABOUT OCTOBER 16TH

10   OF 2009.

11           THE SUPREME COURT GRANTED CERTIORARI ON THE

12   CONCEPCION CASE ON OR ABOUT MAY 10TH -- SORRY, NOT MAY 10TH --

13   ON OR ABOUT -- WELL, SOMETIME IN MAY OF 2010.  AND THEN GATEWAY

14   ADDED N.E.W. BY WAY OF A THIRD-PARTY COMPLAINT ON OR ABOUT

15   SEPTEMBER 14TH OF 2010.  AND THE PLAINTIFF FILED A SECOND

16   AMENDED COMPLAINT WHICH ADDED N.E.W. AS A DEFENDANT.  AND THAT

17   WAS SOMETIME IN NOVEMBER OF 2010.  AND THEN ON OR ABOUT JANUARY

18   4TH OF 2011 GATEWAY FILED THE MOTION TO COMPEL ARBITRATION,

19   WHICH N.E.W. JOINED ON OR ABOUT JANUARY 18TH OF 2011.

20           AND THEN THE SUPREME COURT ISSUED ITS RULING ON OR

21   ABOUT APRIL 27TH, 2010.

22           WHAT THE COURT DID WAS FIND WAIVER BY GATEWAY BECAUSE

23   OF THE FACT THAT GATEWAY LITIGATED BETWEEN THE TIME THAT THE

24   CERTIORARI WAS GRANTED ON OR ABOUT -- WELL, SOMETIME IN MARCH

25   OF -- SORRY, MAY OF 2010 AND UP TO THE TIME WHERE GATEWAY FILED

1  THE MOTION TO COMPEL ARBITRATION OR THE APPLICATION TO COMPEL

2  ARBITRATION ON OR ABOUT JANUARY 4TH OF 2011.

3  FISHER I GUESS WOULD INDICATE THAT MAYBE THE COURT

4  WENT TOO FAR.  BUT BE THAT AS IT MAY, ONE COULD ALSO TAKE THE

5  POSITION THAT THE COURT SHOULD NOT HAVE FOUND WAIVER BECAUSE OF

6  THE FACT THAT EVEN HAD THE -- HAD GATEWAY MADE THE MOTION

7  EARLIER, THE COURT STILL WOULD BASICALLY NOT HAVE ORDERED

8  ARBITRATION BECAUSE AT THAT POINT IN TIME THE SUPREME COURT

9  HADN'T GOTTEN RID OF DISCOVERY --

10  IS IT DISCOVERY BANK OR DISCOVERY --

11  MS. CROWTHER:  DISCOVER BANK.

12  MR. RAFFERTY:  DISCOVER BANK.

13  THE COURT:  DISCOVER BANK.  DISCOVERY BANK.

14  AND, SO, THEREFORE, FOR ALL INTENTS AND PURPOSES

15  NOTHING WOULD HAVE REALLY HAPPENED UNTIL SUCH TIME AS THE

16  SUPREME COURT DID SOMETHING.

17  SO, FOR THAT REASON, YOU KNOW, FOR THE COURT TO HAVE

18  FOUND WAIVER, MAYBE THE COURT WENT TOO FAR.

19  SO, I JUST THROW THAT OUT SO THAT YOU GUYS CAN ARGUE

20  AMONGST YOURSELVES.  AND THEN I'LL DECIDE WHAT I WANT TO DO

21  AFTER THAT.

22  LET ME JUST ASK.  THE ARBITRATION PROVISIONS DON'T

23  HAVE ANY EXTENSION TO AGENTS, ET CETERA, ET CETERA, DOES IT?

24  MR. WALSH:  TO THE CONTRARY, YOUR HONOR, IT DOES.

25  THE TERM "GATEWAY" MEANS:

1          "GATEWAY, ITS PARENT, SUBSIDIARIES, AFFILIATES,

2          DIRECTORS, OFFICERS, EMPLOYEES, BENEFICIARIES,

3          AGENTS, ASSIGNS, COMPONENTS, SUPPLIERS, ANY THIRD

4          PARTY WHO PROVIDES PRODUCTS OR SERVICES PURCHASED

5          FROM OR DISTRIBUTED BY GATEWAY."

6          THE COURT:  ALL RIGHT.

7          MR. RAFFERTY:  AND AS WELL, YOUR HONOR, IN THE THIRD

8   AMENDED COMPLAINT THE FOOTNOTE AT PAGE 1 OF THE THIRD AMENDED

9   COMPLAINT THAT YOU CITED EARLIER ALSO INCORPORATES THAT LIMITED

10  WARRANTY WITHIN E.S.P.  IT'S AT THE TAIL END OF THAT FOOTNOTE.

11         THE COURT:  OKAY.  IT SEEMS TO ME THAT THE QUESTION I

12  DID ASK THE PARTIES TO ADDRESS FOR THIS HEARING I HAVE LOOKED

13  AT THE RESPONSES OF BOTH SIDES.  OBVIOUSLY, THERE ISN'T ANY LAW

14  DIRECTLY ON POINT.

15         BUT IT SEEMS TO ME THAT, YOU KNOW, IF I WERE TO SAY

16  THAT N.E.W. CAN COMPEL ARBITRATION, I WOULD SAY THAT I PROBABLY

17  WOULD HAVE TO DRAG -- YOU KNOW, IT WOULD DRAG IN GATEWAY BACK

18  INTO THAT PARTICULAR SCENARIO.  BECAUSE FRANKLY FOR N.E.W. TO

19  ARBITRATE WITHOUT GATEWAY WOULD BE A PROCEDURAL MORASS AND ALSO

20  LEAVE UP THE POSSIBILITY OF INCONSISTENT DETERMINATIONS, ET

21  CETERA, WHICH GETS BACK TO THE -- MY EARLIER POINT IS THE WHOLE

22  REASON FOR SAYING THAT N.E.W. CAN DRAG IN -- GATEWAY BACK IN IS

23  BECAUSE OF MY RULING ON WAIVER.  BUT NOW I'M WAVERING ON MY

24  WAIVER RULING, OBVIOUSLY, BECAUSE -- FOR A NUMBER OF REASONS.

25         SO, LET ME ASK THE PARTIES.  I PRESUME SOMEBODY WANTS

1    TO SAY SOMETHING AT THIS POINT.

2              MS. CROWTHER:  I DO.

3              I'M IN A POSITION OF BEING ABLE TO SAY, YOUR HONOR,

4    THAT YOU WERE RIGHT IN THE FIRST PLACE.  AND THAT WAS BACK IN

5    FEBRUARY OF 2011 WHEN WE DISCUSSED THIS ISSUE OF WAIVER.  AND

6    THERE'S NO QUESTION THAT CONCEPCION HAS CHANGED THE LANDSCAPE

7    OF ARBITRATION CLAUSES IN THE UNITED STATES.  WE'RE NOT SAYING

8    THAT IT WAS -- IT MEANS NOTHING.  BUT WE'RE SAYING THAT THERE

9    WAS A WHOLE BODY OF LAW THAT EXISTED ABOUT ARBITRATION CLAUSES

10   BEFORE THAT HAS NOT YET BEEN CHANGED BY CONCEPCION AND MAY NOT

11   BE.

12             AND ONE OF THOSE ISSUES IS YOU HAVE TO LOOK AT THE

13   LANGUAGE OF THE ARBITRATION CLAUSE ITSELF.  AND TO SAY THAT

14   NEITHER GATEWAY NOR N.E.W. HAD A RIGHT TO ARBITRATE BEFORE

15   CONCEPCION IGNORES NINTH CIRCUIT AND CALIFORNIA PRECEDENT AS

16   WELL AS THE LANGUAGE OF THE ARBITRATION CLAUSE.  AND HERE'S

17   WHY.

18             AT&T MOBILITY WANTED TO BE SURE THAT THEY WOULD NOT

19   HAVE TO ARBITRATE AS A CLASS.  AND, SO, THERE WAS LANGUAGE IN

20   THEIR ARBITRATION CLAUSE THAT SAID IF THE CLASS WAIVER IS FOUND

21   TO BE UNENFORCEABLE, THERE WILL BE NO ARBITRATION.  WE WILL GO

22   TO COURT.

23             AND I REFER TO THAT IN MY HEAD AS THE LANGUAGE THAT

24   BLEW UP THE ARBITRATION CLAUSE.  YOU COULD NOT SEVER THAT CLASS

25   WAIVER FROM THE REST OF THE ARBITRATION CLAUSE.  AND, SO, THOSE

1  DEFENDANTS DID NOT HAVE A RIGHT TO COMPEL ARBITRATION UNTIL THE

2  DISCOVER BANK RULE WAS OVERTURNED.  THAT'S NOT WHAT WE HAVE

3  HERE.

4          WHAT WE HAVE HERE IS AN ARBITRATION CLAUSE AND A

5  SEVERABILITY CLAUSE.  AND THE SEVERABILITY CLAUSE SAYS THAT IF

6  ANY PROVISION IS FOUND TO BE UNENFORCEABLE, IT WILL BE EXCISED.

7  AND THE REST OF THE CLAUSE WILL BE ENFORCED.

8          AND THROUGH A SERIES OF TENTATIVE RULINGS, WHAT YOU

9  HAVE INDICATED, YOUR HONOR, IN RESPONSE TO THE DEFENDANT'S

10  ARGUMENTS IS THAT THE ONLY DEFECT IN THIS ARBITRATION CLAUSE

11  WAS THE CLASS WAIVER.

12          AND THE SEVERABILITY LANGUAGE AS WELL AS THE

13  ARMENDARIZ DECISION FROM CALIFORNIA GAVE YOU THE OPPORTUNITY TO

14  SEVER THAT CLASS WAIVER.

15          AND WE HAVE CITED DISTRICT COURTS' OPINIONS PRE

16  CONCEPCION, THE JONES DECISION AND THE I.L.- -- I.J.L. DECISION

17  WHERE COURTS EXCISED CLASS WAIVERS AND SENT THE REMAINDER OF

18  THE CASE TO ARBITRATION.

19          AND THAT'S WHAT -- THAT IS WHY YOU FOUND IN FEBRUARY

20  THAT GATEWAY HAD A RIGHT TO COMPEL ARBITRATION.

21          NOW, THEY MAY OR MAY NOT HAVE HAD A RIGHT TO COMPEL

22  CLASS ARBITRATION.  WE'VE CITED CASES WHERE COURTS HAVE ALLOWED

23  DEFENDANTS TO GET AROUND DISCOVER BANK.

24          AND I AGREE THAT IN SOME WAYS THOSE CASES ARE

25  DISTINGUISHABLE.  THEY INVOLVE MORE MONEY THAN WE MAY BE

1    TALKING ABOUT HERE.  BUT WHAT A RULING THAT REVERSES YOUR

2    FINDING ON WAIVER WOULD SAY IS DESPITE THE FACT THAT YOU COULD

3    GET AROUND DISCOVER BANK IN THE RIGHT CIRCUMSTANCES AND DESPITE

4    THE SEVERABILITY CLAUSE, GATEWAY DIDN'T EVEN HAVE TO TRY.

5            AND THERE IS NO FEDERAL RIGHT TO AVOID CLASS

6    ARBITRATION.  THERE IS A FEDERAL RIGHT TO ARBITRATE.  THAT'S

7    THE RIGHT THAT CAN BE WAIVED.  AND GATEWAY COULD HAVE COME TO

8    YOU AND HAVE SAID PLEASE EXCISE THE CLASS WAIVER.  AND, IN

9    FACT, IF I'M A CREATIVE LAWYER, I'M GOING TO GO TO THE

10   ARBITRATOR AND I SAY --

11           THE COURT:  BUT LET ME ASK.  WHAT JUDGE IN THEIR

12   RIGHT MIND WOULD REQUIRE THE PARTIES TO DO THAT?  BECAUSE,

13   AGAIN, THIS CASE WAS BROUGHT AS A CLASS ACTION.  AND TO SAY

14   THAT, YOU KNOW, LET'S GO FORWARD AND DO THIS RATHER THAN

15   WAITING FOR CONCEPCION AND SEE HOW CONCEPCION, YOU KNOW, DEALS

16   WITH THESE ISSUES, ANY JUDGE WHO, YOU KNOW, DOES THAT WOULD BE

17   ACTING PRECIPITOUSLY.

18           IS THAT THE RIGHT WORD?

19           MS. CROWTHER:  WELL, I SUBMIT TO YOUR HONOR THAT THE

20   JUDGES WHO DID JUST THAT ARE JUDGE PHILLIPS IN THIS DISTRICT

21   AND I BELIEVE IT WAS MAGISTRATE JUDGE ZIMMERMAN IN THE NORTHERN

22   DISTRICT.

23           AND WHAT THEY -- IT WASN'T THAT THEY SAID YOU MAY

24   HAVE A RIGHT TO PROCEED AS A CLASS.  WHAT THEY SAID IS I'LL

25   TAKE OUT THE CLASS WAIVER AND SEND YOU.  AND THEN IN LIGHT OF

1   STOLT-NIELSEN, WHICH SAYS IF A CONTRACT IS SILENT ON CLASS

2   PROCEEDINGS, THE ARBITRATOR HERE MAY HAVE FOUND THAT WE

3   COULDN'T PROCEED AS A CLASS ANYWAY.

4          IN ADDITION, IF THE ARBITRATOR HAD CERTIFIED OUR

5   CLASS, AND CONCEPCION CAME DOWN, THAT ARBITRATOR MAY HAVE DONE

6   WHAT OTHER JUDGES HAVE DONE AND DE-CERTIFIED.

7          THE COURT:  BUT THE PROBLEM IS IS THAT THE INDIVIDUAL

8   ACTION WHICH WOULD HAVE GONE TO ARBITRATION AS YOU'VE INDICATED

9   IS -- YOU KNOW, IN OTHER WORDS, IT IS A MINOR THING RELATIVELY.

10  IT'S NOT MUCH MONEY INVOLVED.

11         AND, SO, THEREFORE, THE WHOLE POINT OF THE CASE IS

12  THE CLASS NATURE OF IT.  IT'S NOT -- EVEN IN CONCEPCION WAS

13  DEALING WITH POTENTIALLY A LOT MORE BECAUSE OF THE WAY IN WHICH

14  THE ARBITRATION WAS STRUCTURED THERE INSOFAR AS, YOU KNOW, THE

15  MINIMUM FEES IF -- MINIMUM AMOUNTS IN TERMS OF WHAT COULD BE

16  RECOVERED IF THE PLAINTIFFS WERE SUCCESSFUL IN GETTING A

17  DECISION THAT IS IN EXCESS OF WHAT THE DEFENDANT OFFERED IN

18  TERMS OF SETTLING THE CASE AND THE ATTORNEY'S FEES AND ALL THE

19  OTHER TYPE OF STUFF WHICH IS NOT REALLY PRESENT HERE IN THE

20  SAME TYPE OF SITUATION.

21         SO, I MEAN, AGAIN -- AND I DON'T UNDERSTAND THE POINT

22  OF DOING THE -- YOU KNOW, DOING THAT BECAUSE IT'S A DIFFERENT

23  TYPE OF SITUATION.

24         AND, AGAIN, THE QUESTION REALLY IS NOT WHETHER OR NOT

25  -- I SUPPOSE IT'S FEASIBLE IN THE SENSE THAT POTENTIALLY IT

1    COULD BE DONE.  BUT THE PROBLEM IS IS THAT WHAT YOU WANT ME TO

2    SAY IS THAT -- THAT UNLESS THE DEFENDANT ELECTS TO DO IT IN

3    THAT FASHION, THEN, THE DEFENDANT HAS WAIVED.

4            AND I DON'T KNOW WHETHER OR NOT REALLY I CAN SAY THAT

5    IN LIGHT OF MY RE-READING OF FISHER, ET CETERA.

6            MS. CROWTHER:  WELL, YOUR HONOR, WHAT I'M ACTUALLY

7    DOING IS ASKING YOU TO REITERATE WHAT YOU SAID IN FEBRUARY ON

8    THE RECORD, WHICH IS THAT WHEN YOU LITIGATE, IT IS INCONSISTENT

9    WITH THE DESIRE TO ARBITRATE.

10           AND WHAT GATEWAY SAID WAS WE DON'T WANT TO ARBITRATE

11   ON A CLASS BASIS.  BY SAYING WE'LL BE HERE UNTIL IT APPEARED

12   THAT THEY HAVE THE RIGHT TO COMPEL ARBITRATION, THEY SAID -- ON

13   AN INDIVIDUAL BASIS, THEY SAID WE'LL STAY HERE.

14           THE COURT:  I GUESS ACTUALLY THAT IS A GOOD POINT.  I

15   MEAN, I GUESS YOUR POINT WOULD BE IS THAT BY ARBITRATING

16   INDIVIDUALLY THAT IS THE END RESULT OF THE DEFENDANT'S POSITION

17   COMBINED WITH A -- YOU KNOW, A CONCEPCION DECISION, WHICH WOULD

18   HAVE BEEN WHAT THE DEFENDANTS WANTED.

19           MS. CROWTHER:  YES.  AND, ALSO, THAT THE REASON THAT

20   IT NOW LOOKS LIKE THE CLASS WAIVER WAS IMPORTANT IS BECAUSE

21   GATEWAY ACTED THE SAME WAY TO 1.7 MILLION PEOPLE.  BUT THAT'S

22   NOT THE QUESTION YOU ASK WHEN YOU'RE LOOKING AT WHETHER YOU CAN

23   SEVER A CLASS WAIVER IN AN ARBITRATION CLAUSE.  THE QUESTION

24   THERE YOU ASK IS IS THERE ENOUGH HERE TO ENFORCE THE

25   ARBITRATION PROVISION WITHOUT THE CLASS WAIVER.  AND THERE

1    CERTAINLY WAS.  YOU COULD SAY, FINE, I'M GOING TO EXCISE THAT

2    CLASS WAIVER, AND I'LL LEAVE THE REST TO THE ARBITRATOR.

3            THE COURT:  ALL RIGHT.

4            MS. CROWTHER:  AND THAT'S WHAT THEY SHOULD HAVE ASKED

5    YOU TO DO.

6            THE COURT:  I UNDERSTAND.  LET ME HEAR FROM THE

7    DEFENSE.

8            WHAT'S THE DEFENSE RESPONSE.

9            MR. RAFFERTY:  THANK YOU, YOUR HONOR.

10            JUST IN TERMS OF BACKGROUND TO HOW WE GOT HERE TODAY,

11    I'D SAY IN 23 YEARS, THIS WAS THE FIRST TIME THAT I HAD REALLY

12    BEEN A PART OF SEEING SOMETHING LIKE THIS WHERE THE SUPREME

13    COURT HAD CHANGED THE LAW.  AND BEFORE THAT, I THINK LIKE THE

14    COURT WE ALL LOOKED AT WHAT WAS ESSENTIALLY A FISHER ANALYSIS

15    BUT WE NEVER LOOKED AT THE TERM "EXISTING RIGHT" TO MOVE TO

16    COMPEL.  AND, SO, WE ALWAYS LOOKED AT HOW MUCH LITIGATION HAD

17    BEEN DONE AND FOR HOW LONG.

18            AFTER CONCEPCION CAME DOWN, I THINK COUNSEL AND THE

19    COURTS ALIKE BEGAN NOW TO REVISIT WHAT FISHER REALLY INTENDED.

20    BUT ALWAYS BEFORE CONCEPCION, AT LEAST IN THIS BODY OF LAW

21    RELATED TO DISCOVER BANK, NO ONE EVER NEEDED TO FOCUS ON WHAT

22    EXISTING RIGHT MEANT.

23            THE COURT:  WELL, LET ME JUST ASK YOU.  YOU CITED TO

24    -- WHAT? -- IT'S LETIZIA?

25            IS THAT HOW YOU PRONOUNCE IT?

1        MR. RAFFERTY:  LETIZIA.

2        THE COURT:  LETIZIA, WHERE THEY HAVE DONE ACTUALLY

3   QUITE A BIT OF LITIGATION IN THAT CASE.  ALTHOUGH, THE RESULT

4   THERE I THINK -- I CAN'T REMEMBER WHAT THE ULTIMATE RESULT WAS.

5        MR. RAFFERTY:  THE COURT FROM LETIZIA IS THAT WAIVER

6   COULD ONLY OCCUR WHERE THERE WAS AN EXISTING RIGHT TO

7   ARBITRATE, AS WITH FISHER WHERE THEY ARBITRATED FOR YEARS AND

8   OTHER CASES WE'VE CITED IN OUR PAPERWORK WHERE PEOPLE WERE

9   AGGRESSIVELY LITIGATING FOR YEARS UNTIL AFTER CONCEPCION CAME

10  OUT.  AND I THINK AFTER CONCEPCION CAME OUT AND WE BEGAN TO

11  REDISCOVER WHAT WAIVER MEANT PRIOR TO THE CHANGE IN CONCEPCION

12  WE AND I THINK DISTRICT COURTS -- BECAUSE WE'VE CITED MANY IN

13  OUR PAPERWORK AS WELL -- HAVE REALIZED THAT WAIVER IS NOT

14  APPROPRIATE.  BUT I CAN SEE HOW BEFORE CONCEPCION CAME DOWN WE

15  WERE REALLY ARGUING HOW MUCH AND HOW LONG.  WE WEREN'T FOCUSING

16  ON THE FISHER STANDARD.

17       DISCOVER BANK WAS VERY CLEAR IN PREVENTING DISPUTE

18  RESOLUTION PROVISIONS EXACTLY LIKE GATEWAY'S FROM BEING

19  ENFORCED.  AND, SO, WE INDICATED THAT WE HAD NO EXISTING

20  RIGHT.

21       OUR STANDARD IS VERY LOW, AS YOU KNOW.  WE HAVE ONLY

22  A REASONABLE PERCEPTION TO SHOW UNDER FISHER THAT WE BELIEVED

23  THAT FILING A MOTION AND HAVING IT GRANTED WOULD BE FUTILE.

24  AND I THINK WE ESTABLISHED THAT.  AND I THINK IT'S NOW

25  PAINFULLY EVIDENT TO MOST OF THE DISTRICT COURTS UNDER THIS NEW

18

1    DAY.

2              THERE WERE INITIALLY BY MR. WILSON SEVERAL DEFENSES.

3    MS. CROWTHER DOES REASONABLY CONCEDE THAT SOME OF THE

4    EXCEPTIONS ARE NOT VERY STRONG BECAUSE WHAT THEY EARLIER CITED

5    WAS AN EXCEPTION UNDER WALNUT PRODUCERS, ARGUELLES, AND

6    CARDENAS, THESE CASES THAT THEY CITED, TO FIND THEIR WAY OUT OF

7    DISCOVER BANK.  BUT THOSE MOVE TO COMPEL IN THE AGE OF DISCOVER

8    BANK BECAUSE THE AMOUNTS AT ISSUE WERE VERY, VERY HIGH.  AND

9    THAT DIDN'T APPLY HERE.

10             AND, SO, AT THE END OF THE BRIEFING INTO NOW OUR

11   SUPPLEMENTAL BRIEFING, WHAT WE'VE SEEN IS IN SOME SENSE THE

12   FINAL FRONTIER.  AND THE FINAL FRONTIER FOR MR. WILSON THAT HAS

13   NOW BELATEDLY COME UP IS SEVERANCE.  AND NOW I'LL JUST BRIEFLY

14   ADDRESS THAT.

15             THE DIFFERENCE WITH WHAT MR. WILSON IS ARGUING AND IN

16   THE CASE IN POINT HERE IS THAT HERE THE CLASS ACTION WAIVER IS

17   CENTRAL TO THE PROVISION.  NO -- NO ONE COULD REASONABLY ARGUE

18   THAT A CLASS WAIVER WHICH TAKES AN ARBITRATION FROM 1,700,000

19   PEOPLE TO ONE PERSON IS NOT CENTRAL AND MATERIAL TO THE

20   PROVISION.

21             WE CITED THE OMSTEAD CASE, WHICH IS PREVAILING LAW IN

22   THE NINTH CIRCUIT, A 2010 CASE.  AND THAT CASE STANDS FOR THE

23   PREMISE THAT CLASS ACTION WAIVER AND ARBITRATION AGREEMENT

24   CANNOT BE SEVERED.  IT IS CENTRAL TO THE AGREEMENT.

25             WE ALSO CITED A CASE ON POINT, THE QUEVEDO CASE WITH

1  JUDGE FEESS, WHERE A RIGHT TO ARBITRATE AN INDIVIDUAL CLAIM IS

2  A MATERIAL DIFFERENCE TO A CLASS OR COLLECTIVE CLAIM.

3            AND, SO, FOR THESE REASONS PRIMARILY THE CLASS ACTION

4  WAIVER MUST BE DEEMED CENTRAL TO THE PROVISION.  AND IF SO, IT

5  SIMPLY CAN'T BE SEVERED BECAUSE THE COURT SHOULD NOT CONCLUDE

6  THAT WITHOUT IT THE ARBITRATION PROVISION IS STILL MATERIALLY

7  THE SAME.  IT'S ABSOLUTELY FUNDAMENTALLY DIFFERENT.

8            A FEW SECONDARY POINTS.  IF, IN FACT, IT WAS NOT

9  CENTRAL TO THE AGREEMENT, THEN, WE WOULD NOT SEE THE LATEST

10  CONCESSION BY MR. WILSON, WHICH IS NOW THAT HE CAN'T CONTINUE

11  TO ARBITRATE AGAINST N.E.W. ON A CLASS BASIS, HE'S WILLING TO

12  ABANDON N.E.W. IN ENTIRETY.  THAT CERTAINLY SUGGESTS THAT THIS

13  PROVISION IS VERY IMPORTANT.  AND I THINK THAT'S AN IMPORTANT

14  CONCESSION MADE BY THE PLAINTIFF.

15            ONE MIGHT ALSO ARGUE THAT IT'S A MOOT POINT.  THE

16  LAST TIME WE DID ARGUE AS WELL SEVERABILITY.  N.E.W. ADDRESSED

17  THE ISSUE.  THE COURT INDICATED NONETHELESS DESPITE THOSE

18  ARGUMENTS IT WAS INCLINED TO GRANT N.E.W.'S MOTION.

19            IN ADDITION, ONE FATAL FLAW IN MR. WILSON'S ARGUMENT

20  IS THAT THE COURT SOMEHOW CONSIDER AGAIN SEVERING THE PROVISION

21  BASED ON WHAT THE PROVISION COULD HAVE BEEN -- NOT WHAT THE

22  PROVISION WAS.

23            BUT COURTS MUST LOOK AT THE DISPUTE RESOLUTION

24  PROVISION AS IS IN ENFORCING WAIVER NOT WHAT IT COULD HAVE

25  BEEN.  SEVERABILITY IS NOT A PANACEA TO RECONSIDER WAIVER UNDER

 1    A PROVISION THAT DOESN'T EXIST.  AND WE CITED THE NAKANO CASE

 2    WHICH IS ON POINT ON THAT ISSUE.

 3         FINALLY, INTERESTINGLY, FISHER'S ANALYSIS OF

 4    REASONABLE PERCEPTION ALSO APPLIES TO SEVERABILITY.  AND WE HAD

 5    NO REASONABLE PERCEPTION WE WOULD SEVER THAT PROVISION, AND

 6    THAT IT WOULD NOT BE CENTRAL.  SO, THERE'S SIX DIFFERENT

 7    REASONS WHY SEVERANCE DOESN'T WORK AND WHY HAVING RECONSIDERED

 8    WAIVER THAT GATEWAY'S MOTION MAY ALSO BE GRANTED, IT BEING

 9    BASED ON THE EXACT SAME GROUNDS AS N.E.W.'S MOTION.  AND THAT

10    IS THE GATEWAY LIMITED WARRANTY.

11         THANK YOU.

12         THE COURT:  ALL RIGHT.  ANYTHING FROM N.E.W.?

13         MR. WALSH:  YOUR HONOR, JUST THAT THE SEVERABILITY

14    ARGUMENT THAT HAS BEEN SO THOROUGHLY BRIEFED BY THE OTHER TWO

15    PARTIES IS GROUNDED IN THE CONCEPT OF WAIVER.  AND THE COURT

16    HAS REPEATEDLY FOUND ON THE RECORD THAT OUR CLIENT DIDN'T WAIVE

17    ITS RIGHTS AND THAT WE TIMELY BROUGHT OUR MOTION.  SO, WHATEVER

18    THIS OUTCOME BETWEEN THEM ON SEVERABILITY IS, IF N.E.W. DOES --

19    IS ABLE TO GO TO ARBITRATION, THEN, THE SAME ISSUE, WHICH YOU

20    RAISED AT THE END OF THE LAST HEARING, PERSISTS.

21         THE COURT:  ALL RIGHT.

22         WHAT IS THE NEXT SCHEDULED THING IN THIS MATTER?

23         ANYTHING?

24         MS. CROWTHER:  I DON'T BELIEVE THERE IS.

25         THE COURT:  OKAY.

1          (THE COURT AND CLERK CONFERRING.)

2          THE COURT:  ALL RIGHT.  LET ME DO THIS.  I WILL

3     CONTINUE THIS MATTER TO SEPTEMBER 15TH.  AND I WILL LET YOU

4     KNOW WHAT MY RULING IS ON SEPTEMBER 15TH.  YOU CAN APPEAR

5     TELEPHONICALLY.

6          MR. WALSH:  THANK YOU, YOUR HONOR.

7          MS. CROWTHER:  THANK YOU, YOUR HONOR.

8          MS. LEES:  THANK YOU, YOUR HONOR.

9          MR. RAFFERTY:  THANK YOU, YOUR HONOR.

10          MS. CROWTHER:  I WAS HOPING YOU WANTED TO HEAR SOME

11     RESPONSE TO MR. RAFFERTY'S ARGUMENTS ON WAIVER BECAUSE I THINK

12     THERE ARE SOME IMPORTANT POINTS, BUT I'LL WAIT --

13          THE COURT:  WELL --

14          MS. CROWTHER:  -- TO BE INVITED.

15          MR. WALSH:  -- PERSUASIVE, COUNSEL.

16          MS. CROWTHER:  I CAN BE CONCISE.

17          THE COURT:  YES.

18          MS. CROWTHER:  I PROMISE.

19          THE COURT:  WELL, YOU WERE CONCISE BEFORE.

20          MS. CROWTHER:  THE ISSUE RELATING TO WAIVER, IF THE

21     OMSTEAD DECISION MEANT WHAT GATEWAY SAYS IT SAYS, WHICH IS THAT

22     A CLASS WAIVER IS NECESSARILY CENTRAL TO AN ARBITRATION

23     PROVISION, YOU WOULD NEVER HAVE COURTS SEVERING CLASS WAIVERS.

24     IT DOESN'T MEAN THAT.

25          THE OMSTEAD DECISION ACTUALLY DOESN'T HAVE ANY

```
 1   ANALYSIS OF WHAT MADE THAT CLASS WAIVER CENTRAL.  IT'S AN
 2   APPELLATE COURT.  THE APPELLATE COURT SAYS WE'RE NOT GOING TO
 3   DIG INTO THE DETAILS OF THE CLAUSE.  BUT WHEN YOU LOOK AT
 4   I.L.J. -- IT'S JUST LUNCH -- I.J.L. AND JONES, YOU SEE ANALYSIS
 5   OF WHAT MAKES A CLASS ACTION WAIVER CENTRAL.
 6        AND BOTH OF THOSE JUDGES SAID -- ONE INVOLVED -- ONE
 7   INVOLVED EXOTIC DANCERS AND ONE INVOLVED A FRANCHISE
 8   AGREEMENT.  AND BOTH OF THEM FOUND THAT THE CLASS WAIVER WAS
 9   NOT CENTRAL AND COULD BE SEVERED.
10        NOW, THE FACT THAT WE ARE -- THAT WE'RE SAYING WE MAY
11   NOT ARBITRATE WITH N.E.W. IF ONLY COMPELLED TO DO SO DOESN'T
12   MEAN THAT WE ARE CONCEDING THAT THE CLASS WAIVER WAS CENTRAL.
13        OUR ARGUMENT THERE WAS THAT MR. WILSON AS A PUTATIVE
14   CLASS REPRESENTATIVE HAS OBLIGATIONS TO THE CLASS.  AND
15   ASSUMING THAT GATEWAY STAYS IN LITIGATION MAY NOT COMPROMISE
16   HIS STANDING BY ARBITRATING WITH N.E.W., WHICH IS EXACTLY WHAT
17   HAPPENED IN THE ZYNGA DECISIONS WHICH GATEWAY ORIGINALLY
18   BROUGHT TO THE COURT'S ATTENTION.  THERE MAGISTRATE JUDGE
19   LAPORTE COMPELLED ARBITRATION WITH ZYNGA BUT NOT WITH THE
20   CODEFENDANT WHO WAS ALLEGED TO HAVE BEEN ENGAGED IN JOINT
21   MISCONDUCT WITH ZYNGA BECAUSE THAT CODEFENDANT DID NOT HAVE A
22   RIGHT.
23        SO, WHAT WAS GOING TO HAPPEN WAS THE CO-DEFENDANT'S
24   CASE WOULD BE STAYED.  ZYNGA WOULD ARBITRATE.  AND THE
25   PLAINTIFF DISMISSED WITH PREJUDICE AGAINST ZYNGA.  IT'S JUST --
```

1    THAT CAN BE THE WAY IT WORKS.

2            THE FEDERAL ARBITRATION ACT CONTEMPLATES THAT THERE

3    WILL BE PIECEMEAL RESOLUTION OF THESE CLAIMS.  THAT'S WHY A

4    STAY CAN BE SOUGHT.  BUT IF YOU FIND THAT GATEWAY WAIVED BY --

5    FOR WHATEVER REASON, FAILING TO ASSERT SEVERANCE, LITIGATING

6    AGGRESSIVELY, THAT'S A DEFAULT UNDER THE ARBITRATION ACT.  AND

7    REGARDLESS OF WHAT HAPPENS WITH N.E.W., GATEWAY CANNOT BE SENT

8    TO ARBITRATION.

9            SO, YOU HAVE TO RESOLVE THIS ISSUE OF GATEWAY'S

10   WAIVER.  AND I SUBMIT THAT BECAUSE THEY COULD HAVE COME IN

11   UNDER ARMENDARIZ AND ASKED YOU TO EXCISE THE CLASS WAIVER THAT

12   THEY WAIVED IT.

13           IN ADDITION, IF WE LOSE THE WAIVER ISSUE, THERE STILL

14   HAS TO BE A DETERMINATION ABOUT WHETHER THE REMAINING CLAUSE IS

15   ENFORCEABLE.  AND WE HAVE MANY ARGUMENTS ON UNCONSCIONABILITY.

16   I THINK IT'S SAFE TO SAY THAT IT'S --

17           THE COURT:  LET ME ASK.  I THOUGHT WE HAD ALREADY

18   GONE THROUGH THOSE.

19           WHAT ARE THE ONES THAT WE HAVEN'T GONE THROUGH?

20           MS. CROWTHER:  WELL, THERE HASN'T BEEN AN ACTUAL

21   RULING -- I THINK READING -- READING YOUR HONOR'S WORDS

22   BROADLY, THAT IF YOU WERE GOING TO COMPEL N.E.W. TO ARBITRATE

23   YOU WOULD BE FINDING THAT THE CLAUSE WAS ENFORCEABLE.

24           BUT THERE ARE A LOT OF REASONS -- I MEAN, A LOT OF

25   CASE LAW THAT WE ASSERTED.  I THINK IT'S SAFE TO SAY IT'S

1    LIKELY THIS CASE WILL GO TO THE NINTH CIRCUIT EITHER WAY.  AND

2    THOSE ARE ISSUES THAT HAVE GOT TO BE RESOLVED.  WE HAVEN'T HAD

3    A WRITTEN RULING YET ON THE VARIOUS UNCONSCIONABILITY ARGUMENTS

4    THAT WE RAISED.

5              THE COURT:  OKAY.

6              MS. CROWTHER:  AND I THINK THAT THEY ARE -- THAT

7    THEY'RE STILL VALID.  YOU KNOW, MR. RAFFERTY IS SAYING THAT THE

8    COURT HAS TO ENFORCE THE ARBITRATION CLAUSE AS WRITTEN.

9              YOU MIGHT REMEMBER FROM LAST TIME I WAS --

10             THE COURT:  I WILLING TO --

11             MS. CROWTHER:  -- PASSIONATELY ARGUING ABOUT THE

12   N.A.F. AND --

13             THE COURT:  YES.

14             MS. CROWTHER:  -- THE N.A.F. RULES.  SO, I THINK

15   THOSE ARE CRITICAL ISSUES.

16             AND OVERALL, THE STEPS THAT YOU WOULD HAVE TO TAKE TO

17   ENFORCE THIS ARBITRATION CLAUSE AT THIS POINT TO FIND NO

18   WAIVER, TO FIND IT DOESN'T MATTER THAT THE N.A.F. CAN'T TAKE

19   THESE CLAIMS, TO FIND IT DOESN'T MATTER THAT NO ONE ELSE CAN

20   ENFORCE THEIR RULES, TO FIND THAT THEIR RULES VIOLATED NINTH

21   CIRCUIT PRECEDENT AT THE OUTSET, AND TO FIND THAT WE'VE NOT

22   BEEN PREJUDICED BY PARTICIPATING IN CLASS DISCOVERY AND ONLY

23   CLASS DISCOVERY IS JUST TOO MUCH.  AND WE SHOULD GO FORWARD AND

24   LITIGATE.

25             THE COURT:  OKAY.

1    MS. CROWTHER:  THANK YOU.

2    THE COURT:  YOU'RE STANDING UP FOR A REASON?

3    MR. RAFFERTY:  YES, YOUR HONOR.

4    THE COURT:  YOUR LEGS ARE TIRED.

5    MR. RAFFERTY:  THE COURT DID ADDRESS EACH OF THOSE

6  ISSUES BEFORE AND ALREADY GAVE ITS OPINIONS ON THE RECORD.

7    I'D JUST LIKE TO CONCLUDE BY INDICATING FROM A

8  COMMON-SENSE STANDPOINT, THIS WHOLE SEVERABILITY ISSUE, IT'S A

9  FLAT WHEEL BECAUSE HOW DOES ONE ARGUE THAT ANY PARTY WOULD WANT

10  TO GO FROM LITIGATING A CLASS ACTION WITH 2 MILLION PEOPLE TO

11  ARBITRATING WITH 2 MILLION PEOPLE AS THOUGH THAT'S A MATERIAL

12  CHANGE IN ANYTHING.

13    AND TYING INTO THE COURT'S ORIGINAL COMMENT OF

14  MORASS, I JUST CLOSE WITH THE CONCEPCION CASE AND THE SUPREME

15  COURT'S VIEW ON ALL OF THIS.  THIS SPECIFIC ISSUE -- AND IT

16  TIES DIRECTLY TO SEVERABILITY WHICH IS WHY IT'S A BAD IDEA.

17  AND THAT IS AS FOLLOWS:  QUOTE,

18    "CLASS ARBITRATION SACRIFICES THE PRINCIPAL

19    ADVANTAGES OF ARBITRATION, ITS INFORMALITY,

20    AND MAKES THE PROCESS SLOWER, MORE COSTLY,

21    AND A PROCEDURAL MORASS," WHICH IS WHAT THE COURT

22  BEGAN WITH.

23    SO, THANK YOU.

24    THE COURT:  ALL RIGHT.  I WILL SEE -- EITHER SEE YOU

25  OR HEAR FROM YOU ON THE 15TH OF SEPTEMBER.  AND, AGAIN, YOU CAN

26

1    APPEAR TELEPHONICALLY, IF YOU SO DESIRE.  YOU DON'T HAVE TO

2    COME ALL THE WAY UP HERE.

3              MS. CROWTHER:  IS THAT 8:30?

4              THE COURT:  IT WILL BE 8:30.

5              MS. CROWTHER:  THANK YOU.

6              MR. RAFFERTY:  THANK YOU, YOUR HONOR.

7              MS. LEES:  THANK YOU, YOUR HONOR.

8              (PROCEEDINGS ADJOURNED AT 9:43 A.M.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

27

1

2

3                          REPORTER'S CERTIFICATE

4

5

6        I HEREBY CERTIFY THAT THE FOREGOING IS A CORRECT

7   TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED

8   MATTER.

9

10                                    DATE:

11

12

13
                  S/S MARGARET JEAN BABYKIN, CSR NO. 10466
14

15

16

17

18

19

20

21

22

23

24

25

**EXHIBIT A-5**

1

```
 1                UNITED STATES DISTRICT COURT

 2              CENTRAL DISTRICT OF CALIFORNIA

 3                     WESTERN DIVISION

 4        THE HONORABLE GEORGE H. WU, JUDGE PRESIDING

 5

 6   PETER WILSON,                    )
                                      )
 7                   Plaintiff,       )
                                      )
 8                                    )
            vs.                       )   No. CV 09-7560-GW-VBK
 9                                    )
     GATEWAY, INC., et al.,           )
10                                    )
                     Defendants.      )
11   _____)

12

13

14

15         REPORTER'S TRANSCRIPT OF PROCEEDINGS

16

17               Los Angeles, California

18       Thursday, September 22, 2011, 10:47 A.M.

19     Defendant Gateway's Motion to Compel Arbitration

20

21                        PAT CUNEO CSR 1600, CRR-CM
                          Official Reporter
22                        Roybal Federal Building
                          Room 181-E
23                        255 East Temple Street
                          Los Angeles, California 90012
24                        (213) 617-1817
                          grammacuneo@aol.com
25
```

2

```
 1   APPEARANCES OF COUNSEL:

 2   FOR THE PLAINTIFF:   CALDWELL, LESLIE & PROCTOR PC
                          BY:  ROBYN C. CROWTHER, ATTORNEY AT LAW
 3                        and  MATTHEW W. O'BRIEN, ATTORNEY AT LAW
                          1000 Wilshire Boulevard
 4                        Suite 600
                          Los Angeles, California  90017-2463
 5                        (213) 629-9040
                          crowther@caldwell-leslie.com
 6                        obrien@caldwell-leslie.com

 7   FOR DEFENDANT GATEWAY:

 8                        JONES DAY
                          BY:  PAUL F. RAFFERTY, ATTORNEY AT LAW
 9                        3161 Michelson Drive
                          Suite 800
10                        Irvine, California  92612
                          (949) 553-7855
11                        prafferty@jonesday.com

12   FOR DEFENDANT NATIONAL ELECTRONICS WARRANTY LLC:

13                        PAUL HASTINGS
                          BY:  DAVID M. WALSH, ATTORNEY AT LAW
14                        and  ADAM SEVELL, ATTORNEY AT LAW
                          515 South Flower Street
15                        25th Floor
                          Los Angeles, California  90071-2228
16                        (213) 683-6181
                          davidwalsh@paulhastings.com
17
     FOR THIRD PARTY DEFENDANTS AIG/CHARTIS:
18
                          GIBSON, DUNN & CRUTCHER LLP
19                        BY:  GAIL E. LEES, ATTORNEY AT LAW
                          333  South Grand Avenue
20                        Los Angeles, California  90071
                          (213) 229-7163
21                        glees@gibsondunn.com

22   APPEARING TELEPHONICALLY:

23   FOR THE PLAINTIFF:   MEISELMAN DENLEA PACKMAN CARTON & EBERZ
                          BY:  KERRI CUNNINGHAM, ATTORNEY AT LAW
24                        1311 Mamaroneck Avenue
                          Suite 616
25                        White Plains, New York 10605
                          (914) 517—5004
```

```
 1    LOS ANGELES, CA.; THURSDAY, SEPTEMBER 22, 2011; 10:47 A.M.

 2                              -oOo-

 3              THE CLERK:  Please remain seated and come to

 4    order.  Court is again in session.

 5              THE COURT:  All right.  Let me call the matter of

 6    Wilson vs. Gateway.

 7              MS. CROWTHER:  Good morning, Your Honor.

 8    Robyn Crowther and Matt O'Brien from Caldwell, Leslie &

 9    Proctor for Wilson and the putative class.

10              THE COURT:  All right.

11              MR. RAFFERTY:  Good morning, Your Honor.

12    Paul Rafferty for Gateway.

13              MS. LEES:  Good morning, Your Honor.  Gail Lees

14    representing the AIG and Chartis defendants.  Well, we're

15    not actually defendants.  Former --

16              THE COURT:  They would just like to be.

17              MS. LEES:  Former, past defendants hoping to be

18    gone.

19              THE COURT:  Hope springs eternal.

20              THE CLERK:  Counsel, please state your appearance.

21              MS. CUNNINGHAM:  Good morning.  This is Kerri

22    Cunningham from Meiselman, Denlea, Packman, Carton & Eberz

23    in New York for the plaintiff.

24              THE COURT:  All right.

25              MR. WALSH:  One more.  Sorry, Your Honor.  Good
```

1    morning, Your Honor.  Dave Walsh and Adam Sevell of Paul

2    Hastings on behalf of NEW.

3                THE COURT:  Okay.  We're here on a continuation of

4    the motion to compel arbitration.  I've issued another

5    tentative.  I do vacillate a lot, don't I?

6                MS. CROWTHER:  Not nearly enough, Your Honor.

7                          (Laughter.)

8                MR. RAFFERTY:  You make it interesting, Your

9    Honor.

10                THE COURT:  You just have to report to your

11    clients about it and justify your incredibly large attorney

12    fees' bills.  Except you guys, you're going to do something

13    else.  I'm talking about the permanent defense.

14                I've indicated now that insofar as the motion to

15    compel, I originally decided the waiver issue against

16    Gateway although I did it without prejudice.  I indicated

17    that they would have leave to renew it again.

18                And let me just ask.  The last time -- the first

19    time that the issue was raised -- you guys can sit down, by

20    the way.

21                ALL COUNSEL:  Thank you, Your Honor.

22                THE COURT:  When the issue was raised last time,

23    did counsel cite me to the *Fisher* and *Letizia* cases?  I

24    didn't think you did.

25                MR. RAFFERTY:  It's clearly, in the paperwork,

1  Your Honor.

2          THE COURT:  You did?

3          MR. RAFFERTY:  Yes, sir.

4          THE COURT:  Okay.  For some reason, I didn't pick

5  up on it because now it seems to me that a good argument can

6  be made that in light of those Ninth Circuit precedents that

7  maybe I as originally wrong when I indicated that there was

8  clear waiver here.

9          Because I guess in those cases the Ninth Circuit

10  more or less says that it may not be, you know, there may

11  not be a basis for the trial court to find waiver when there

12  is not, in fact, a reversal of the precedent which would

13  otherwise bar the arbitration provision from getting

14  enforced.

15          So I've reconsidered somewhat and I'm not saying

16  that this is my last word on the subject but it seems to me

17  that an argument can be made and I have expressed that here

18  insofar as in the tentative.

19          And, certainly, I think I have last time, that

20  insofar as NEW is concerned, however, I would not find that

21  even, you know -- I wouldn't have ever classified NEW as

22  just being in the same position as Gateway insofar as waiver

23  is concerned because NEW did not come into this litigation

24  until long after it was started and it relatively quickly

25  made its request for arbitration.

1    So it would seem to me that, you know, even if I
2  were to stick with my original tentative insofar as Gateway
3  is concerned, then there'd be a problem as to how the case
4  would proceed because NEW would be entitled to arbitration.
5    Gateway, if I continued in my original position on
6  waiver would not be, then we would have this unusual
7  situation of one of the two defendants being forced into
8  arbitration and then one not.
9    And so I did ask for further briefing on the issue
10  of what would happen in that situation; and it would seem to
11  me that the court at that point in time could elect to force
12  everybody to go into arbitration or not.  There seemed to be
13  a wide discretion as to what the court could do in that
14  particular situation.
15    But assuming that I find now that Gateway did not
16  waive, then it would be a situation that I would send the
17  case to arbitration as to both defendants and see what
18  happens thereafter unless I decide that there is some
19  unconscionability aspect or other aspect; and I left that
20  discussion more or less blank because I wanted further input
21  from both side on the point.
22    We did discuss it somewhat last time but what I
23  was not sure of was whether or not I had covered all of the
24  bases for the plaintiff's claim that there was
25  unconscionability or another aspect that would bar

1   arbitration if I were to find that the arbitration had not

2   been waived by the parties.

3           Let me just ask plaintiff's counsel initially.  If

4   you were to list -- give me a complete list at this point in

5   time of the bases for unconscionability or any other aspect

6   that would bar the enforcement of the arbitration provision,

7   they would be what?

8           MS. CROWTHER:  They would be, first, Your Honor,

9   the confidentiality provisions pursuant to the *Ting* case

10  from the Ninth Circuit and the *Davis* case from the Ninth

11  Circuit, the repeat-player effect that is mentioned in the

12  *Nagrampa* decision of the Ninth Circuit.  The limitations --

13          THE COURT:  Sorry.  And, again, because I have

14  these cases somewhere but I don't have them right in front

15  of me.  So the repeat player as to -- *vis-a-vis* as to which

16  Ninth Circuit case?

17          MS. CROWTHER:  *Nagrampa*.

18          THE COURT:  Okay.

19          MS. CROWTHER:  The limitations on remedies and the

20  primary citation for that is the *Young Seok Suh* case which

21  is from the California Court of Appeal in 2010.

22          The failure to fix the rules, to explain to the

23  purchasers what rules would apply.  The authority for that

24  are the *Fitz* and *Harper* decisions from the California Court

25  of Appeals.

```
1          And, finally, the issue of fees which is discussed
2    primarily in Ting as well.
3          THE COURT:  Okay.  All right.
4          And I think we discussed obviously last time the
5    confidentiality provision and affixing rules; and the repeat
6    player, I don't know if we discussed that.  Let me just ask
7    the defense.
8          On that point, what's your best case to counter?
9          MR. RAFFERTY:  Well, the repeat-player issue, Your
10   Honor, is an argument that was hatched and died with the
11   NAF; and when the NAF stopped undertaking arbitrations, it's
12   then compellant (sic) upon the plaintiff to show that other
13   arbitration forums such as those that we suggested such as
14   AAA or JAMS somehow would also be --
15         THE COURT:  Well, let me just stop you.  What
16   their counter to that would be is that, in other words, they
17   can argue various aspects of unconscionability; and even
18   if -- let's say -- you know, one or two of them by
19   themselves wouldn't be sufficient; but if you look over in
20   total, one can make the -- they're going to be making the
21   argument that, well, you know, NAF -- the fact that NAF got
22   booted out by the state -- is it Minnesota, is it?
23         MS. CROWTHER:  Minnesota.
24         THE COURT:  Minnesota.
25         Because of the fact of these, you know, the effect
```

1  of the repeat players because they were supposedly favoring

2  or doing whatever it is that got them booted out shows that

3  the contract was unconscionable.

4      So you'd have to come back with something not so

5  much saying that:  Well, they got booted out and, therefore,

6  the court should not consider the issue because of the fact

7  that the court can consider that issue to find that the

8  contract, when it was formulated, was unconscionable because

9  of that aspect.

10      MR. RAFFERTY:  Uh-huh.

11      Well, in the tentative holding, the court did

12  discuss procedural unconscionability; and then just -- and

13  then, as a reminder, felt that plaintiff would need to show

14  a much higher degree of substantive unconscionability.

15      And so even under this one component of the four

16  or five that are mentioned, it's a hypothetical and there's

17  no evidence to suggest that reputable agencies would be

18  biased against this individual plaintiff for bringing a

19  consumer arbitration.

20      MR. WALSH:  And, your Honor, if we could add, it

21  is in fact the *Nagrampa* case cited by the plaintiff that

22  sets forth this standard.

23      You can't just simply raise the risk of a

24  repeat-player effect.  You have to provide what they refer

25  to as particularized evidence that it's occurring; and they

1   have not done so and they cannot.

2          The fact there is a repeat-player effect was

3   discussed in the *Mercuro v. Superior Court* case, which is a

4   California case, which says that the Supreme Court has taken

5   notice of the repeat-player effect but the court has

6   declared that this factor renders the arbitration -- does

7   not find that it renders this arbitration agreement

8   unconscionable *per se*.

9          So it's a specter raised; and if you look at

10  plaintiff's briefing on this, plaintiff recognizes that they

11  have no particularized evidence of this and goes on to a

12  discourse about other agencies and other plaintiffs and

13  other defendants in which the repeat-player effect obtained

14  adversely to the plaintiff's position but doesn't have

15  anything to say particularly about either NEW or Gateway in

16  those regards.

17          THE COURT:  Okay.  Insofar as -- okay.

18          MS. CROWTHER:  Could I just respond to that, Your

19  Honor?

20          THE COURT:  Sure.

21          MS. CROWTHER:  There are two things.  First,

22  because no motion to compel arbitration was raised until

23  after we'd agreed to limit discovery to class issues, so we

24  had no opportunity to conduct any discovery into what the

25  particularized effect might be as to NEW and Gateway; and in

1    our subsequent briefing, we've asked for the right to

2    conduct that discovery should it be an issue.

3            But more importantly, we put evidence into the

4    record from Minnesota and from San Francisco that said

5    during the period that Mr. Wilson purchased his warranty,

6    99.6 percent or something of the cases in which -- these

7    were collection cases -- were decided, in nearly 100 percent

8    of the time, the corporate entity won against the consumer.

9            In response, the defendant put in nothing.  So to

10   the extent you're looking at evidence about whether there's

11   a repeat-player effect or not, we put in evidence and, in

12   all the months we've been briefing the issue, they've put in

13   none.  They have it if it exists.

14           So either we should do discovery or you should

15   rule for us on this issue because the only evidence that

16   anyone has bothered to submit actually supports that there

17   is a repeat-player effect.

18           THE COURT:  Okay.

19           MR. WALSH:  And, Your Honor, just for

20   clarification, the corporation she's speaking of are none of

21   the defendants here.  She's talking about examples taken

22   from the marketplace.  She's not talking about evidence

23   germane to this case.

24           THE COURT:  Okay.

25           MS. CROWTHER:  Well, actually, I don't know what

1    the evidence is.  For all I know, San Francisco looked at

2    cases involving NEW and Gateway.

3              Had I served subpoenas on them, I think that

4    Mr. Rafferty and Mr. Walsh would have responded and objected

5    that discovery was only open on class issues.

6              THE COURT:  Okay.

7              All right.  Let me ask.  Insofar as the issue of

8    Gateway's waiver is concerned, let me ask plaintiff's

9    counsel.  What would be your argument in response to this

10   current tentative?

11             MS. CROWTHER:  Your Honor, your tentative seems to

12   assume that unless Gateway had a right to compel class

13   arbitration, that it could not have waived that right

14   before.

15             If they had no right to compel class arbitration

16   before *Concepcion*, they could not have waived the right to

17   arbitrate; and I think that's not correct.

18             I think what the *Hoffman* case from the Ninth

19   Circuit says is:  Does the party have a known right to

20   arbitrate?  And our argument is that if the rest of this

21   arbitration clause is enforceable, then Gateway had the

22   right to come and ask Your Honor to sever the class waiver

23   and compel arbitration.

24             And that happened in two cases that we found.  One

25   in 2005, *Jones v. Deja Vu* in the Northern District of

13

1   California; and one in *ILJ Dominicana v. It's Just Lunch,*

2   *International*.  That was in this district, Judge Phillips,

3   in 2009.

4          And in both cases, a defendant came in trying to

5   enforce an arbitration clause against a putative class

6   action; and the judges found that although the class waiver

7   was unenforceable under *Discover Bank*; that they could be

8   excised and the case could be sent to arbitration.

9          The reason that didn't work in *Concepcion* and the

10  reason it hasn't worked in other cases since *Concepcion* is

11  because those arbitration clauses had a provision saying:

12  If the class waiver is found unenforceable, the whole

13  agreement is unenforceable or a non-severability clause.

14         We have the opposite.  We have a severability

15  clause.  So -- and actually Judge Illston up in the Northern

16  District on September 12th explained that the absence of a

17  severability clause is an important discussion when you're

18  looking at whether a party waived.

19         So what Gateway and NEW had a right to do the

20  moment that they were named was come to Your Honor with a

21  motion to compel arbitration and ask you to sever the class

22  waiver.

23         And the only way that that wouldn't work under

24  *Armendariz* was if either the clause was so permeated with

25  unconscionability that you couldn't just sever that clause

1    which is where we are today.

2            I mean, this clause has so many problems other

3    than *Concepcion* that the class waiver almost doesn't matter.

4            The other way would be to argue that the class

5    waiver was central to the arbitration clause; and there's

6    one case from the Ninth Circuit, *Omstead v. Dell*, that holds

7    that.  It has no analysis whatsoever.  It provides us with

8    no guidance whatsoever about when a class waiver is central

9    and when there isn't.

10           And the reason we don't have the record here is

11   because the defendants didn't make that argument.  They

12   didn't want to arbitrate as a class which is fine.  They

13   could come and not seek class arbitration; but what they

14   can't do is have us litigate this case for 16 months and

15   then, when the law changes so that they can go as a class,

16   claim that that's a new right to arbitrate.  It's not.

17           Had they severed the class waiver, we could have

18   been before an arbitration arguing whether *Stolt-Nielsen*

19   meant that now that this clause was silent on the issue of

20   class arbitration, could we proceed as a class or not?

21           But that's a different question from:  Can you

22   arbitrate?  And, usually, the motion to compel arbitration

23   is made very early so that substantive rulings will be made

24   by the arbitrator.

25           And that is different from saying:  Can we proceed

as a class?  Can we be certified as a class?  And given that

judges in California, federal judges, compelled arbitration

after severing a class waiver in 2005 and 2009

pre-*Concepcion*, there was the right to do it.

Now, I've been arguing since Gateway's first

motion in January of this year that *Concepcion* is irrelevant

and this is why we opposed the stay; and the reason is

because the clause is so riddled with unconscionability that

aside from the class waiver there can't be arbitration here.

But on the issue of waiver, because of their

severance clause, again, this is their contract, their

language.  They know it's there.  They're the party with

superior bargaining power, come in and make that argument.

THE COURT:  But if I were to agree with you, then

it gets back to the problem that:  All right.  Gateway has

waived but all the things that you've just described don't

apply to NEW.  NEW hasn't waived.

MS. CROWTHER:  Well, we have somewhat of a

different view but they are definitely in different

positions.  We have two responses to that, really three

responses.

One is the treatise that we cite which cites some

appellate court cases from Florida which say that when a

right to arbitrate is derivative, if the primary party

waives it, the secondary party can't come in later and

1  compel it.

2         And the example they use is an insured sues a

3  defendant.  The insurer comes in and tries to enforce the

4  arbitration clause; and the idea is:  No, you are derivative

5  of the right that has already been waived.  So we would

6  argue that by --

7         THE COURT:  That really doesn't come -- wouldn't

8  even apply here, though, because here the plaintiff didn't

9  sue NEW, NEW was cross-claimed in this matter by Gateway.

10         MS. CROWTHER:  We've sued NEW.

11         THE COURT:  Now you have.

12         MS. CROWTHER:  Yes, we sued --

13         THE COURT:  Now you have, but not originally.

14         MS. CROWTHER:  We sued NEW but we also don't have

15  a contract with NEW.  So they've got no contractual right to

16  arbitrate that you might enforce except via Gateway.

17         THE COURT:  Except that the arbitration provision

18  identifies not only Gateway but, you know, anybody who

19  supplies the services that are the subject matter of the

20  particular contract.

21         MS. CROWTHER:  So that's our first argument.

22         Our second argument is that NEW had the right just

23  like Gateway to seek to sever and, instead, they came in and

24  moved to dismiss and participated in discovery.

25         THE COURT:  Not that much.  I mean, they -- my

1    understanding if my memory serves me well -- they moved to

2    arbitrate within 60 days and, you know.  And, again, this

3    was in a litigation that had been progressing already.

4         So it wasn't a situation where they caused --

5    well, be considered to be any additional -- really that much

6    additional litigation work.

7         So, again, except the fact that I won't be

8    considering NEW entirely differently than I would Gateway

9    insofar as waivers are concerned.

10        MS. CROWTHER:  Our third argument is that it

11   doesn't matter.  That if you send Wilson to arbitration

12   against NEW, we don't know what's going to happen.

13        In the *Zynga* case in the Northern District,

14   *Zynga's* motion to compel arbitration was granted whereas

15   codefendants who participated in drafting the terms of use

16   that were at issue was not, was denied.

17        And what happened in that case was the individual

18   plaintiff dismissed with prejudice the claims against *Zynga*

19   and proceeded against the defendants who remained in

20   litigation.

21        That could happen here.  I mean, it puts Wilson in

22   a difficult position because if he's made whole by NEW, he

23   may lose standing to pursue the class claims and he's got

24   duties as a putative class representative.

25        So we don't know how that's going to resolve; but

1    there's a very good chance that there won't be any

2    arbitration against NEW at all.

3            First of all, we have to figure out who the

4    arbitrator is going to be and then we have to figure out

5    what the rules are going to be and then Wilson has to figure

6    out if he can afford it.  And, you know, I mean, there's --

7            THE COURT:  I think he can afford the 250.

8                        *(Laughter.)*

9            MS. CROWTHER:  You know, he was a college student

10   so it actually may be close.

11           THE COURT:  Is the operative term.

12           MS. CROWTHER:  So that's an issue that can be

13   worked out.  It's not a question that necessarily leads to

14   inconsistent results and especially given how long we

15   arbitrate -- we litigated with Gateway and how much time and

16   effort was put into it.  That shouldn't be what drives the

17   court's decision.  There's no law that says you have to send

18   them both.

19           THE COURT:  All right.

20           MS. CROWTHER:  And NEW is a cross-defendant.

21   They're going to be here, you know.  They're going to

22   participate in this case whether our affirmative claims are

23   arbitrated against them or not.

24           THE COURT:  Okay.

25           From the defense, anything that you guys want to

```
1   add?  I'm still up in the air, frankly, you know.  This case
2   is one that, you know, I think I'm just going to have to at
3   some point in time just pull out a quarter.
4         MR. RAFFERTY:  Well, I think just briefly, Your
5   Honor, the issue of waiver has already been argued on the
6   record.  You have that to review.  Severance was also argued
7   on August 29th, 2011.  I made a record on that.
8         The first issue, which is one of two red herrings
9   in essentially the two arguments on waiver that were raised
10  today, is the first that the court, according to plaintiff,
11  may be under the assumption that the cases are
12  distinguishable because the cases we cite, the parties had
13  no right to arbitrate whatsoever; and that's not true.
14        Because the Fisher Supreme Court ruling, they had
15  a right to arbitrate for three years; and that is where the
16  standard of whether they had a reasonable perception that
17  filing any motion would be futile came about when they had
18  an opportunity.  So that argument is not true.
19        What plaintiff then argues to link that is since
20  we technically could have done something -- and I guess so
21  they concede that Fisher is on point -- they then say:
22  Well, you could have severed.
23        And we have first appealed to the court's common
24  sense to suggest that the difference between arbitrating
25  bilaterally with one person and arbitrating with 1.7 million
```

1   people is substantial and certainly makes that provision

2   central.

3          And "central" is the buzz term to look at whether

4   a position can be severed.  No one really disputes that a

5   party can move to sever.  The question is, aside from the

6   fact of why would Gateway want to, whether it can even be as

7   a matter of law; and that's really an issue for the court.

8          We cited *Omstead*, which plaintiff knew we would

9   cite.  It's Ninth Circuit 2010.  We cited it in our briefing

10  which held that where a class action waiver and agreement

11  cannot be severed if it is central to the agreement.

12         The two cases that plaintiff cites, those courts,

13  without any analysis, found that the provisions were not

14  central.  So the issue is whether you think the

15  arbitration -- the class action waiver in this provision is

16  central.

17         *Omstead* would argue that it does.  We also cited

18  Judge Feess' direct analysis in *Quevedo*, which is also in

19  your paperwork, that the right to arbitrate an individual

20  claim is materially different than a class action claim and,

21  therefore, a class action waiver cannot be severed because

22  it is simply central to the provision.

23         And, finally, we also put in law for the court to

24  consider that the dispute resolution provision, in terms of

25  whether it would be deemed futile or not prior to

 1    *Concepcion*, has to be based on the provision as is, not as

 2    plaintiff would argue, the way it could have been.

 3            It's not proper to argue that if we had just done

 4    this and just done that, we might have resulted in a

 5    provision that then could be enforced.

 6            That's not the analysis.  The analyst was with the

 7    provision in there.  It was simply and absolutely

 8    unenforceable prior to *Concepcion*.

 9            THE COURT:  Okay.  Anything else from anybody?

10            MS. CROWTHER:  Two things.  One is on that last

11    point that Mr. Rafferty made which was that this clause was

12    unenforceable with the class waiver in it.

13            I'd just encourage the court to look at

14    Judge Illston's opinion in *Bryant v. Service Corporation*

15    *International* from September 12th.

16            THE COURT:  Okay.

17            MS. CROWTHER:  And she explains that it wasn't

18    unenforceable.  It was that you had to look and see whether

19    it could be severed.

20            And none of the opinions that we have cited have

21    provided Your Honor with much guidance on what "central"

22    means on what this class waiver and what "central" means.

23            THE COURT:  Well, they think Judge Feess provides

24    me with that.

25            MS. CROWTHER:  You know, I've read Judge Feess'

```
 1    opinion; and he says that it's different.  But he doesn't
 2    cite anything.  And so he might think that and I'm not
 3    saying he doesn't and I'm not saying they're not different.
 4              What I'm saying is you don't have a federal right
 5    to arbitrate in the manner that you want.  You have a
 6    federal right to arbitrate.
 7              THE COURT:  Well, no, but the Supreme Court has
 8    said that arbitration is basically based upon the agreement
 9    of the parties; and so to the extent that the -- what you
10    want is incorporated into the language of the arbitration
11    agreement, you do get the right to arbitrate what you want.
12              MS. CROWTHER:  Well, that's not to say that you
13    don't waive your right to arbitrate just because part of it
14    is unenforceable.
15              If you wanted to arbitrate in Boston but you
16    litigated in California and at some point you thought maybe
17    I could have arbitrated in California, that doesn't mean you
18    haven't waived your right to arbitrate.  That's materially
19    different.
20              The last point, Your Honor -- and I am a little
21    bit blue in the face on this -- but I really think you need
22    to examine the effect of the absence of the NAF and the NAF
23    rules.
24              THE COURT:  No, we can't discuss -- and,
25    obviously, NAF is not available and you've discussed that
```

1    long and hard last time and you didn't convince me; and,

2    again, I mean, I know your argument.  I just don't accept

3    it.

4         MS. CROWTHER:  Here is why it ties back into the

5    substantive unconscionability, which is the issue that you

6    left open in your tentative which is in order to decide

7    whether this provision was substantively unconscionable or

8    not, you have to look at the agreement at the time it was

9    made and you have to look at the NAF rules.

10        It's ironic for them to say:  Well, all of your

11   arguments about why the agreement we forced you to enter is

12   unconscionable are irrelevant because, actually, it was so

13   unconscionable that the authorities shut down the forum we

14   designated and now we'll just make up our own rules when our

15   client has zero bargaining power.  None.

16        And to say that that solves the problem, it just

17   explains why this clause was unenforceable from the

18   beginning.  So you have to do three things.

19        You have to examine waiver.  Because if they

20   waived, it doesn't matter what the agreement says.

21        You have to examine the agreement at the time it

22   was made; and if it's unconscionable at the time it was

23   made, then it can't be enforced.

24        And you have to look at whether it's even possible

25   to enforce today given the absence of the NAF.

24

```
 1              THE COURT:  Okay.  Thank you very much.
 2              And what I will do is this.  I am probably not
 3    going to get this thing resolved this month and I'm not
 4    going to be here for part of October.
 5              So why don't I put this matter back down for
 6    October 24th as just a tickler for me and, hopefully, I
 7    will have something by then.
 8              Have I set previous dates or not?  I presume I
 9    haven't at this point.
10              MR. RAFFERTY:  You have not.
11              THE COURT:  Okay.  All right.  So we'll take about
12    scheduling.  If the case goes forward, obviously, we'll talk
13    about potential scheduling on the 24th unless I give you
14    notice that I'm just simply not ready.  Okay?
15              MS. CROWTHER:  Thank you, Your Honor.
16              MR. RAFFERTY:  Thank you.
17              ALL COUNSEL:  Thank you, Your Honor.
18              THE COURT:  The hours of enjoyable --
19              MR. RAFFERTY:  Have a good trip in October
20    wherever you're going.
21              (At 11:15 a.m. proceedings were concluded.)
22
23                            -oOo-
24
25
```

25

```
 1                          CERTIFICATE

 2

 3            I hereby certify that pursuant to Section 753,

 4   Title 28, United States Code, the foregoing is a true and

 5   correct transcript of the stenographically reported

 6   proceedings held in the above-entitled matter and that the

 7   transcript page format is in conformance with the

 8   regulations of the Judicial Conference of the United States.

 9
     Date:  September 23, 2011
10

11

12

13

14                            /s/   PAT CUNEO

15                            OFFICIAL COURT REPORTER
                              CSR NO. 1600
16

17

18

19

20

21

22

23

24

25
```

**EXHIBIT A-6**

1        UNITED STATES OF AMERICA

2        UNITED STATES DISTRICT COURT

3        CENTRAL DISTRICT OF CALIFORNIA

4        CENTRAL DIVISION

5                - - -
         HONORABLE GEORGE H. WU
6        UNITED STATES DISTRICT JUDGE PRESIDING
                 - - -
7

8    PETER WILSON,                    )
                                      )
9              PLAINTIFF,             )
                                      )
10   VS.                             )    CV 09-07560-GW(VBKX)
                                      )
11   GATEWAY, INC.,                   )
                                      )
12            DEFENDANT.              )
     _____)
13

14

15

     *DEFENDANT GATEWAY, INC.'S MOTION TO COMPEL ARBITRATION*
16
                  LOS ANGELES, CALIFORNIA
17
                   OCTOBER 24, 2011
18

19

20

21

22
              ROSALYN ADAMS, CSR 11794
23         FEDERAL OFFICIAL COURT REPORTER
           312 NORTH SPRING STREET, ROOM 410
24         LOS ANGELES, CALIFORNIA 90012
                  (213) 894-2665
25

2

1   APPEARANCES:

2   ON BEHALF OF THE PLAINTIFF:

3           CALDWELL LESLIE & PROCTOR, P.C.
            BY:  ROBYN C. CROWTHER
4                JEANNE A. FUGATE
            1000 WILSHIRE BOULEVARD
5           SUITE 600
            LOS ANGELES, CALIFORNIA 90017-2463
6           (213) 629-9040

7

    ON BEHALF OF DEFENDANT, GATEWAY:
8
            JONES DAY
9           BY:  PAUL F. RAFFERTY
            3161 MICHELSON DRIVE
10          SUITE 800
            IRVINE, CALIFORNIA 92616
11          (949) 553-7588

12

    ON BEHALF OF DEFENDANT, CHARTIS WARRANTY SERVICES, INC.:
13
            GIBSON DUNN AND CRUTCHER, LLP
14          BY:  KAHN A. SCOLNICK
            333 SOUTH GRAND AVENUE
15          LOS ANGELES, CALIFORNIA 90071
            (213) 229-7656
16

17  ON BEHALF OF DEFENDANT, NATIONAL ELECTRONICS WARRANTY CORP.:

18          PAUL HASTINGS, LLP
            BY:  DAVID M. WALSH
19               ADAM M. SEVELL
            515 SOUTH FLOWER STREET
20          25TH FLOOR
            LOS ANGELES, CALIFORNIA 90071-2228
21          (213) 683-6000

22

23

24

25

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

```
1

2

3

4

5

6

7

8

9

10

11

12

13        LOS ANGELES, CALIFORNIA; ^ DAY, ^ DATE, ^ A.M.  P.M.

14                         --oOo--

15

16

17

18

19

20

21

22

23

24

25
```

1

2

3

4

5          THE COURT:  LET ME CALL THE MATTER OF *WILSON VS.*

6    *GATEWAY*.

7          MS. CROWTHER:  HELLO, YOUR HONOR.  ROBYN CROWTHER

8    AND JEANNE FUGATE FROM CALDWELL, LESLIE AND PROCTOR FOR THE

9    PLAINTIFF.

10         MR. RAFFERTY:  GOOD MORNING, YOUR HONOR.  PAUL

11   RAFFERTY FOR GATEWAY.

12         MR. SCOLNICK:  GOOD MORNING, YOUR HONOR.  KAHN

13   SCOLNICK FOR THE THIRD-PARTY DEFENDANT, CHARTIS.

14         MR. WALSH:  GOOD MORNING, YOUR HONOR.  DAVE WALSH

15   AND ADAM SEVELL OF PAUL HASTINGS ON BEHALF OF N.E.W.

16         THE COURT:  ALL RIGHT.  WE'RE HERE ON MY RULING.

17   THIS MATTER HAS BEEN BEFORE ME SEVERAL TIMES NOW, AND I'VE --

18   LET ME JUST ISSUE THE RULING.  YOU GUYS ARE TIRED OF COMING

19   BACK.  I'M NOT TIRED OF SEEING YOU, OF COURSE, BUT JUST FOR

20   YOUR BENEFIT, NOT MINE.  YOU GUYS CAN SIT DOWN.

21         FOR REASONS STATED IN THE COURT'S SEPTEMBER 22ND

22   TENTATIVE RULING AND AT THE HEARING ON SAID DATE AND,

23   ACTUALLY, THE HEARING PRIOR TO THAT POINT IN TIME AS WELL,

24   THE COURT WILL GRANT GATEWAY AND N.E.W. MOTIONS TO COMPEL

25   ARBITRATION.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

```
1          THE COURT FINDS THAT GATEWAY AND N.E.W. DID NOT

2    WAIVE ARBITRATION IN THIS PARTICULAR SITUATION.  THERE'S SOME

3    CONFLICT IN THIS REGARD BETWEEN THE CASE LAW, BUT I THINK

4    THAT THE MAJORITY OF THE CASE IS -- I THINK MORE CONVINCINGLY

5    THE CASES WHICH DO NOT FIND WAIVER IN THIS TYPE OF SITUATION

6    ALSO CONTROL HERE.

7          ALSO, THE COURT WOULD FIND THAT THE ARBITRATION

8    PROVISION WHILE MARGINALLY, PROCEDURALLY UNCONSCIONABLE IS

9    NOT SUFFICIENTLY, SUBSTANTIVELY UNCONSCIONABLE FOR THE COURT

10   TO BAR ITS ENFORCEMENT HERE.  THE PLAINTIFF HERE PURCHASED A

11   COMPUTER AND ELECTED TO BUY AN EXTENDED SERVICES PLAN WHICH

12   WAS NOT REQUIRED VIS-A-VIS THE PURCHASE OF THE COMPUTER

13   ITSELF.

14         THE EXTENDED SERVICE PLAN WAS STANDARD AND NOT

15   SUBJECT TO INDIVIDUAL NEGOTIATION OF TERMS AND HAD A

16   MANDATORY ARBITRATION PROVISION.  CALIFORNIA LAW

17   CHARACTERIZES SUCH CONSUMER CONTRACTS AS PROCEDURALLY

18   ADHESIVE, BUT AS OBSERVED BY THE UNITED STATES SUPREME COURT

19   IN CONCEPCION, QUOTE, "THE TIMES IN WHICH CONSUMER CONTRACTS

20   WERE ANYTHING OTHER THAN ADHESIVE ARE LONG PASSED," END OF

21   QUOTE.  HENCE, THE COURT'S FINDING OF MARGINALLY PROCEDURAL

22   UNCONSCIONABILITY.

23         THE OTHER ARGUMENTS WHICH THE PLAINTIFF RAISES TO

24   SHOW EITHER MORE SEVERE APPROACH -- MORE SEVERE PROCEDURAL

25   UNCONSCIONABILITY AND/OR SUBSTANTIVE UNCONSCIONABILITY ARE
```

1   NOT PERSUASIVE.  THE PLAINTIFF CLAIMS THAT BECAUSE OF THE

2   NAMED ARBITRATOR, THE NATIONAL ARBITRATION FORM IS NO LONGER

3   ACCEPTING CONSUMER CLAIMS FOR ARBITRATION SOMEHOW VOIDS THE

4   ARBITRATION PROVISION.  HOWEVER, NOTHING IN THE CONTRACT

5   ITSELF INDICATES THE PARTIES' INTENT WAS ONLY TO ARBITRATE

6   BEFORE THE N.A.F.  INDEED, BOTH THE ARBITRATION PROVISION

7   ITSELF AND THE FEDERAL ARBITRATION ACT PROVIDE A MECHANISM

8   FOR SELECTING ANOTHER ARBITRATION BODY OR FORUM IF THE

9   ORIGINALLY SELECTED ARBITRATION ENTITY BECOMES UNAVAILABLE.

10          THE PLAINTIFF CLAIMS THAT THE N.A.F. RULES WERE NOT

11  FIXED TO THE ARBITRATION AGREEMENT OR MADE AVAILABLE TO HIM,

12  WHICH IS ALSO UNCONSCIONABLE.  HOWEVER, THE ARBITRATION

13  PROVISION DID ADVISE THE PLAINTIFF THAT INFORMATION

14  CONCERNING THE N.A.F. WOULD BE OR COULD BE OBTAINED FROM A

15  WEBSITE OR BY CALLING AN 800 NUMBER OR BY WRITING TO AND

16  REQUESTING THE INFORMATION AT A PARTICULAR ADDRESS.

17  THEREFORE, THE COURT WOULD FIND THAT THE ROLES WERE READILY

18  ACCESSIBLE TO THE PLAINTIFF WITH MINIMAL EFFORT.  THERE WAS

19  NO ATTEMPT TO HIDE FROM THE PLAINTIFF OF THOSE PROCEDURAL

20  ELEMENTS.  SO THE COURT WOULD FIND, AGAIN, NO PROCEDURAL

21  UNCONSCIONABILITY.  THE N.A.F. HAS WHAT IT REFERS TO AS A

22  CODE OF PROCEDURE WHICH CONTAINS VARIOUS PROCEDURAL RULES.

23  RULE ONE PROVIDES THAT, QUOTE, "PARTIES WHO CONTRACT FOR OR

24  AGREE TO ARBITRATION PROVIDED BY THE FORUM OR THIS CODE OF

25  PROCEDURE AGREE THAT THIS CODE GOVERNS THEIR ARBITRATION

1    PROCEEDINGS UNLESS THE PARTIES AGREE TO OTHER PROCEDURES.

2    THIS CODE SHALL BE DEEMED INCORPORATED BY REFERENCE IN EVERY

3    ARBITRATION AGREEMENT WHICH REFERS TO THE NATIONAL

4    ARBITRATION FORUM" -- DOT, DOT, DOT -- "UNLESS THE PARTIES

5    OTHERWISE AGREE.  THIS CODE SHALL BE ADMINISTERED ONLY BY THE

6    NATIONAL ARBITRATION FORUM OR BY ANY ENTITY OR INDIVIDUAL

7    PROVIDING ADMINISTRATIVE SERVICES BY AGREEMENT WITH THE

8    NATIONAL ARBITRATION FORUM," END OF QUOTE.

9            THE PLAINTIFF CLAIMS THAT BECAUSE THE N.A.F. NOW NO

10   LONGER ACCEPTS CONSUMER CLAIMS FOR ARBITRATION AND ITS RULES

11   PROVIDE THAT THE CODE OF PROCEDURE SHALL BE ADMINISTERED ONLY

12   BY THE N.A.F., THAT SOMEHOW THAT SITUATION RAISES AN ELEMENT

13   OF UNCONSCIONABILITY IF THIS COURT WERE TO ORDER ARBITRATION

14   OF ITS CLAIM.  IT IS NOT EXACTLY CLEAR WHY THAT WOULD BE.

15   N.A.F.'S CODE OF PROCEDURE IS NOT SO CONCEPTUALLY UNIQUE THAT

16   ITS RULES ARE NOT SUBSTANTIALLY SIMILAR TO OTHER ARBITRATION

17   OR ORGANIZATIONS, NOR IS THE N.A.F. PARTICULARLY SPECIAL

18   INSOFAR AS ARBITRATION BODIES GO, NOR IS THERE ANY EVIDENCE

19   THAT THE N.A.F.'S CODE OF PROCEDURE WAS A PARTICULAR ELEMENT

20   THAT THE PARTIES AGREED UPON AND SPECIFICALLY ENTERED INTO AN

21   ARBITRATION AGREEMENT.  INDEED, THE PLAINTIFF'S PRIOR

22   ARGUMENT REGARDING THE AVAILABILITY OF THOSE RULES BELIES

23   SUCH A CLAIM.

24            EVEN IF IT WERE SOMEHOW A SPECIAL ELEMENT THAT THE

25   PARTIES CONSIDERED, IN OTHER WORDS THE CODE OF PROCEDURE OF

1  THE N.A.F., AS DISCUSSED ABOVE, BOTH THE ARBITRATION

2  AGREEMENT AND THE F.A.A. INCLUDED PROVISIONS OF SELECTING A

3  DIFFERENT ARBITRATOR IF THE ORIGINALLY DESIGNATED ARBITRATION

4  BODY BECAME UNAVAILABLE AND, THEREFORE, IT CAN BE ENVISIONED

5  THAT A DIFFERENT SET OF PROCEDURAL RULES CAN OR COULD BE

6  APPLIED IN SUCH SITUATION.

7      ALSO, THE PLAINTIFF CONTENDS OR MAKES THE ARGUMENT

8  IN REGARDS TO GATEWAY'S HAVING SELECTED THE N.A.F. UNFAIRLY

9  OR THAT GATEWAY WOULD HAVE AN UNFAIR ADVANTAGE BECAUSE IT IS

10 A, QUOTE, "REPEAT PLAYER," END OF QUOTE, VIS-A-VIS THE N.A.F.

11 HOWEVER, THAT CONTENTION IS NOT BORNE OUT NECESSARILY BY THE

12 EVIDENCE IN THIS PARTICULAR CASE THAT IS BEING PRESENTED TO

13 THE COURT, NOR DOES THERE APPEAR TO BE ANY EVIDENCE VIS-A-VIS

14 GATEWAY AS A PARTICULAR REPEATED PLAYER OR SELECTING N.A.F.,

15 IN PARTICULAR, TO GAIN AN UNFAIR ADVANTAGE.

16     IN ANY EVENT, GIVEN THE FACT THAT N.A.F. WILL NOT

17 BE THE ARBITRATION BODY HERE, THAT UNCONSCIONABILITY WAS

18 INITIALLY PRESENT IS LONGER PRESENT.  AND, FURTHER, AS NOTED

19 *NAGRAMPA*, N-A-G-R-A-M-P-A, VS. *MAIL COUPS*, 469 F.3RD, 1257 AT

20 1285, NINTH CIRCUIT 2006, QUOTE, "MERELY RAISING THE," QUOTE,

21 "REPEAT PLAYER EFFECT," END OF QUOTE, "CLAIM WITHOUT

22 PRESENTING MORE PARTICULARIZED EVIDENCE DEMONSTRATING

23 IMPARTIALITY IS INSUFFICIENT UNDER CALIFORNIA LAW TO SUPPORT

24 AN UNCONSCIONABILITY FINDING," END OF QUOTE.

25     ALSO, THE PARTIES WOULD BE REFERRED TO *MECURIAL VS.*

9

1   *SUPREME COURT*, 96 CAL. APP. 4TH, 167 AT 178, A 2002 DECISION.

2   ALSO, THE N.A.F. HAS A RULE 4, WHICH PROVIDES FOR A

3   CONFIDENTIALITY TO A CERTAIN EXTENT IN REGARDS TO THEIR

4   PROCEEDINGS.  THE COURT WOULD REFER TO PAGE 11 OF

5   DOCUMENT 277 WHICH REFERENCES THAT PARTICULAR LEVEL OF

6   CONFIDENTIALITY.  HOWEVER, AS RECOGNIZED IN THIS CIRCUIT,

7   CONFIDENTIALITY PROVISIONS ARE NOT, PER SE, UNCONSCIONABLE,

8   *DAVIS VS. O'MELVENY AND MEYERS*, 485 F.3RD, 1066 AT 1079.

9   IT'S A NINTH CIRCUIT 2007 CASE.  THE QUESTION REVOLVES AROUND

10   THE SCOPE OF THE LANGUAGE OF THE CONFIDENTIALITY PROVISION.

11   AND, HERE, THE LANGUAGE IS NOT AS BROAD AS IN THOSE CASES

12   WHICH HAVE FOUND SUCH CONFIDENTIALITY PROVISIONS TO BE

13   UNCONSCIONABLE.  FOR EXAMPLE, THE *DAVIS* CASE AND ALSO *TING V.*

14   *AT&T*, 319 F.3RD, 1126 AT 1151, 52, A 2003 NINTH CIRCUIT CASE.

15   THE COURT WOULD ALSO REFER TO *RAMIREZ AND BAKER VS. BEAZER*

16   *HOMES*, B-E-A-Z-E-R, 636 FED. SUPP. SECOND, 1008 AT PAGE 1024,

17   AND THAT'S AN EASTERN DISTRICT OF CALIFORNIA 2008 DECISION.

18       INSOFAR AS THE FEE PROVISION THAT AMOUNTS UNDER THE

19   ARBITRATION AGREEMENT, THE COURT FINDS THAT THOSE PROVISIONS

20   ARE NOT UNCONSCIONABLE.  AS NOTED BY THE DEFENDANTS, AT MOST,

21   THE FILING FEE HERE WOULD HAVE BEEN FOR THE INDIVIDUAL

22   PLAINTIFF'S CASE $81.50, WHICH IS FAR LESS THAN THE FILING

23   FEE IN THE FEDERAL DISTRICT COURT OF THE CENTRAL DISTRICT,

24   WHICH IS $350, OR IN THE STATE COURT HERE IN LOS ANGELES, IN

25   THE LOS ANGELES SUPERIOR COURT THE FILING FEE IS $395 FOR

1   UNLIMITED CIVIL; $370 FOR LIMITED CIVIL; AND $181 FOR SMALL

2   CLAIMS.

3           FURTHERMORE, AS NOTED BY THE DEFENDANTS, THE

4   DEFENSE WOULD HAVE TO REIMBURSE THE PLAINTIFF FOR THE FILING

5   FEE IF THE PLAINTIFF PREVAILS.  THEREFORE, THIS COURT WOULD

6   NOT FIND THESE FEES TO BE UNCONSCIONABLE.  AND THAT'S IT.

7           MS. CROWTHER:  YOUR HONOR, THERE'S ONE MORE ELEMENT

8   ON WHICH I NEED YOU TO RULE AGAINST ME TO COMPLETE THE

9   RECORD.

10          THE COURT:  OKAY.

11          MS. CROWTHER:  WE DID ASK TO DO DISCOVERY INTO THE

12  REPEAT PLAYER EFFECT BECAUSE NO MOTION TO COMPEL ARBITRATION

13  WAS BROUGHT UNTIL WE HAD FIRST AGREED TO LIMIT DISCOVERY TO

14  CLASS ISSUES; AND, SECOND, THAT PERIOD WAS CLOSED.  AND WE

15  PUT IN EVIDENCE IN THE STATE OF CALIFORNIA AS WELL AS FROM

16  MINNESOTA ABOUT A REPEAT PLAYER EFFECT.  AND IN THE MOST

17  RECENT ROUNDS OF BRIEFING, WE SAID, "IF YOU DON'T THINK THAT

18  EVIDENCE IS SUFFICIENT TO SHOW THE REPEAT PLAYER EFFECT AS TO

19  THESE TWO PARTIES, WE ASK FOR LEAVE TO CONDUCT DISCOVERY."

20          THE COURT:  IT'S A LITTLE DIFFERENT.  THERE'S A

21  DIFFERENCE BETWEEN THE REPEAT PLAYER EFFECT AND THE FACT THAT

22  GATEWAY OR N.E.W. WAS A FREQUENT USER OF N.A.F.  I THOUGHT

23  THE DISCOVERY WOULD GO AS TO THE LEVEL OF FREQUENCY, BUT NOT

24  AS TO, PER SE, THE EFFECT.

25          MS. CROWTHER:  HAVING NOT DRAFTED THOSE DISCOVERY

1    REQUESTS BECAUSE DISCOVERY WAS CLOSED, I CAN'T BE PRECISE.

2    BUT I CAN TELL YOU THAT I THINK TO SHOW A REPEAT PLAYER

3    EFFECT, FIRST, I'D NEED TO KNOW:  HOW MANY TIMES HAVE YOU

4    BEEN TO ARBITRATION BEFORE THIS ENTITY?  AND, SECOND, HOW

5    MANY TIMES DID YOU WIN?  AND, THIRD, WERE THERE INSTANCES

6    LIKE THOSE CITED IN OUR PAPERS WHERE ARBITRATORS WERE

7    STRICKEN BY THE N.A.F., ITSELF, BECAUSE THEY HAD RULED IN

8    FAVOR OF CLAIMANTS, CONSUMERS IN THE PAST?  SO THAT'S THE

9    DISCOVERY THAT I WOULD DO.

10            THE COURT:  ALL RIGHT.  LET ME HEAR FROM THE

11    DEFENSE.  WHAT'S DEFENSE RESPONSE?

12            MR. RAFFERTY:  JUST VERY BRIEFLY, YOUR HONOR.  THE

13    DEFENSE'S RESPONSE, AS THE COURT ARTICULATED IN ITS RULING,

14    IS THAT WITH RESPECT TO CONDUCTING DISCOVERY UNDER REPEAT

15    PLAYER EFFECT AS TO THE N.A.F., THE COURT NOTED THAT IT WOULD

16    BE MOOT, IN ANY EVENT.  I THINK THE COURT WOULD EXPECT

17    PROBABLY LOOKING AT THE ALTERNATIVE FORUMS OF TRIPLE A AND

18    J.A.M.S., SOME PUBLIC EVIDENCE AS WAS EVIDENT IN THE PAST

19    WITH N.A.F. OF SOME REPEAT PLAYER EFFECT, SOME LACK OF

20    OBJECTIVITY ON THE PART OF THESE ENTITIES, AND THERE IS NONE.

21    SO PLAINTIFF, NEVER HAVING PROVIDED EVEN A SCINTILLA OF

22    EVIDENCE TO SUGGEST THAT THESE REPUTABLE AGENTS WOULD SUFFER

23    FROM REPEAT PLAYER OF EFFECT, I THINK THE COURT WAS

24    DISINCLINED TO OPEN DISCOVERY.

25            THE COURT:  ALTHOUGH I THINK THE PLAINTIFF WOULD

12

1    ARGUE THAT THE N.A.F., UNLIKE THE OTHER FORUMS THAT YOU

2    CITED, DIDN'T HAVE A SITUATION WHERE THEY HAD TROUBLE WITH --

3    IT WAS MINNESOTA?

4            MS. CROWTHER:  MINNESOTA A.G. AND THE

5    SAN FRANCISCO -- THE SAN FRANCISCO CITY ATTORNEY.

6            THE OTHER THING IS, YOUR HONOR, I'D JUST CAUTION

7    YOU NOT TO CONFLATE UNCONSCIONABILITY WITH IMPLACABILITY.

8    YOU EVALUATE UNCONSCIONABILITY AS THE TERM WAS WRITTEN SO YOU

9    ASSUME THE N.A.F. WAS AVAILABLE.  AND THEN WE HAVE THE

10   ARGUMENTS ABOUT WHAT HAPPENS NOW THAT THE N.A.F. IS NOT

11   AVAILABLE.  YOU CAN'T SAY THAT THE N.A.F. HAD SUCH A REPEAT

12   PLAYER EFFECT AND WAS SO UNCONSCIONABLE THAT IT WAS TAKEN OUT

13   OF PLAY AND THAT SOLVES THE UNCONSCIONABILITY PROBLEM.

14           THAT ABSURDITY OF THAT IS APPARENT ON ITS FACE.

15   WHAT YOU HAVE TO DO FIRST IS SAY, "COULD THEY ENFORCE THIS

16   TERM AS WRITTEN, ASSUMING ALL -- THE N.A.F. WAS AVAILABLE?

17   AND THEN, IF THAT'S TRUE, DOES THE FACT THAT THE N.A.F. IS

18   NOT AVAILABLE RENDER THE CLAUSE IMPOSSIBLE TO ENFORCE?  TWO

19   SEPARATE INQUIRIES.

20           THE COURT:  ALL RIGHT.  HOWEVER, I WILL GRANT YOUR

21   REQUEST.  I WILL DENY THE DISCOVERY ON THE PARTICULAR POINT

22   AT THIS POINT.

23           MS. CROWTHER:  RESPECTFULLY, YOUR HONOR, ALTHOUGH I

24   DISAGREE WITH EVERYTHING THAT YOU JUST SAID, I WANT TO THANK

25   YOU FOR THE TIME THAT YOU PUT INTO THIS CASE.  I BELIEVE THAT

1    IN ORDER FOR TO US APPEAL YOUR RULING THAT WE NEED LEAVE OF

2    THE COURT.  AND GIVEN THE AMOUNT OF TIME THAT WE'VE ALL SPENT

3    AND THE AMOUNT OF PAPER HERE, I THINK IT WOULD BE APPROPRIATE

4    TO TAKE THESE MANY ISSUES TO THE NINTH CIRCUIT.

5            THE COURT:  I DON'T NECESSARILY DISAGREE, BUT LET

6    ME JUST ASK.  ARE YOU ASKING FOR SOMETHING SPECIFIC FROM ME

7    OR -- I DON'T UNDERSTAND YOUR LAST COMMENT?

8            MS. CROWTHER:  YES.  IF THEY HAD LOST, THEY HAVE AN

9    IMMEDIATE RIGHT TO APPEAL.  I NEED LEAVE TO FILE AN

10   INTERLOCUTORY APPEAL AND I WOULD ASK FOR THAT LEAVE.  I CAN

11   PUT IT INTO SPECIFIC LANGUAGE.  I JUST KNOW IN CONCEPT THAT I

12   NEEDED -- I DIDN'T PREPARE TO LOSE TODAY, HONESTLY.

13           THE COURT:  NOT EVEN IN LIGHT OF MY TENTATIVE?

14           MS. CROWTHER:  YOUR TENTATIVE LAST TIME WAS WAY

15   DIFFERENT AND THE ARGUMENT WAS WAY DIFFERENT.  SO I KNOW THAT

16   THERE'S A PROCEDURE WHICH I CAN PUT INTO DETAIL, BUT I'M

17   ASKING FOR THE CONCEPT OF LEAVE TO APPEAL.

18           THE COURT:  LET ME ASK -- OBVIOUSLY, THE APPEAL

19   WOULDN'T BE A SITUATION WHERE IT'S TIME-BARRED IN ANY WAY

20   SHAPE OR FORM.  SO LET ME JUST DO THIS.  WHY DON'T YOU GUYS

21   TALK WITH EACH OTHER.  AND IF THERE IS GOING TO BE SOME SORT

22   OF OPPOSITION TO HER REQUEST, THAT YOU JUST GIVE IT TO ME IN

23   SOME SORT OF WRITTEN DOCUMENT AND THEN I CAN DECIDE WHAT TO

24   DO AT THAT POINT IN TIME.  AND LET ME JUST HAVE YOU GUYS COME

25   BACK, LET'S SAY, ON THE 7TH OF NOVEMBER.  IF YOU CAN AGREE ON

14

1    SOMETHING OR NOT AGREE ON SOMETHING, JUST GIVE ME WHAT THE

2    RESPECTIVE PARTIES' POSITIONS ARE, LET'S SAY, BY THE 2ND OF

3    NOVEMBER.

4          MR. RAFFERTY:  YOUR HONOR, CAN WE MOVE IT TO THE

5    14TH?  PERHAPS -- I AM IN THREE DIFFERENT COURTROOMS ON THE

6    7TH AND THIS WOULD BE THE FOURTH.

7          THE COURT:  HOW ABOUT THE 10TH?  IS THE 10TH ALL

8    RIGHT?

9          MR. RAFFERTY:  THAT'S GREAT.

10          THE COURT:  AND THAT WAY -- AND GIVE ME YOUR

11    RESPECTIVE POSITIONS BY NOON ON THE -- GIVE ME YOUR

12    RESPECTIVE POSITIONS BY THE 4TH OF NOVEMBER.

13          ANYTHING ELSE I NEED TO DO AT THIS POINT?

14          MR. RAFFERTY:  NO, YOUR HONOR.  AS WELL, ON BEHALF

15    OF ALL OF THE DEFENDANTS, WE WANT TO THANK THE COURT AND ALL

16    THOSE THAT WE KNOW ARE BEHIND THE SCENES WHO HAVE TORTURED

17    WITH ALL OF THESE ISSUES AND ALL OF THE OPINIONS AND FOR

18    TOLERATING OUR FULL, ORAL ARGUMENTS ON THE ISSUE.

19          THE COURT:  I FEEL BAD BECAUSE YOU ALL AND YOUR

20    COMPANIES ARE ALL TAXPAYERS.  AND SO WE HAVE TO BE REALLY --

21    IT'S OUR DUTY AS PUBLIC SERVANTS.  THANK YOU.

22          MR. RAFFERTY:  THANK YOU, YOUR HONOR.

23          THE COURT:  LET ME HAVE THE DEFENSE COUNSEL PREPARE

24    A PROPOSED ORDER JUST IN CASE YOU NEED SOMETHING OF THAT SORT

25    TO LOOK AT, DECIDE, ETCETERA, ETCETERA.  SO INCLUDE THAT IN

1   YOUR CONVERSATIONS AS WELL.

2            MS. CROWTHER:  WE'LL DO.  THANK YOU, YOUR HONOR.

3            MS. FUGATE:  THANK YOU, YOUR HONOR.

4                    (END OF PROCEEDINGS.)

5                         --o0o--

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                      CERTIFICATE OF REPORTER

2

COUNTY OF LOS ANGELES      )
3                             )  SS.
STATE OF CALIFORNIA        )

4

5

6    I, ROSALYN ADAMS, OFFICIAL COURT REPORTER, IN AND FOR THE

7    UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF

8    CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753,

9    TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND

10   CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED

11   PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE

12   TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS

13   OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

14

15

16   DATED:  NOVEMBER 2, 2011

17

18        **/S/  ROSALYN ADAMS**

19   ROSALYN ADAMS, CSR 11794
     OFFICIAL COURT REPORTER
20

21

22

23

24

25

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

# EXHIBIT B





# CODE OF PROCEDURE





P.O. Box 50191
Minneapolis, MN 55405
800-474-2371
www.adrforum.com

© 2008 NATIONAL ARBITRATION FORUM, INC.
07/08 MGB

*August 1, 2008*

N A T I O N A L   A R B I T R A T I O N   F O R U M

# Code of Procedure

## PART I–SCOPE

**RULE 1.** Arbitration Agreement ...........1
**RULE 2.** Definitions ........................2
**RULE 3.** Representation ...................7
**RULE 4.** Confidentiality ...................7

## PART II–COMMENCEMENT OF ARBITRATION

**RULE 5.** Summary of Procedures .........8
**RULE 6.** Service of Claims, Responses, Requests, and Documents ......11
**RULE 7.** Filing ............................12
**RULE 8.** Notices and Conferences ......13
**RULE 9.** Time Periods, Time Extensions, Adjournments, and Stays .......14
**RULE 10.** Time Limitations ...............16

## PART III–DOCUMENTS

**RULE 11.** Form and Parties ...............17
**RULE 12.** Initial Claim ...................18
**RULE 13.** Response .......................19
**RULE 14.** Counter Claim .................21
**RULE 15.** Cross-claim ....................22
**RULE 16.** Third Party Claim ..............23
**RULE 17.** Amendment ....................23
**RULE 18.** Request to Arbitrator or Forum ........................25
**RULE 19.** Joinder, Intervention, Consolidation, and Separation .....................26

## PART IV–ARBITRATORS

**RULE 20.** Authority of Arbitrators .........28
**RULE 21.** Selection of Arbitrators .........29
**RULE 22.** Number of Arbitrators ..........30
**RULE 23.** Disqualification of Arbitrator ...31
**RULE 24.** Communications with Arbitrators ......................33

## PART V–HEARING

**RULE 25.** Selection of a
Document Hearing ............34
**RULE 26.** Selection of a
Participatory Hearing ..........35
**RULE 27.** Request for an
Expedited Hearing .............36
**RULE 28.** Document Hearing ............40
**RULE 29.** Discovery .......................41
**RULE 30.** Subpoena for In-person
Participatory Hearing ..........44
**RULE 31.** Exchange of Information
Before a Participatory
Hearing ........................46
**RULE 32.** Location of an In-person
Participatory Hearing ..........47
**RULE 33.** Participatory Hearing ..........47
**RULE 34.** Participatory Hearing
Proceedings ...................48
**RULE 35.** Evidence in a
Participatory Hearing ..........50
**RULE 36.** Arbitration Proceedings in
Absence of a Party .............51

## PART VI–AWARDS AND ORDERS

**RULE 37.** Awards .........................52
**RULE 38.** Orders .........................53
**RULE 39.** Entry and Service of
Awards and Orders .............54
**RULE 40.** Voluntary Dismissal............54
**RULE 41.** Involuntary Dismissal ..........55
**RULE 42.** Correction .....................57
**RULE 43.** Reopening and
Reconsideration ................57

## PART VII–FEES

**RULE 44.** Fees ...........................59
**RULE 45.** Waiver of Fees .................62

## PART VIII–CODE PROVISIONS

**RULE 46.** Compliance with Rules .........64
**RULE 47.** Legal Proceedings...............64
**RULE 48.** Interpretation and
Application of Code ...........66

## APPENDIX A

Notice of Arbitration ........................68

## APPENDIX B

Second Notice of Arbitration ...............71

## APPENDIX C

Help Line   .................................74

NATIONAL ARBITRATION FORUM

# Part I–Scope

### RULE 1. ARBITRATION AGREEMENT.

A. Parties who contract for or agree to arbitration provided by the Forum or this Code of Procedure agree that this Code governs their arbitration proceedings, unless the Parties agree to other procedures. This Code shall be deemed incorporated by reference in every Arbitration Agreement, which refers to the National Arbitration Forum, the International Arbitration Forum, the Arbitration Forum, adrforum.com, Forum or this Code of Procedure, unless the Parties agree otherwise. This Code shall be administered only by the National Arbitration Forum or by any entity or individual providing administrative services by agreement with the National Arbitration Forum.

B. Parties may agree to submit any matter, including any Claim for legal or equitable relief, to arbitration unless prohibited by applicable law.

C. Arbitrations will be conducted in accord with the applicable Code of Procedure in effect at the time the Claim is filed, unless the law or the agreement of the Parties provides otherwise. A case that has been Stayed, extended or Adjourned for more than one hundred-eighty (180) days may be subject to the Code of Procedure and Fee Schedule in effect at the time the case proceeds.

D. Parties may modify or supplement these rules as permitted by law. Provisions of this Code govern arbitrations involving an appeal or a review de novo of an arbitration by other Arbitrators.

### RULE 2. DEFINITIONS.

For purposes of this Code, the following definitions apply:

A. Affidavit: A Written statement of a person who asserts the statement to be true under penalty of perjury or who makes the statement under oath before a notary public or other authorized individual.

B. Adjournment: A continuance or delay for a specific period of time requested after the appointment of an Arbitrator. See Time Extension and Stay.

C. Amendment: A change made to a Claim after it has been served on the Respondent and any change made to a Response after it has been filed and Delivered to all Parties.

D. Appearance: Any filing by a Party or Party's Representative under Rules 12, 13, 19B, 41A or 44H.

E. Arbitration Agreement: Any Written provision in any agreement between or among the Parties to submit any dispute, controversy or Claim to the Forum or to arbitration under this Code.

F. Arbitrator: An individual selected in accord with the Code or an Arbitration Agreement to render Orders and Awards, including a sole Arbitrator and all Arbitrators of an arbitration panel. No Arbitrator may be a director or officer of the Forum. A Party Arbitrator is an Arbitrator selected by a Party to serve as a member of a panel of Arbitrators in accord with the agreement of the Parties.

G. Award: Any Award establishing the final rights and obligations of the Parties or as otherwise provided by this Code or by law.

H. Claim: Any Claim submitted by any Party including an Initial Claim, Cross-claim, Counter Claim, and Third Party Claim.

I. Claimant: Any individual or Entity making any Claim under this Code.

J. Claim Amount: The total value of all relief sought. A Claimant seeking non-monetary relief states a monetary value for this relief for purposes of establishing the Claim Amount.

K. Common Claim: A Claim Amount less than $75,000.

L. Consumer: An individual, who is not a business or other Entity, whose Claim or Response against a business or other Entity arises:

  (1) From a transaction or event entered into primarily for personal, family or household purposes;

  (2) From an existing, past or prospective employment relationship with an employer Party; or

  (3) From a transaction or event involving any aspect of health care.

M. Delivery: Delivery to the address of a Party, the Forum or an Arbitrator by the postal service of the United States or any country, or by a reliable private service, or by facsimile, e-mail, electronic or computer transmission.

N. Director: The Director of Arbitration and the Forum staff administer arbitrations under this Code or under other rules agreed to by the Parties.

O. Document: Any Writing or data compilation containing information in any form, including an agreement, record, correspondence, summary, electronically stored information, tape, e-mail, video, audio, disk, computer file, electronic attachment, notice, memorandum or other Writings or data compilations.

P. E-commerce Transaction: All contracts and agreements entered into, in whole or in part, by electronic or computer communication and all transactions consummated through electronic or computer communication.

Q. Entity: Any association, business, company, cooperative, corporation, country, governmental unit, group, institution, organization, partnership, sole proprietorship, union or other establishment.

R. Fee Schedule: The Fee Schedule appears in a supplement to this Code.

S. Forum: The National Arbitration Forum, the International Arbitration Forum, the Arbitration Forum, arbitration-forum.com, and adrforum.com constitute the administrative organizations conducting arbitrations under this Code. The Forum or an entity or individual providing administrative services by agreement with the Forum administers arbitrations in accord with this Code.

T. Hearing: Hearings include:

  (1) Document Hearing: A proceeding in which an Arbitrator reviews documents or property to render an Order or Award and the Parties do not attend.

(2) Participatory Hearing: Any proceeding in which an Arbitrator receives testimony or arguments and reviews documents or property to render an Order or Award. The types of Participatory Hearings include:

a. In-person Hearing – A Hearing at which the participants may appear before the Arbitrator in person;

b. Telephone Hearing – A Hearing at which the participants may appear before the Arbitrator by telephone; and,

c. On-line Hearing – A Hearing at which the participants may appear before the Arbitrator on-line, by e-mail or by other electronic or computer communication.

U. Interim Order: Any Order providing temporary or preliminary relief pending a final Award.

V. Large Claim: A Claim Amount of $75,000 or more.

W. Order: Any Order establishing specific rights and obligations of the Parties.

(1) A Dispositive Order results in a final Award or dismissal of any Claim or Response.

(2) All other Orders are Non-dispositive.

X. Party: Any individual or Entity who makes a Claim or against whom a Claim is made including Claimants, Respondents, Cross-claimants, and Third Parties.

Y. Party Witness: Any person who is an individual Party or who is an employee of an entity Party at the time of the service of the subpoena.

Z. Proof of Service: An Affidavit stating how and where service was made.

AA. Receive or Receipt: The Delivery or other effective notice to the Forum, or to a Party at the address of the Party or Party Representative.

BB. Representative: Any individual, including an attorney, who makes an appearance on behalf of a Party.

CC. Request: Any Request by a Party directed to an Arbitrator or the Forum for an Order or other relief, including any motion, petition or other type of Request.

DD. Respondent: Any Party against whom a Claim is made.

EE. Response: Any Written Response by a Party or Representative to any Claim.

FF. Sanctions: Sanctions include dismissal of the arbitration or the Claims or Responses; preclusion of evidence; admission of facts; payment of costs; payment of fees including reasonable attorney fees, Arbitrator fees, and arbitration fees; the rendering of an Order or Award; and other Sanctions deemed appropriate. Sanctions may be imposed against a Party, a Representative or both.

GG. Signature or Signed: Any mark, symbol or device intended as an attestation, produced by any reliable means, including an electronic transcription intended as a Signature.

HH. Stay: A delay for an indefinite period of time requested by a Claimant before an Arbitrator is appointed. See Time Extension and Adjournment.

N A T I O N A L   A R B I T R A T I O N   F O R U M

II. Time Extension: A continuance or delay for a specific period of time requested before the appointment of an Arbitrator. See Adjournment and Stay.

JJ. With Prejudice: The case cannot be brought again. The Claimant cannot subsequently bring the same Claim against the Respondent.

KK. Without Prejudice: The case may be brought again. The Claimant can subsequently file the same Claim against the same Respondent.

LL. Writing or Written: Any form intended to record information, including symbols on paper or other substance, recording tape, computer disk, electronic recording, and video recording and all other forms.

### RULE 3. REPRESENTATION.

A. Parties may act on their own behalf or may be represented by an attorney or by a person who makes an appearance on behalf of a Party.

B. Parties, their Representatives, and all participants shall act respectfully toward the Forum staff, the Arbitrator, other Parties, Representatives, witnesses, and participants in the arbitration.

### RULE 4. CONFIDENTIALITY.

Arbitration proceedings are confidential unless all Parties agree or the law requires arbitration information to be made public. Arbitration Orders and Awards are not confidential and may be disclosed by a Party. The Arbitrator and Forum may disclose case filings, case dispositions, and other case information filed with the Forum as required by a Court Order or the applicable law.

# Part II–Commencement of Arbitration

### RULE 5. SUMMARY OF PROCEDURES.

A. Claim. A Party begins an arbitration by filing with the Forum a properly completed copy of the Initial Claim described in Rule 12, accompanied by the appropriate filing fee which appears in the Fee Schedule. The Forum reviews the Claim, opens a file, assigns a file number, and notifies the Claimant, who then serves the Respondent in accord with Rule 6.

B. Response. A Respondent may file a Response as explained in Rule 13 or respond otherwise as explained in these rules and the Notices of Arbitration, which appear in Appendices A and B. If there is no timely Response, the arbitration proceeds in accord with Rule 36.

C. After a Response. The arbitration proceeds in accord with a Scheduling Notice issued by the Forum or by action by the Parties.

D. Hearing. A Party may select a Document Hearing under Rule 25 or a Participatory Hearing under Rule 26 and pay the fee, if any, listed in the Fee Schedule. Parties have a full and equal right to present relevant and reliable direct and cross examination testimony, documents, exhibits, evidence, and arguments. A record may be made of Participatory Hearings.

E. Arbitrator. The Parties select an Arbitrator(s) by mutual agreement in accord with Rules 21, 22, and 23. Forum arbitrators are neutral, independent, experienced, and knowledgeable about the applicable law.

F. Arbitrator Qualifications. A neutral Arbitrator shall not serve if circumstances exist that create a conflict of interest or cause the Arbitrator to be unfair or biased in accord with Rules 21 and 23. A Forum Arbitrator may also be removed similar to the ways a judge or juror may be stricken.

G. Arbitrator Powers. An Arbitrator decides issues in a case including questions of fact and law. An Arbitrator follows the applicable substantive law and may grant any remedy or relief provided by law or equity, including monetary and injunctive relief, in accord with Rules 20, 27, 37, and 38.

H. Discovery. Before a Hearing is held, Parties shall cooperate in the discovery process and may exchange and obtain discovery in accord with Rule 29.

I. Requests. Parties may seek appropriate relief or remedies in accord with Rule 18.

J. Fee Schedules. The Fee Schedules appear in a supplement to this Code. The Forum Fee Schedules are a model of fair cost and fee allocation. The Common Claim Fee Schedule governs amounts under $75,000, and the Large Claim Fee Schedule governs all other Claim Amounts.

K. Consumers. See Rule 2L. Consumers include Consumers, employees, and patients.  Consumers pay only reasonable arbitration fees as explained in these Rules and the Fee Schedule, and as required by the applicable law. Other Parties may have to pay fees for Consumers.

L. Indigent Parties. In accord with Rule 45, Consumers who meet the United States Federal poverty standards need not pay arbitration fees.

M. Substantive Law and Remedies. All types of legal and equitable remedies and relief available in court are available in arbitration. Claims, Responses, remedies or relief cannot be unlawfully restricted, and Parties may effectively pursue any remedy or relief in arbitration including statutory, common law, injunctive, equitable, and all other lawful remedies and relief.

N. Award or Order. After a Hearing, an Arbitrator shall promptly issue an Award or Order in accord with Rule 37 or 38. Reasons, findings of fact, and conclusions of law shall be in accord with Rule 37 or 38.

O. Review and Enforcement. An Award may be enforced in any court of competent jurisdiction, as provided by applicable law. An Award or Order may be reviewed by a court with jurisdiction to determine whether the Arbitrator properly applied the applicable substantive law and whether the arbitration complied with applicable arbitration laws.

P. Public Information. Arbitration information may be made public in accord with Rule 4 or as required by Court Order.

Q. Access to Justice. This Code shall be interpreted to provide all Parties with a fair and impartial arbitration and with reasonable access to civil justice. Arbitrations under the Code are governed by the Federal Arbitration Act in accord with Rule 48B.

### RULE 6. SERVICE OF CLAIMS, RESPONSES, REQUESTS, AND DOCUMENTS.

A. After being notified by the Forum that a Claim has been accepted for filing in accord with Rules 7 and 12, and a file number has been provided, the Claimant shall promptly serve on each Respondent one (1) copy of the Initial Claim Documents, containing the Forum file number, together with a Notice of Arbitration substantially conforming to Appendix A of this Code, including notice that the Respondent may obtain a copy of the Code, without cost, from the Claimant or the Forum.

B. Service of Initial Claims and Third Party Claims shall be effective if done by:

(1) United States Postal Service Certified Mail Signed return receipt or equivalent service by the national postal service of the country where the Respondent resides or does business;

(2) Delivery by a private service with the Delivery receipt Signed by a person of suitable age and discretion who Received the Documents;

(3) Delivery with a Written acknowledgment of Delivery by the Respondent or a Representative;

(4) In accord with the Federal Rules of Civil Procedure of the United States or the rules of civil procedure of the jurisdiction where the Respondent entered into the Arbitration Agreement;

(5) In accord with any agreement of the Party served;

(6) For Claims related to or arising from an E-commerce Transaction, Delivery to the e-mail address of the Party served, Receipt confirmed; or

(7) Service is complete upon Receipt by the Party served or the filing of a Response with the Forum by a Respondent.

C. Service of Responses, Counter Claims, Cross-claims, Requests, notices, and Documents shall be by Delivery, as defined in Rule 2M, to the address of all Parties or their Representatives at their addresses of record with the Forum, or by using service methods for an Initial Claim in Rule 6B. Amended Claims shall be served or Delivered as provided in Rule 17D.

D. The Party serving or Delivering a Claim, Response, Request, notice or Document shall timely Deliver copies to all Parties not required to be served. This rule does not apply to a Rule 45 Request.

E. Parties and Representatives shall immediately notify the Forum and all other Parties of their mail, facsimile and e-mail address and any changes in their addresses. If they fail to do so, Parties and their Representatives agree to Receive service at the previous address provided to the Forum.

### RULE 7. FILING.

A. A Party who serves a Claim or Response shall timely file these and all other Documents and Proof of Service with the Forum. The filing of Proof of Service constitutes a certification that the service conforms to Rule 6. A Party who files paper Documents with the Forum shall file two (2) copies. A Party who files Documents online need only file one set of Documents.

B. Parties may file by Delivery as defined in Rule 2M, in person, or by other methods of filing authorized by the Forum at:

P.O. Box 50191
Minneapolis, Minnesota USA 55405-0191
or
www.adrforum.com
or
file@adrforum.com
or
Fax: 952-345-1160

C. Upon Proof of Service of an Initial Claim, where no Response has been filed, the Forum shall mail to Respondent the Second Notice of Arbitration, substantially conforming to Appendix B of this Code.

D. The Forum may distribute copies of Documents filed with the Forum to Parties or their Representatives who have entered an Appearance with the Forum.

E. Filing is complete upon Receipt by the Forum of all required Documents and fees. Claims, Responses, Requests, Notices, and all other Documents Received by the Forum are not considered filed until all required Documents are Received together with all applicable fees.

F. The effective date of filing is the business day the Forum Receives all required Documents and fees. A submission is due before Midnight, United States Central time, on its due date.

### RULE 8. NOTICES AND CONFERENCES.

A. The Forum may notify and communicate with a Party or Parties by Writing, facsimile, e-mail, telex, telegram, telephone, in person or by other means of communication.

B. The Forum or Arbitrator may conduct a conference with a Party or Parties to discuss procedural matters on the initiative of the Forum or at the Request of a Party or Arbitrator.

C. The Forum may issue a Scheduling Notice regarding the Hearing process, including preliminary Hearings.

### RULE 9. TIME PERIODS, TIME EXTENSIONS, ADJOURNMENTS, AND STAYS.

A. Time Periods. In computing any period of time under this Code, the day of the act or event from which the designated period of time begins to run shall not be included.

B. Holidays. Saturdays, Sundays, and federal holidays of the United States are included in the computation of time, except when they fall on the last day of a period.

C. Enforcement. The time periods established in this Code are to be strictly enforced and a Party's untimely Claim, Response, Request, Notice, Document or submission may be denied solely because it is untimely.

D. Time Extensions. The Forum may extend time periods in this Code. A Request for a Time Extension must be filed with the Forum and delivered on all other Parties at least five (5) days before the time period ends or no later than a deadline established by a Scheduling Notice, whichever is earlier, and must be accompanied by a fee, if any, as provided in the Fee Schedule. A Request submitted after the time period has ended will not be considered unless extraordinary circumstances exist.

E. Adjournments. An Arbitrator may Adjourn the arbitration process or a Hearing to a later date. A Rule 18 Request for an Adjournment must be filed with the Forum and served on the other Parties at least seven (7) days before the scheduled event and must be accompanied by a fee, if any, as provided in the Fee Schedule. A Request

13

14

submitted after the time period has ended will not be considered unless extraordinary circumstances exist. Any other Party may object to a Request by filing with the Forum and serving on all other Parties an objection within three (3) days of the Request being filed with the Forum.

F. Stays.

(1) A Claimant may obtain a Stay of a case for an indefinite period of time by filing with the Forum and serving on all other Parties a Stay Notice prior to the appointment of an Arbitrator. An opposing Party may end a Stay by filing with the Forum and serving on all Parties an objection which ends the Stay. Claimant may file only one (1) Stay Notice and may seek a subsequent Stay by submitting a Rule 18 Request. A Stay suspends the time when proceedings and hearings occur and when Documents and Fees are due.

(2) By submitting a Notice at any time, Parties may mutually agree to Stay a matter based on a settlement agreement. Upon receipt of the Notice, the Forum shall stay the matter for the duration of the settlement agreement. Any Party may end such a Stay by filing with the Forum and serving on all Parties an objection seeking to end the Stay.

(3) The Forum shall Stay a case if ordered by a court of competent jurisdiction, and may Stay a case when reasonably necessary.

G. International. For arbitration Hearings to be held outside of the United States, an additional thirty (30) days shall be added to the time periods in Rule 13 of this Code. Additional time for other proceedings will be made available at the determination of the Forum or at the Request of a Party.

### RULE 10. TIME LIMITATIONS.

A. No Claim may be brought after the passage of time which would preclude a Claim regarding the same or similar subject matter being commenced in court. This time limitation shall be suspended for the period of time a court of competent jurisdiction exercises authority over the Claim or dispute. This rule shall not extend nor shorten statutes of limitation or time limits agreed to by the Parties, nor shall this rule apply to any case that is directed to arbitration by a court of competent jurisdiction.

B. An arbitration shall commence on the date the Respondent is served with the Initial Claim Documents or the date a Response is filed with the Forum, whichever is earlier.

NATIONAL ARBITRATION FORUM

# Part III–Documents

### RULE 11. FORM AND PARTIES.

A. Every Claim, Response, Amendment, and Request shall be in Writing and Signed by a Party or Representative.

B. Parties and Representatives shall provide the Forum and all Parties with their names, current address, an address where service will be accepted, telephone numbers, and available facsimile numbers and e-mail addresses. Respondents shall provide the Forum with the address of their residence or business for determination of the proper location of the Hearing in accord with Rule 32.

C. Statements in Claims, Responses, Amendments, and Requests may be made in separate and numbered sentences, paragraphs or sections, and may refer to exhibits attached to Claims, Responses, Requests or Documents.

D. English is the language used in Forum proceedings unless the Parties agree to use another language. The Forum or Arbitrator may Order the Parties to provide translations at their own cost unless the Forum has agreed in advance to the use of another language.

E. A Party may be:

(1) An executor, administrator, guardian, bailee, trustee, or

(2) An assignee, a successor in interest, a recipient of a transfer of interest, or

(3) A guardian, conservator, fiduciary, or other legal Representative for an infant or incompetent person.

Proof of the status of a Party under this rule must be made by an Affidavit filed with the Forum. A Party who contests the status of another Party may file a Rule 18 Request for relief with the fee, if any, as provided in the Fee Schedule.

### RULE 12. INITIAL CLAIM.

A. An Initial Claim, which begins an arbitration in accord with Rule 6 of this Code, shall include:

(1) A statement in plain language of the dispute or controversy, the facts and the law (if known) supporting the Claim, the specific relief requested and the reasons supporting the relief, the specific amount and computation of any money or damages, the specific value of non-monetary or other relief, the specific amount and computation of any interest, costs, and attorney fees under Rule 12B, and other relevant and reliable information supporting the Claim;

(2) A copy of the Arbitration Agreement, or, if not in the possession of the Claimant, notice of the location of a copy of the Arbitration Agreement;

(3) A copy of available Documents that support the Claim;

(4) An Affidavit asserting that the information in the Claim is accurate; and

(5) The appropriate Filing Fee as provided in the Fee Schedule.

B. A Claimant who seeks costs and attorney fees must include this statement in the Claim and may either:

(1) State the specific amount sought in the Claim; or

(2) Amend the Claim to state the specific amount sought:

a. For Document Hearings no later than ten (10) days from the date of the Notice of the Selection of an Arbitrator; or

b. For Participatory Hearings no later than seven (7) days from the close of the Hearing; or

c. For prevailing Parties, by Order of the Arbitrator.

C. After service of the Initial Claim on the Respondent, the Claimant shall promptly file with the Forum Proof of Service of the Initial Claim on the Respondent. A Claim shall not proceed to arbitration until the Forum has received a copy of the Proof of Service of the Initial Claim or a Response has been filed with the Forum.

D. An Arbitrator may reject, in whole or in part, an Initial Claim that does not substantially conform to this rule.

E. A Claimant may seek any remedy or relief allowed by applicable substantive law.

### RULE 13. RESPONSE.

A. Upon service of an Initial Claim, Counter Claim, Cross-claim, or Third Party Claim on a Respondent, the Respondent shall Deliver to the Claimant and file with the Forum, within thirty (30) days from Receipt of service or fourteen (14) days from the date of the Second Notice of Arbitration, whichever is later, a Response which shall include:

(1) A Written Document stating in plain language a Response to the Claim or stating the Respondent has insufficient information to affirm or deny a statement. A Response shall also include any defenses to each Claim made, the facts and the law (if known) supporting the defenses, including affirmative defenses and set offs;

(2) An objection to the arbitration of the Claim, if the Respondent so objects. A Response that does not assert this objection is an agreement to the arbitration of the Claim and a waiver of this objection which cannot be asserted in an Amendment;

(3) A copy of available Documents that support the Response;

(4) Any Counter Claim the Respondent has against the Claimant in accord with Rule 14 of this Code, including the Counter Claim filing fee;

(5) Proof of Delivery of the Response to all other Parties; and

(6) Any fees as provided in the Fee Schedule or as required by the agreement of the Parties.

B. A Party may obtain ten (10) additional days to respond to an Initial Claim by filing with the Forum and Delivering to all other Parties an extension Notice before the Response is due. Only one (1) extension by Notice is available.

C. A Respondent who responds but does not state available replies, defenses or Claims may be barred by the Arbitrator from presenting such replies, defenses or Claims at the Hearing. The failure of a Respondent to deny a statement in a Claim may be

considered by the Arbitrator as an admission of that statement.

D. An Arbitrator may reject, in whole or in part, a Response that does not substantially conform to this rule.

### RULE 14. COUNTER CLAIM.

A. A Respondent may assert a Counter Claim against a Claimant by Delivering to the Claimant, as part of the Response in accord with Rule 13, Counter Claim Documents which include:

(1) A Counter Claim stating in plain language the dispute or controversy, the facts and the law (if known) supporting the Counter Claim, the specific relief requested and the reasons supporting the relief, the specific amount and computation of any money or damages, the specific value of non-monetary or other relief, the specific amount and computation of any interest, costs, and attorney fees under Rule 12B, and other relevant and reliable information supporting the Counter Claim;

(2) A copy of available Documents that support the Counter Claim; and

(3) An Affidavit asserting that the information in the Counter Claim is accurate.

B. The Respondent shall also pay the filing fee for a Counter Claim as provided in the Fee Schedule at the time of filing the Counter Claim with the Forum.

C. An Arbitrator may reject, in whole or in part, Counter Claim Documents that do not substantially conform to this rule.

### RULE 15. CROSS-CLAIM.

A. A Party may assert a Claim against a co-Party arising out of the same or related transaction or occurrence of the dispute or controversy by Delivering to the co-Party the Cross-claim Documents which include:

(1) A Cross-claim setting forth in plain language the dispute or controversy, the facts and the law (if known) supporting the Cross-claim, the specific relief requested and the reasons supporting the relief, the specific amount and computation of any money or damages, the specific value of non-monetary or other relief, the specific amount and computation of any interest, costs, and attorney fees under Rule 12B, and other relevant and reliable information supporting the Cross-claim;

(2) A copy of available Documents that support the Cross-claim; and

(3) An Affidavit asserting that the information in the Cross-claim is accurate.

B. A Party shall Deliver a Cross-claim on all Parties and shall file copies with the Forum within fifteen (15) days of the date of service of a Response.

C. The Cross-claimant shall file with the Forum, promptly after Delivery of the Cross-claim, the proof of Delivery of the Cross-claim on all Parties, with the fee for filing a Cross-claim, if any, and the fee for a Hearing, if selected, as provided in the Fee Schedule.

D. An Arbitrator may reject, in whole or in part, Cross-claim Documents that do not substantially conform to this Rule.

### RULE 16. THIRD PARTY CLAIM.

A. If a Respondent asserts that a non-Party, who has entered into an Arbitration Agreement but was not served by the Claimant, is responsible for the Award demanded, the Respondent may serve a Third Party Claim on this Party, which shall include:

(1) All information required in an Initial Claim in Rule 12 of this Code, including a copy of the Claim Documents that gave rise to the Third Party Claim; and

(2) A copy of the Arbitration Agreement, or notice of the location of a copy of the Arbitration Agreement.

B. The Third Party Claim shall be Delivered to all other Parties and a copy shall be filed with the Forum within thirty (30) days of the date of service of the Initial Claim, as required by Rule 16A.

C. The Third Party Claimant shall file with the Forum, promptly after service of the Third Party Claim the Proof of Service of the Third Party Claim on Third Party Respondent and proof of Delivery on all other Parties, with the fee for a Third Party Claim, and the fee for a Hearing, if selected, as provided in the Fee Schedule.

D. An Arbitrator may reject, in whole or in part, Third Party Claim Documents that do not substantially conform to this rule.

### RULE 17. AMENDMENT.

A. A Claim or Response may be Amended:

(1) By agreement of the Parties at any time;

(2) By Request, not later than the Scheduling Notice deadline or ten (10) days from the date of the Notice of Selection of an Arbitrator for a Document Hearing or thirty (30) days before the earliest date set for a Participatory Hearing, if the Amendment does not delay the arbitration and promotes fairness, efficiency, or economy, which Request shall be promptly decided by an Arbitrator; or

(3) By Request during or within three (3) days following a Document or Participatory Hearing, if the Arbitrator finds the Amendment conforms to the evidence received.

B. An Amendment of a Claim or Response, or a Request for an Amendment, shall be designated as such and promptly served on all Parties and filed with the Forum. Any Party may object to the Amendment Request by filing with the Forum and Delivering to all Parties a Written objection(s) within ten (10) days of Delivery of the Request. An amended Claim which increases the Claim Amount shall also be accompanied by the additional filing fee in the Fee Schedule. An amended Claim, excluding Amendments agreed to by all Parties, shall also be accompanied by the Amendment Request Fee as provided in the Fee Schedule.

C. A Respondent shall respond to an amended Claim within the time remaining for a Response to the Initial Claim or within fifteen (15) days after service of the amended Claim, whichever time is longer, unless the Parties agree or an Arbitrator orders otherwise.

D. After service of the Initial Claim, an Amendment of a Claim that increases the monetary amount of the value of relief sought in the Initial Claim must be served in accord with Rule 6B. All other Amendments may be Delivered in accord with Rule 2M.

E. Any change to the Claim before service is made on Respondent is not an Amendment. After service, a reduction of the Claim Amount, a change of address of a Party, and the substitution of a successor in interest are not Amendments.

F. An Amendment of a Claim shall relate back to the time the Initial Claim was commenced unless otherwise provided by applicable law.

### RULE 18. REQUEST TO ARBITRATOR OR FORUM.

A. A Party may Request an Order or other relief from an Arbitrator or the Forum by filing with the Forum:

  (1) A Document stating in plain language:

   a. The Request;
   b. The specific rule, if any, relied on for an Order or other relief;
   c. The specific relief or Order sought;
   d. The facts and law supporting the Request; and
   e. Any other relevant and reliable information.

  (2) All Documents that support the Request, Order or relief;

  (3) Proof of Delivery of the Request Documents on all Parties; and

  (4) The fee, as provided in the Fee Schedule.

B. The Party shall Deliver the Rule 18A(1) and (2) Documents to all Parties at the time of filing.

C. Any other Party may object to a Request by filing with the Forum and Delivering to all Parties a Written objection(s) within ten

(10) days of Delivery of the Request, unless another time is provided by rule or is necessary based on the relief requested.

D. Requests directed to the Forum are decided by the Forum as permitted by the Code. Requests directed to an Arbitrator are decided by an Arbitrator. Prior to the appointment of an Arbitrator, Requests may be granted by the Forum as permitted by this Code.

E. All Requests or motions made by a Party are Rule 18 Requests. A Party filing a Request or objection must pay the fee, if any, as provided in the Fee Schedule. A Request or motion to reconsider is usually not granted, unless the controlling law has changed. The Fee Schedule lists fees that may accompany Rule 18 Requests, objections, procedures, and proceedings.

F. No Request may be filed later than the Scheduling Notice deadline or fifteen (15) days before a Participatory Hearing or for Document Hearings later than ten (10) days from the date of the Notice of the Selection of an Arbitrator, unless another time is provided by rule or is necessary based on the relief requested.

### RULE 19. JOINDER, INTERVENTION, CONSOLIDATION, AND SEPARATION.

A. Any individual or Entity may, as agreed to by the Parties or as required by applicable law, join any dispute, controversy, Claim or Response in an arbitration by filing a Claim Document stating the grounds. An Arbitrator has no authority to issue an Order or Award binding any individual or Entity not a Party, unless that individual or Entity agrees or as required by applicable law. The Forum may require a Party to pay a fee.

B. Any individual or Entity that entered into the Arbitration Agreement between Claimant and Respondent may intervene in an arbitration if a common question of fact or law arising from the same or related transaction or occurrence exists and such a proceeding promotes fairness, efficiency or economy. The Forum may require a Party to pay a fee.

C. Separate arbitrations involving the same named Parties and a common question of fact or law arising from the same or related transaction or occurrence shall be consolidated at the Request of a Party or at the determination of the Forum if the consolidation promotes fairness, efficiency or economy. A Party may challenge this consolidation by filing a Rule 18 Request for severance, and an Arbitrator shall promptly decide this Request by determining whether consolidation or severance promotes fairness, efficiency or economy. The Forum may require a Party to pay a fee.

D. An arbitration involving multiple Claims or Responses or Parties may be separated into individual Hearings if such proceedings promote fairness, efficiency or economy. The Forum may require the Party or Parties to pay Hearing fees for separate Hearings.

E. A Request by an individual or Entity to join or intervene or a Request by a Party for separation must be filed in accord with Rule 18.

F. An Arbitrator shall promptly decide Requests for joinder, intervention, severance or separation. Any decision by an arbitrator joining, consolidating or aggregating parties or claims is an Award under 9 U.S.C. Section 9.

# Part IV–Arbitrators

### RULE 20. AUTHORITY OF ARBITRATORS.

A. Arbitrators have the powers provided by this Code, the agreement of the Parties, and the applicable law.

B. Arbitrators selected in accord with Rule 21A(3) shall take an oath prescribed by the Director and shall be neutral and independent.

C. Arbitrators shall decide all factual, legal, and other arbitrable issues submitted by the Parties and do not have the power to decide matters not properly submitted under this Code.

D. An Arbitrator shall follow the applicable substantive law and may grant any legal, equitable or other remedy or relief provided by law in deciding a Claim, Response or Request properly submitted by a Party under this Code. Claims, Responses, remedies or relief cannot be unlawfully restricted.

E. An Arbitrator shall have the power to rule on all issues, Claims, defenses, questions of arbitrability, and objections relating to the existence, scope, and validity of the contract, transaction, or relationship of the Parties.

F. An Arbitrator shall have the power to rule on all issues, Claims, Responses, questions of arbitrability, and objections regarding the existence, scope, and validity of the Arbitration Agreement including all objections relating to jurisdiction, unconscionability, contract law, and enforceability of the Arbitration Agreement.

## RULE 21. SELECTION OF ARBITRATORS.

A. Parties select an Arbitrator(s):

(1) By selecting an Arbitrator or a panel of Arbitrators on mutually agreeable terms; or

(2) By each Party selecting an Arbitrator and those Arbitrators selecting another Arbitrator for a panel of Arbitrators; or

(3) In the absence of an election of Rule 21A(1) or (2), by using the selection process in Rules 21B through 23 of this Code.

Parties must notify the Forum of their election of Rule 21A(1) or (2), or other agreement for Arbitrator selection, no later than thirty (30) days after the filing of a Response with the Forum.

B. For Large Claim Hearings, the Forum shall provide to each Party making an Appearance a list of Arbitrator candidates equal in number to the number of Parties plus the number of Arbitrators required under Rule 22. Each Party making an Appearance may strike one of the candidates and may Request disqualification of any candidate in accord with Rule 23C by notifying the Forum in Writing, within ten (10) days of the date of the strike list.

C. For Common Claim Hearings, the Forum shall submit one Arbitrator candidate to all Parties making an Appearance. A Party making an Appearance may remove one Arbitrator candidate by filing a notice of removal with the Forum within ten (10) days from the date of the notice of Arbitrator selection. A Party making an Appearance may request disqualification of any subsequent Arbitrator in accord with Rule 23.

D. Upon Request for an Expedited Hearing or if the need for an Arbitrator arises before an Arbitrator is designated in accord with Rule 21A, the Forum shall promptly designate an Arbitrator and the issues to be decided.

E. A Party is prohibited from striking or removing an Arbitrator or an Arbitrator candidate based on race, gender, nationality, ethnicity, religion, age, disability, marital status, family status, or sexual orientation. A party may only strike or remove an arbitrator in good faith and not for the purpose of delay or to gain an unfair advantage.

F. A Party may request Receipt of the Notice of Arbitrator selection by notifying the Forum, in Writing, within ten (10) days from the date Claimant files Proof of Service of the Initial Claim. Notices related to Arbitrator selection need not be provided to a Party who has failed to respond to a Claim or otherwise appear or defend or pay fees as provided by this Code.

## RULE 22. NUMBER OF ARBITRATORS.

Unless the Parties agree otherwise, for all Hearings, one (1) Arbitrator shall conduct the Hearing and issue an Award. Where the Parties have agreed to more than one (1) Arbitrator, that number of Arbitrators will serve and the Forum shall designate the chair of the panel, unless the Parties agree otherwise.

### RULE 23. DISQUALIFICATION OF ARBITRATOR.

A. An Arbitrator shall be disqualified if circumstances exist that create a conflict of interest or cause the Arbitrator to be unfair or biased, including but not limited to the following:

(1) The Arbitrator has a personal bias or prejudice concerning a Party, or personal knowledge of disputed evidentiary facts;

(2) The Arbitrator has served as an attorney to any Party or Representative, the Arbitrator has been associated with an attorney who has represented a Party during that association, or the Arbitrator or an associated attorney is a material witness concerning the matter before the Arbitrator;

(3) The Arbitrator, individually or as a fiduciary, or the Arbitrator's spouse or minor child residing in the Arbitrator's household, has a direct financial interest in a matter before the Arbitrator;

(4) The Arbitrator, individually or as a fiduciary, or the Arbitrator's spouse or minor child residing in the Arbitrator's household, has a direct financial interest in a Party;

(5) The Arbitrator or the Arbitrator's spouse or minor child residing in the Arbitrator's household has a significant personal relationship with any Party or a Representative for a Party; or

(6) The Arbitrator or the Arbitrator's spouse:

a. Is a Party to the proceeding, or an officer, director, or trustee of a Party; or,

b. Is acting as a Representative in the proceeding.

B. An Arbitrator shall provide the Forum with a complete and accurate resume, a copy of which the Forum shall provide the Parties at the time of the selection process. An Arbitrator shall disclose to the Forum circumstances that create a conflict of interest or cause an Arbitrator to be unfair or biased. The Forum shall disqualify an Arbitrator or shall inform the Parties of information disclosed by the Arbitrator if the Arbitrator is not disqualified.

C. A Party making an Appearance may request that an Arbitrator be disqualified by filing with the Forum a Written Request stating the circumstances and specific material reasons for the disqualification. A Party who knows or has reason to know of circumstances that may disqualify an Arbitrator must immediately disclose those circumstances to the Arbitrator, the Forum, and all other Parties. A Party who fails to timely and properly disclose disqualifying circumstances agrees to accept the Arbitrator and waives any subsequent objection to the Arbitrator in the pending arbitration or any other legal proceeding.

D. A Request to disqualify an Arbitrator must be filed with the Forum within ten (10) days from the date of the Notice of Arbitrator selection. The Forum shall promptly review the Request and shall disqualify the Arbitrator if there exist circumstances requiring disqualification in accord with Rule 23A or other material circumstances creating bias or the appearance of bias.

E. If an Arbitrator is disqualified or becomes unable to arbitrate before the issuance of an Award, the Forum shall designate a new Arbitrator or panel or re-schedule the hearing, unless the Parties agree otherwise.

**RULE 24. COMMUNICATIONS WITH ARBITRATORS.**

A. No Party or Party Representative shall directly communicate with an Arbitrator except at a Participatory Hearing, by providing Documents in accord with this Code, or during a conference with the Arbitrator scheduled by the Forum.

B. No Party or Party Representative shall communicate with a Party Arbitrator after the complete panel of Arbitrators has been selected, except at a Participatory Hearing, by providing Documents in accord with this Code, or during a conference with the Arbitrator scheduled by the Forum.

# Part V–Hearing

**RULE 25. SELECTION OF A DOCUMENT HEARING.**

A. In Common Claim cases, a Document Hearing shall be scheduled upon the filing of a Response and Receipt of the Administrative Fee.

B. In Large Claim cases, a Party may select a Document Hearing by filing a Written selection with the Forum, served on all other Parties by Delivery as defined in Rule 2M, and accompanied by a Written estimate of the number of hours or days required for the hearing and the fee for the Document Hearing provided in the Fee Schedule.

C. The Forum shall provide Written notice of a Document Hearing to all Parties not later than fifteen (15) days before the Document Hearing.

D. If another Party selects a Participatory Hearing, the Document Hearing shall be part of the Participatory Hearing.

E. For sufficient reason, the Forum or Arbitrator may postpone a Document Hearing at the Request of a Party or on the initiative of the Arbitrator or Forum.

### RULE 26. SELECTION OF A PARTICIPATORY HEARING.

A. A Party may select a Participatory Hearing of any type by:

(1) Filing a Written selection for a Participatory Hearing containing the information required in Rule 26B;

(2) Designating the type of Participatory Hearing requested: In-person, Telephone, or On-line; and

(3) Serving by Delivery, as defined by Rule 2M, the selection on all other Parties.

(4) For Common Claim cases, a selection of a Participatory Hearing must be filed with the Forum not later than fifteen (15) days after the Delivery of a Response. A Request for a Participatory Hearing made after this time may be filed in accord with Rule 18.

(5) The failure to timely select a Participatory Hearing is a waiver of the right to a Participatory Hearing.

B. Parties to a Participatory Hearing shall provide:

(1) The Party's estimate of the number of hours or days required, taking into account the rights of all Parties under Rules 34B and 35A;

(2) The names of witnesses proposed to offer evidence at the Hearing;

(3) The number of exhibits to be offered at the Hearing and their description;

(4) Any Request or requirement for a Written Award accompanied by the appropriate fee; and

(5) The fee for the Hearing as provided in the Fee Schedule.

No selection for a Participatory Hearing session is effective without payment of the appropriate fee, unless a waiver under Rule 45 has been granted.

C. The Forum shall set the date, time, place, and length of the Participatory Hearing and notify all Parties of the Hearing at least thirty (30) days before the beginning of the Participatory Hearing.

D. Before or after the beginning of a Participatory Hearing, if it is determined that the Participatory Hearing requires additional sessions, the Forum or Arbitrator shall require that the responsible Party pay for additional sessions in accord with Rule 44, or may suspend the Hearing until the additional sessions are properly scheduled.

E. For sufficient reason, the Forum or Arbitrator may postpone a Participatory Hearing at the Request of a Party or on the initiative of the Arbitrator or Forum.

### RULE 27. REQUEST FOR AN EXPEDITED HEARING.

A. A Party may Request an Expedited Hearing to obtain expedited relief in an Order or Award. A Request for an Expedited Hearing may be brought when the Respondent is served with Claim Documents or at any time before an Award becomes final and shall be accompanied by an explanation of the reasons for the expedited relief and the applicable law and by the fee as provided in the Fee Schedule.

B. An Arbitrator shall promptly decide the Request.

C. The requesting Party shall serve Notice of the Expedited Hearing on all Parties not less than forty-eight (48) hours before the time set for the Expedited Hearing. Proof of Service of this Notice shall be filed with the Forum before the Expedited Document Hearing or shall be presented at the Expedited Participatory Hearing.

D. A Party may seek a temporary restraining Order or a preliminary injunction to prevent irreparable injury by requesting an Expedited Hearing and filing with the Forum and serving on the Respondent and any other Parties the following:

(1) An Initial Claim in accord with Rule 12 or a Counter Claim or Third Party Claim;

(2) A Request that explains the irreparable injury and the specific reasons and Documents supporting the Request;

(3) An Affidavit from a person with personal knowledge describing the irreparable injury and specific facts;

(4) The proposed security for the relief sought;

(5) A proposed Order stating the specific relief sought, including a Hearing for a preliminary injunction if a temporary restraining Order is sought; and

(6) The fee as provided in the Fee Schedule.

E. Any Party may immediately file with the Forum and Deliver to all Parties an objection to the Request and a fee as provided in the Fee Schedule.

F. A temporary restraining Order may be granted without Written or oral notice to the Respondent or that Party's Representative only if:

(1) It clearly appears from specific facts shown by Affidavit that immediate and irreparable injury, loss or damage will result to the Requesting Party before the Respondent or that Party's Representative can be heard in opposition; and

(2) The Requesting Party or Representative of the Requesting Party certifies in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claims that notice should not be required.

(3) A temporary restraining Order granted without notice shall be immediately served on all Parties by the Requesting Party.

G. A preliminary injunction shall only be issued upon notice to all Parties.

H. An Expedited Telephone, Document or In-person Hearing shall be scheduled as soon as possible by the Forum. A Hearing for a temporary restraining Order shall be scheduled no later than forty-eight (48) hours from the time of filing or notice, whichever is later. If a temporary restraining Order is issued without notice, a Party may request that a Hearing with notice be held within forty-eight (48) hours of the issuance of the temporary restraining Order.

I. An Arbitrator will conduct the Hearing and issue an Order promptly, and the Forum will enter the Order promptly.

J. Every Order granting relief shall state the time and date of issuance, the reasons for the issuance including the irreparable injury, the specific conduct to be restrained, the duration of the Order, the security required, and, if applicable, the reason why it was issued without notice.

K. A temporary restraining Order shall expire within the time fixed in the Order, not to exceed ten (10) days, unless the Parties agree to a longer period of time or an Arbitrator issues a preliminary injunction.

L. If a Party who receives a temporary restraining Order fails to timely proceed with the Hearing for a preliminary injunction, the Arbitrator shall dissolve the temporary restraining Order.

M. A Hearing on a Request for a preliminary injunction may be consolidated by the Arbitrator with the final Hearing in the case upon a Request by a Party.

N. No temporary restraining Order or preliminary injunction shall be issued unless the Requesting Party provides security as deemed proper by the Arbitrator for the payment of costs and damages as may be incurred or suffered by a Party wrongfully restrained or enjoined.

O. Where security is given in the form of a bond, stipulation or other undertaking with a surety or sureties, each surety agrees to submit to the jurisdiction of the Forum and the arbitration and agrees to be bound by all Orders issued by the Arbitrator in the case including Orders affecting the liability of each surety on the bond, stipulation or undertaking.

## RULE 28. DOCUMENT HEARING.

A. A Party may submit any Document or property for consideration by the Arbitrator in a Document Hearing by filing with the Forum two (2) copies of the Document or property description and Delivering to all other Parties copies of the Document and property description.

B. Documents and property offered for consideration at a Document Hearing must be Received by the Forum and Delivered to all other Parties no later than ten (10) days from the date of the Notice of Selection of an Arbitrator as provided in Rule 21. Documents or property submitted after that date will be considered by Request of the submitting Party and granted by the Arbitrator for sufficient reason.

C. The Arbitrator shall determine the admissibility and weight of evidence and shall not be bound by rules of evidence.

D. During a Document Hearing, the Arbitrator may Request that the Parties submit additional information or Documents, including legal memoranda. Documents submitted in response to an Arbitrator's Request shall be filed with the Forum and Delivered to all other Parties no later than thirty (30) days after the date of the Request. A Party may obtain forty-five (45) additional days to respond to an Arbitrator's Request by filing with the Forum and Delivering to all other Parties an extension notice before the initial thirty (30) day time period expires. Only one (1) extension by notice is available.

E. The Arbitrator may visit a site to examine a matter relating to the arbitration.

F. The close of a Document Hearing occurs when the Arbitrator completes reviewing the Documents or property.

G. The presence or involvement of a Party in a Hearing results in the waiver of any objections to the notice of the Hearing.

### RULE 29. DISCOVERY.

A. Cooperative Discovery. After a Response is filed, Parties shall cooperate in the exchange of Documents and information. A Party seeking discovery shall contact other Parties and discuss discovery information and any objections and arrange for the exchange of Documents and information.

B. Seeking Discovery.

(1) If the Parties are unable to resolve discovery matters under Rule 29A, a Party may seek the disclosure of Documents, sworn answers to not more than twenty-five (25) Written questions, and one or more depositions before a Hearing where:

a. The information sought is relevant to a Claim or Response, reliable, and informative to the Arbitrator; and

b. The production of the information sought is reasonable and not unduly burdensome and expensive.

(2) The Party seeking discovery shall Deliver to all other Parties a Notice identifying the Documents to be produced, Written questions to be answered, or the Notice of deposition identifying the deponent, the proposed length of time for the deposition, and the scope of the deposition, no later than thirty (30) days before the date of a Participatory Hearing or for a Document

Hearing ten (10) days from the date of the Notice of the Selection of an Arbitrator.

(3) A Party may seek other discovery, including Requests for admissions and Requests for physical or mental examinations, before a Hearing, where:

a. The information sought is relevant to a Claim or Response, reliable, and essential to a fair hearing of the matter; and

b. The production of the information is reasonable and not unduly burdensome or expensive.

(4) The Party seeking discovery shall Deliver to all other Parties a copy of the Notice identifying the discovery sought no later than thirty (30) days before the date of a Participatory Hearing or for a Document Hearing ten (10) days from the date of the Notice of Selection of an Arbitrator.

C. Responding to Discovery. A Party Receiving a Notice shall Deliver to the Requesting Party:

(1) Within five (5) days after Receipt of the Notice of a deposition, a Written reply agreeing to the deposition or objecting to the deposition, including an explanation of the objections.

(2) Within twenty (20) days of the Receipt of the Notice for other discovery, a copy of the Documents Requested or a statement permitting an examination of the original Documents or property at a convenient time and place, sworn answers to the Written questions, or a Written agreement to provide other Requested discovery, or a Written objection explaining why all or some of

the Documents, property or other discovery has not been provided.

D. Request for Discovery. If a Party objects in accord with this Rule, the Requesting Party may file with the Forum and Deliver to all Parties, no later than the Scheduling Notice deadline or ten (10) days after Receiving the objection:

(1) A Rule 18 Request for a Discovery Order;

(2) A copy of the Written objections; and

(3) A Written statement of reasons why the Requesting Party needs the discovery.

E. Decision. An Arbitrator shall promptly determine whether sufficient reason exists for the discovery and issue an Order.

F. Consequences. An Arbitrator may draw an unfavorable, adverse inference or presumption from the failure of a Party to provide discovery. An Arbitrator may impose Sanctions and costs and fees related to seeking or resisting discovery under Rule 29, including reasonable attorney fees, Arbitrator fees, and administrative fees against the non-prevailing Party.

## RULE 30. SUBPOENA FOR IN-PERSON PARTICIPATORY HEARING.

A. A Party may obtain a subpoena from an Arbitrator for a Participatory Hearing ordering a non-Party witness or other person permitted by law to produce Documents or property at the Hearing or ordering a witness to testify at the Hearing by filing with the Forum and serving on all other Parties a Rule 18 Request.

B. The Request shall state reasons for the relevancy and reliability of the Documents, property or testimony and shall identify the witness and describe the Documents or property.

C. A Request for a Rule 30 subpoena must be Received by the Forum no later than twenty (20) days before the In-person Participatory Hearing, unless the Scheduling Notice provides otherwise.

D. The subpoena shall be issued by an Arbitrator if the Request conforms to Rules 30A, 30B, and 30C and demonstrates the relevancy and reliability of the Documents, property or testimony. No Party, lawyer or Representative of a Party may issue a subpoena.

E. The subpoena shall be served:

(1) By a person who is not a Party and is not less than eighteen (18) years of age if served upon a non-Party witness, or

(2) By Delivery or personal service if served upon a Party witness or the Party. The subpoena must be Received by the person subpoenaed no later than five (5) days before the Hearing, unless the Arbitrator Orders otherwise.

F. A subpoena may be served on a non-Party witness at any place allowed by applicable law.

G. A subpoena served on a non-Party witness shall be accompanied by a witness fee of twenty-five dollars ($25) and reasonable travel reimbursement to and from the Hearing location and the residence or place of business of the non-Party. A subpoena for the production of Documents or property served on a non-Party witness shall also be accompanied by payment of the reasonable costs of producing the Documents and property.

H. Within five (5) days after being served with the subpoena or before the time specified in the subpoena to appear at the Hearing, if less than five (5) days, the witness or a Party may Request an Order that the subpoena be dismissed or modified. The Request shall conform to Rule 18 and shall state why the subpoena should be dismissed or modified.

I. If a witness or Party makes a Request under Rule 30H, an Arbitrator shall promptly determine whether sufficient reason exists for the Order, or enforce the subpoena.

J. The Party having the subpoena served shall provide the Arbitrator with the Proof of Service of the subpoena if the witness fails to appear at the Hearing.

K. Subpoenas issued under this Code may be enforced in accord with the applicable law. A subpoena not issued by an Arbitrator under this Rule is unenforceable.

L. An Arbitrator may draw an unfavorable, adverse inference or presumption from the failure of a Party to produce a Party witness, in addition to imposing any other Sanction.

## RULE 31. EXCHANGE OF INFORMATION BEFORE A PARTICIPATORY HEARING.

A. Before all Participatory Hearings, each Party shall Deliver to all other Parties and file with the Forum two (2) copies of:

(1) A list of all witnesses expected to testify and a summary of their testimony;

(2) A list and description of all exhibits to be introduced;

(3) A copy of all Documents and a detailed description of any property to be introduced at the Hearing;

(4) An Affidavit establishing the authenticity of any Document proposed to be introduced at the Hearing; and

(5) Any Request for additional Participatory Hearing sessions, accompanied by the fee as provided in the Fee Schedule.

B. All Parties and the Forum shall Receive the lists, Documents, and Affidavits provided for in Rule 31A no later than ten (10) days before the Participatory Hearing, unless a Notice from the Forum or Arbitrator provides otherwise. Lists, Documents, and Affidavits may be submitted after that date only by Request of the submitting Party. Such Requests may be granted by the Arbitrator for sufficient reason.

C. The Arbitrator may exclude witnesses, testimony or Documents sought to be introduced by a Party who fails to comply with Rules 31A and 31B.

### RULE 32. LOCATION OF AN IN-PERSON PARTICIPATORY HEARING.

A. An In-person Participatory Hearing shall be held where the Arbitration Agreement designates or where the Parties agree or, in the absence of an agreement and for all Consumer cases, at a reasonably convenient location within the United States federal judicial district or other national judicial district where the Respondent to the Initial Claim resides or does business. A Respondent Entity does business where it has minimum contacts with a Consumer.

B. Unless the Parties agree otherwise, if there is more than one Respondent to an Initial Claim, an In-person Participatory Hearing shall be held in the United States federal judicial district or other national judicial district where the majority of the Respondents to the Initial Claim resides or does business. If there is no United States federal judicial district or other national judicial district where a majority of Respondents resides or does business, the Forum shall select a reasonably convenient location for the In-person Participatory Hearing.

### RULE 33. PARTICIPATORY HEARING.

A. A Participatory Hearing may include:

(1) An introduction by the Arbitrator.

(2) Opening statements by each of the Parties. The Respondent and other Parties have the option of reserving the opening statement until the presentation of their evidence.

(3) Claimant's case. The Claimant may introduce evidence, examine witnesses, and submit exhibits. The Respondent and other Parties may also examine the witnesses and submit exhibits.

(4) Respondent's case. The Respondent may introduce evidence, examine witnesses, and submit exhibits. The Claimant and other Parties may also examine the witnesses and submit exhibits.

(5) Additional cases. Other Parties may present their case.

(6) Rebuttal. A Party may introduce additional evidence, examine witnesses, and submit exhibits to rebut an opposing Party's case if the submissions are not repetitive, cumulative or otherwise inadmissible.

(7) Summation. Each Party may present a closing statement.

(8) Concluding remarks by the Arbitrator.

B. The close of a Participatory Hearing occurs when either the Arbitrator announces the Hearing closed or more than twenty (20) days elapse from the final session.

### RULE 34. PARTICIPATORY HEARING PROCEEDINGS.

A. A Participatory Hearing may consist of one or more sessions. A Hearing may be conducted on any business day unless the Parties and Arbitrator agree otherwise.

B. Hearing Sessions: Parties shall select sufficient time and sessions for Participatory Hearings in accord with Rule 26B. For Common Claim cases, a Hearing session is scheduled for the following length of time, unless more time or sessions are selected and the fees are paid:

A one hundred eighty-minute (180) session is scheduled for cases in which the amount in controversy exceeds $35,000.

A one hundred twenty-minute (120) session is scheduled for cases in which the amount in controversy is between $13,001 and $35,000.

A ninety-minute (90) session is scheduled for cases in which the amount in controversy is between $3,501 and $13,000.

A sixty-minute (60) session is scheduled for cases in which the amount in controversy is $3,500 or less.

C. The Arbitrator shall conduct a Participatory Hearing in an orderly, efficient, and economic manner, and shall determine the order
and presentation of evidence and oral arguments.

D. All Parties to the arbitration and their Representatives shall be entitled to attend or be involved in the Participatory Hearing. Other persons may not attend unless the Parties agree or the Arbitrator Orders otherwise. The Arbitrator may sequester witnesses.

E. The Arbitrator may request Documents and information from the Parties, and may question any witness or Party to clarify evidence or arguments.

F. An Arbitrator may Request Parties to submit additional information or Documents, including legal memoranda, which the Forum, the Arbitrator, and the Parties shall Receive no later than thirty (30) days after the final Participatory Hearing session.

G. A Party may Request permission to submit a post-hearing memorandum, which may be granted by the Arbitrator. The responsible Party shall pay the fee provided

by the Fee Schedule.

H. The presence or involvement of a Party in a Hearing results in the waiver of any objections to the Notice and scheduling of the Hearing.

### RULE 35. EVIDENCE IN A PARTICIPATORY HEARING.

A. Presentation. Parties shall have a full and equal opportunity to present relevant and reliable evidence and oral and written arguments in support of their positions. Parties may present evidence and arguments in any reasonable form and by any means of communication.

B. Oath. The Arbitrator shall administer an oath or affirmation before a witness testifies.

C. Admissibility. The Arbitrator shall determine the admissibility and weight of evidence, and shall not be bound by rules of evidence.

D. Objections. A Party may object to the introduction of evidence by another Party or a Request or question by an Arbitrator, and the Arbitrator shall rule on the objection.

E. Site Examination. An Arbitrator may visit a site to examine a matter relating to the arbitration accompanied by the Parties or their Representatives, if they so choose.

F. Record. No record of a Hearing shall be kept unless agreed by all Parties or Ordered by the Arbitrator. The responsible Party or Parties Requesting a record shall arrange and pay for the record, and promptly provide a copy of the transcript or recording to the Arbitrator and the Forum at no cost to the Arbitrator or the Forum, and, if Requested by another Party, to that Party, at that Party's expense.

G. Interpreter. A Party who requires an interpreter shall arrange and pay for the interpreter. An Arbitrator may have an interpreter present, with a fee assessed to a Party or Parties as determined by the Forum.

### RULE 36. ARBITRATION PROCEEDINGS IN ABSENCE OF A PARTY.

A. An Arbitrator may issue an Award or Order when any Party has failed to respond, appear, or proceed at a Hearing, or otherwise defend as provided in this Code.

B. If a Party does not respond to a Claim, an Arbitrator will timely review the merits of the Claim for purposes of issuing an Award or Order. The Claimant need not submit an additional Request for an Award.

C. An Arbitrator may require an Affidavit, information or Documents from Parties who have appeared or conduct a Hearing to Receive evidence necessary to issue an Award or Order. Documents submitted in Response to an Arbitrator's Request shall be filed with the Forum no later than thirty (30) days after the date of the Request. A Party may obtain forty-five (45) additional days to respond to an Arbitrator's Request by filing with the Forum and Delivering to all other Parties an extension notice before the initial thirty (30) day time period expires. Only one (1) extension by notice is available.

D. Each Party making an Appearance shall be provided notices relating to a Hearing.

E. No Award or Order shall be issued against a Party solely because that Party failed to respond, appear or defend.

NATIONAL ARBITRATION FORUM

# Part VI–Awards and Orders

### RULE 37. AWARDS.

A. An Award or Dispositive Order establishes the rights and obligations of all Parties named in the Award or Order and is final and binding, unless those Parties agree otherwise.

B. An Award shall not exceed the money or relief requested in a Claim or amended Claim and any amount awarded under Rule 37C.

C. An Award may include fees and costs awarded by an Arbitrator in favor of any Party only as permitted by law. A Party with a Claim for attorney fees or costs may seek to recover those expenses by bringing a timely Request in accord with Rules 18 and 12B. An opposing Party may object in accord with Rule 18. The Arbitrator may include attorney fees and costs in the final Award or in a separate Award.

D. An Award may include arbitration fees awarded by an Arbitrator or in favor of the Forum for fees due.

E. An Arbitrator shall endeavor to render an Award within twenty (20) days after the date of the close of the Hearing.

F. All Awards and Orders shall be in Writing, dated, and Signed by the Arbitrator or by a majority of the panel, and filed with the Forum.

G. An Award of an arbitration panel shall be by a majority of the Arbitrators. The chair of an arbitration panel may issue Orders, make rulings, and conduct proceedings.

H. An Award is a summary Award unless: (1) a Written notice is filed by a Party seeking reasons, findings of fact or conclusions of law, or (2) a prior Written agreement of the Parties requires reasons, findings of fact or conclusions of law and at least one Party files a Written notice requesting reasons, findings or conclusions. This Written agreement or notice must be filed with the Forum within ten (10) days of the date of the Notice of Selection of an Arbitrator and must be accompanied by a fee, if any, as provided in the Fee Schedule.

I. Awards shall be based upon a preponderance of the evidence presented, unless an agreement of the Parties or the applicable law provides otherwise.

J. An Arbitrator or the Forum may issue an Award or Order based upon a Written settlement Signed by the Parties.

### RULE 38. ORDERS.

A. An Arbitrator or the Forum, where permitted by the Code, may issue an Order at the Request of a Party or on the initiative of the Arbitrator or the Forum.

B. At any time following the filing of a Claim, upon a Request by a Party and after a Hearing, the Arbitrator may issue an Interim Order and may require security as a condition of the Interim Order.

C. An Arbitrator who dismisses a Claim because there was no Arbitration Agreement or because the Arbitrator does not have the power to decide a Claim shall state the reason in the dismissal Order.

### RULE 39. ENTRY AND SERVICE OF AWARDS AND ORDERS.

A. An Award or Order shall be entered in the state, country, or other jurisdiction provided for a Hearing in Rule 32, which shall appear on the Award or Order.

B. An Award or Order becomes final when entered. An Award or Order may not be entered if fees required by the Fee Schedule remain unpaid.

C. The Forum shall Deliver a copy of the Award or Order to all Parties or their Representatives or as directed by any Party.

D. Parties consent to service of the Award or Order and of all Documents, notices, and Orders necessary to confirm an Award or Order or to enter a judgment based on an Award or Order by Delivery, as defined by Rule 2M, at any address of the Party or Representative of record with the Forum.

E. An Award or Order may be confirmed, entered or enforced as a judgment in any court of competent jurisdiction. The Forum may disclose necessary Award information in connection with the confirmation, entering, enforcement or challenge of an Award or Order or otherwise as required by law.

F. Parties may request a duplicate original of an Award or Order or a copy of other filed Documents and pay the fee as determined by the Forum.

### RULE 40. VOLUNTARY DISMISSAL.

A. A Claimant may dismiss a Claim after it is filed and before the Respondent is served with the Claim by filing with the Forum a notice of dismissal.

B. A Claimant may dismiss a Claim after it is served and before the Respondent Delivers a Response to Claimant by Delivering to all Parties and filing with the Forum a notice of dismissal.

C. A Claimant may dismiss a Claim after a Respondent Delivers a Response that contains no Counter Claim within forty-five (45) days of the date the Response has been delivered to the Claimant or no later than a deadline established by a Scheduling Notice, whichever is later, by delivering to all Parties and filing with the Forum a notice of dismissal.

D. Any other Claim may be dismissed at the Request of the Claimant in accord with Rule 18. Before the selection of an Arbitrator, the Forum may dismiss the Claim. After the selection of the Arbitrator, the Arbitrator may dismiss the Claim.

E. A Claim shall be dismissed upon agreement of the Parties filed with the Forum.

F. Unless stated otherwise, the first voluntary dismissal of a Claim is Without Prejudice, and the Claim may be brought again.

G. A Claim voluntarily dismissed more than once is dismissed With Prejudice, and cannot be brought again.

### RULE 41. INVOLUNTARY DISMISSAL.

A. A Claim or Response may be dismissed by an Arbitrator at the Request of the Forum or a Party or on the initiative of the Arbitrator for one or more of the following reasons:

(1) It is not supported by evidence.

(2) It is not supported by existing law.

(3) It is frivolous.

(4) It has been presented or maintained for an improper purpose, such as to harass, cause unnecessary delay or needlessly increase the cost of arbitration.

(5) It is brought by a Party who has been declared to be a vexatious litigant by a court or Arbitrator.

(6) A Party has violated any provision of the Code, or any Order or notice from an Arbitrator or the Forum.

B. A Claim or Response may be dismissed by an Arbitrator or the Forum at the Request of a Party in accord with Rule 18 or on the initiative of the Arbitrator or the Forum for one or more of the following reasons:

(1) A Party has failed to proceed with an arbitration or Claim.

(2) A Party has failed to pay fees as provided in the Fee Schedule.

(3) More than one hundred twenty (120) days have elapsed between the filing date of the Claim and the date the Forum receives a Response or Proof of Service of the Initial Claim.

(4) More than sixty (60) days have elapsed since a Hearing has been postponed or an arbitration case has been placed on inactive status.

(5) More than twelve (12) months have elapsed since a case has been stayed under Rule 9F1 and no notification has been received from the Claimant to extend the stay.

C. The Forum shall Deliver notice of an involuntary dismissal to all Parties who have

made an Appearance.

D. Unless stated otherwise, an involuntary dismissal by an Arbitrator is With Prejudice and the Claim may not be brought again.

E. An involuntary dismissal by the Forum is Without Prejudice and the Claim may be brought again.

F. If a Claimant again brings a Claim against a Respondent that was dismissed Without Prejudice, the Forum or Arbitrator may Order the costs incurred by the Respondent in the previous case to be paid to the Respondent, and may Stay the proceedings of the arbitration until the Claimant has complied with this Order.

G. If a Request for an Involuntary Dismissal is the only Request for a dispositive Order, that Request may be determined at the Document or Participatory Hearing.

### RULE 42. CORRECTION.

The Forum or an Arbitrator may correct clerical or administrative mistakes or errors arising from oversight or omission in the administration of cases or in the issuance of an Order or Award.

### RULE 43. REOPENING AND RECONSIDERATION.

A. An Arbitrator may reopen a Hearing or reconsider an Order or Award within a reasonable time from the date the Order or Award is entered if:

(1) Service of Process or Proof of Service of Process of a Claim was not complete as required by this Code;

(2) The Order or Award is ambiguous or contains evident material mistakes; or

(3) If all Parties agree.

B. An Arbitrator may reopen a Hearing or reconsider an Order or Award within forty-five (45) days from the date the Order or Award is entered if:

(1) The Arbitrator failed to timely disclose material circumstances or material reasons for disqualification in accord with Rule 23A; or

(2) The Arbitrator did not decide a submitted issue.

C. Otherwise, neither the Arbitrator nor the Forum has the power to vacate an Order or Award after the Order or Award becomes final, unless all Parties agree.

D. Requests that an Arbitrator reopen a Hearing or reconsider an Order or Award must be timely filed with the Forum in accord with Rule 18 and Delivered to all Parties. A Party cannot make a second Request.

E. An Order or Award is reviewable by a court of competent jurisdiction as provided by applicable law.

# Part VII–Fees

### RULE 44. FEES.

A. Fee Recovery. The prevailing Party may recover fees paid in the arbitration in accord with Rule 37C.

B. Prepaid Fees. All fees for the filing of a Claim, Response, Request, objection, and any other Document and Hearing fees must be paid at the time the Document is filed or the Hearing is selected. These fees include fees required by this Code, the Forum Fee Schedule, the Parties' contract, an Order of an Arbitrator, or as required by law.

C. Non-Monetary Relief Fees. A Respondent may file a Rule 18 Request to review the value of injunctive, declaratory or other non-monetary relief sought in a Claim. An Arbitrator shall promptly determine the value of the Claim, which determines the amount of the fees to be paid in accord with the Fee Schedule.

D. Hearing Fees. The Party selecting the type of Hearing prepays the Hearing fee unless the agreement of the Parties, this Code or the applicable law provides otherwise. The Forum may proceed with an arbitration in a case involving a Consumer Party who Requests that the case proceed even after another Party required to pay the Hearing fee fails to pay. The Arbitrator may Award the Forum the amount of the unpaid Hearing fees.

E. Advance Fees. During the course of any Participatory Hearing, the Forum or an Arbitrator may require any Party, who is not a Consumer in a Common Claim case, to pay in advance a fee for necessary Participatory Hearing sessions in addition to those requested under Rules 26 and 27.

F. Arbitrators. Fees for Arbitrators selected in accord with Rules 21A(1) and (2) are paid by the Parties to the Forum. Fees for Arbitrators selected in accord with Rule 21A(3) are paid to the Forum by the Parties as provided for in the Forum Fee Schedule. In cases where the Parties select a number of Arbitrators in addition to those provided by the Code or select Arbitrators with qualifications different than those required by the Forum, a fee for each Arbitrator will be determined by the Forum to be paid by the responsible Party or Parties.

G. Consumer Request. A Consumer Claimant or a Consumer Respondent in a Large Claim who asserts that arbitration fees prevent the Consumer Party from effectively vindicating the Consumer's case in arbitration may, at the time of filing of the Consumer's Initial Claim or Consumer's Response to a Large Claim and prior to paying any filing fee, file a Request that another Party or Parties pay all or part of the arbitration fees or that the arbitration provision be declared unenforceable, permitting the Consumer to litigate the case instead of arbitrating the case. This Request shall be processed without a fee and must be filed with the Forum and Delivered to all Parties together with the Initial Claim or Response and proof of Delivery.

(1) Within fifteen (15) days of the filing and Delivery of the Request, another Party may:

a. Agree to pay all or part of the fees required of the Consumer, or

b. Agree to litigate instead of arbitrate the case, or

c. File an objection to the Request.

(2) If there is no agreement by the Parties, an Arbitrator shall promptly decide the Request and objection, if any, based on the applicable law.

(3) The arbitration is suspended during this process.

H. Respondent Request. In cases where a Consumer Claimant brings a Large Claim and a Respondent is obligated to pay the fees by agreement or by law, the Respondent may, before or reasonably after the time of filing a Response, file with the Forum and serve on all Parties a Rule 18 Request that an Arbitrator determine whether there is a prima facie Claim of $75,000 or more. If the Arbitrator determines the Claim is a Common Claim, the Common Claim Fee Schedule shall apply. Otherwise, the Large Claim Fee Schedule shall apply.

I. International Cases. The Forum may assess additional fees for arbitrations conducted outside the United States or involving Parties from more than one country.

J. United States Dollars. Forum Fee Schedule fees are listed in United States Dollars. Fees shall be paid to the Forum in United States Dollars, unless the Forum agrees to accept other currency based on the exchange rate in effect on the required date of the fee payment as determined by the Forum.

K. Refunds. Fees are not refundable, except as otherwise provided by the Code or Fee Schedule.

L. Other Fees. The Forum may establish reasonable fees for proceedings not covered by the Fee Schedule and may assess appropriate, additional fees for Code proceedings as permitted by law or in accord with this Code. Parties may obtain the amount of a fee by contacting the Forum.

### RULE 45. WAIVER OF FEES.

A. An indigent Consumer Party may Request a waiver of Common Claim filing fees, Request Fees, Hearing Fees, or security for any arbitration, by filing with the Forum a Written Request for a waiver at the time payment is due. The Request for a waiver shall be accompanied by an Affidavit including:

(1) The Party's family size;

(2) All of the Party's income and sources, property and assets, expenses and costs, liabilities and debts;

(3) A statement that there is no agreement providing for any other person or Entity to either pay the costs or share in the proceeds of the Claim or a copy of the agreement and the financial information described in Rule 45A(2) for any person or Entity that has agreed to pay the costs or share in the proceeds of the Claim; and

(4) All other relevant information, including releases for credit information, as requested by the Forum.

Neither the Request nor Affidavit need be sent to the other Parties.

B. The Forum shall promptly issue a full or partial waiver to a Consumer Party eligible under this Rule and under the United States federal poverty standards or the applicable law. The Forum may also Order another Party to pay all or part of the waived fees as permitted or required by law.

C. If another Party has agreed to pay fees, a Rule 45 Request is unnecessary and the fee paying Party is obligated to pay the fees.

D. The Consumer Party must file an amended Affidavit of Poverty within thirty (30) days of a material change in the financial condition or circumstances described in the Consumer Party's initial Affidavit of Poverty. A separate Request must be filed by the indigent Consumer Party for each subsequent fee waiver requested.

E. If the statements in the Rule 45 Affidavit are untrue or incomplete, or if the Consumer Party is later determined to be able to pay the fees, the Forum shall Order the Consumer Party to pay the fees waived.

# Part VIII–Code Provisions

### RULE 46. COMPLIANCE WITH RULES.

An Arbitrator may Sanction a Party or Representative, or both, for violating any Rule, notice, ruling or Order, or for asserting an unsupportable Claim or Response. A Party may be Sanctioned on the initiative of the Arbitrator or at the Request of the Forum or a Party. An Arbitrator shall Sanction a Party who refuses to pay fees as required by agreement, these Rules, an Arbitrator Order, or the applicable law, unless the offending Party establishes reasonable neglect. A Sanction Order may require an offending Party to pay for fees and costs incurred by another Party, unpaid fees, and other appropriate monetary Sanctions, and may require payment to another Party or the Forum.

### RULE 47. LEGAL PROCEEDINGS.

A. The Arbitrator, the Director, the Forum, and any individual or Entity associated with the Forum are immune from liability and shall not be liable to any Party for any act or omission in connection with any arbitration conducted under this Code.

B. No Party or prospective Party, before or during the arbitration of any matter eligible for submission under this Code, shall commence or pursue any lawsuit, administrative proceeding, or other action against any other Party, prospective Party, the Forum, or individual or Entity associated with the Forum relating to any of the matters subject to arbitration under this Code or the

agreement of the Parties. Any Party commencing or pursuing such a proceeding agrees to pay and indemnify all such Parties, the Forum, individuals, and Entities for all expenses and costs incurred, including attorney fees as permitted by applicable law.

C. No Arbitrator, Director or any individual associated with the Forum shall be a witness in any legal proceeding arising out of the arbitration.

D. Any Party commencing or pursuing any lawsuit, administrative proceeding, arbitration or other action against the Forum, an Arbitrator or individual or Entity associated with the Forum, after an Award is final, agrees to pay and indemnify the Forum, an Arbitrator, individuals and Entities for all expenses and costs incurred, including attorney fees.

E. Every Party to any arbitration administered by the Forum or to an Arbitration Agreement as described in Rules 1 or 2E and the Forum agree that any Claim or dispute of any nature against the Forum or any agent, officer, employee, or affiliate of the Forum or any Arbitrator shall be resolved by final, binding arbitration conducted by a panel of three (3) Arbitrators. The Party or Parties shall select one Arbitrator; the Forum shall select a second Arbitrator; and these two Arbitrators shall select a third Arbitrator who is neutral and independent and who shall be the chair of the panel. The Arbitrators shall conduct the arbitration pursuant to the Code of Procedure in effect at the time the arbitration is brought. The chair shall have the powers of the Forum and perform the responsibilities of the Director. All fees payable under the Fee Schedule shall be assessed by the chair and paid to the panel of Arbitrators. Neither the Forum, nor its Director, nor any employee or agent of the Forum shall administer the arbitration.

## RULE 48. INTERPRETATION AND APPLICATION OF CODE.

A. This Code shall be interpreted in conformity with 9 U.S.C. §§ 1-16 and 9 U.S.C. §§ 201-208 in the United States or the applicable law of other countries in order to provide all participants in the arbitration with a fair and impartial proceeding and an enforceable Award or Order.

B. Unless the Parties agree otherwise, any Arbitration Agreement as described in Rules 1 and 2E and all arbitration proceedings, Hearings, Awards, and Orders are to be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16.

C. In the event a court of competent jurisdiction shall find any portion of this Code or Fee Schedule to be in violation of the law or otherwise unenforceable, that portion shall not be effective and the remainder of the Code shall remain effective.

D. The Director or Arbitrator may decline the use of arbitration for any dispute, controversy, Claim, Response or Request that is not a proper or legal subject matter for arbitration or where the agreement of the Parties has substantially modified a material portion of the Code. If Parties are denied the opportunity to arbitrate a dispute, controversy or Claim before the Forum, the Parties may seek legal and other remedies in accord with applicable law.

E. In the event of a cancellation of this Code, any Party may seek legal and other remedies regarding any matter upon which an Award or Order has not been entered.

F. The Forum Code Committee, appointed by the Board of Directors, shall have the power and authority to effectuate the purposes of this Code, including establishing appropriate rules and procedures governing arbitrations and altering, amending or modifying this Code in accord with the law.

# Appendix A–Notice of Arbitration

Dear Respondent:

AN ARBITRATION CLAIM HAS BEEN FILED AGAINST YOU.

Enclosed and served upon you is the Initial Claim. You may obtain a copy of the Code of Procedure, without cost, from the Claimant or from the Forum at www.adrforum.com or 800-474-2371.

IF YOU DO NOT DELIVER TO THE CLAIMANT AND FILE WITH THE FORUM A WRITTEN RESPONSE, AN AWARD MAY BE ENTERED AGAINST YOU. AN ARBITRATION AWARD MAY BE ENFORCED IN COURT AS A CIVIL JUDGMENT.

YOU HAVE THIRTY (30) DAYS TO RESPOND FROM RECEIPT OF SERVICE.

You have a number of options at this time. You may:

1. *Submit a written Response to the Claim,* stating your reply and defenses to the Claim, together with documents supporting your position. Your Response must be delivered to the Claimant and filed with the Forum. See National Arbitration Forum [NAF] Code of Procedure Rules 13 and 6C.

Proof of delivery of the Response on the Claimant must also be filed with the Forum. See NAF Rules 2A, 2M, and 2Z. Proof of

delivery can be a statement: "Respondent, under penalty of perjury, states that the Response was delivered to Claimant by [explain how delivered, such as mail or other methods in NAF Rule 6C]".

A Counter Claim, Cross-claim or Third Party Claim must also be delivered and filed with the Forum, and accompanied by the fee as provided in the Fee Schedule. See NAF Rules 14, 15, and 16. Forms for such Response and Claims may be obtained from the Forum.

If you fail to respond in writing to the Claim, an Award may be entered against you and in favor of the Claimant. See NAF Rule 36.

*2. Select a Document Hearing or a Participatory Hearing.* You may request a Hearing in your Response or in a separate writing. You may select a Document or Participatory Hearing, and you may also request a Hearing on-line or by telephone. If an In-person Participatory Hearing is selected, it will be held in the federal Judicial District where you reside or do business, unless you have agreed otherwise. Parties have a full and equal right to present relevant and reliable direct and cross examination testimony, documents, exhibits, evidence and arguments. Parties also have the right to subpoena witnesses. Your written Request for a Hearing must be filed with the Forum. You must also deliver a copy of your Request to the Claimant and any other Parties. See NAF Rules 5D, 25, 26, 29, 30, 31, and 33.

*3. Have other options.* You may seek the advice of an attorney or any person who may assist you regarding this arbitration. See NAF Rule 3. You should seek this advice promptly so that your Response can be delivered and filed within the time required by the Code of Procedure. Parties have the right to adjournment for good cause within the time period allowed in Rule 9E. See NAF Rule 5 for a Summary of Arbitration Procedures. If you have any questions about responding, you may contact the Forum.

The Forum is an independent and impartial arbitration organization, which does not give legal advice or represent parties. THIS SUMMARY IS NOT A SUBSTITUTE FOR READING AND UNDERSTANDING THE CODE OF PROCEDURE WHICH GOVERNS THIS ARBITRATION.

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN USA 55405-0191
800-474-2371
info@adrforum.com
adrforum.com

N A T I O N A L   A R B I T R A T I O N   F O R U M

# Appendix B–Second Notice of Arbitration

Date
Name of Case

File Number

Dear Respondent,

We have received notice that you have been served with an Arbitration Claim in the above case. If you want to respond to the Claim, the Code of Procedure requires you to respond in writing.

If you have not yet responded, YOU MAY STILL SUBMIT A WRITTEN RESPONSE to the Claimant and the Forum. YOU HAVE THIRTY (30) DAYS FROM THE DATE OF SERVICE OR FOURTEEN (14) DAYS FROM THE DATE OF THIS NOTICE, whichever is later, to respond.

The First Notice of Arbitration you received with the Initial Claim documents stated that you could:

*1. Submit a written Response to the Claim, stating your reply and defenses to the Claim, together with documents supporting your position.* Proof of delivery of the Response on the Claimant must also be filed with the Forum. Proof of delivery can be a statement: "Respondent, under penalty of perjury, states that the Response was delivered to Claimant by [explain how delivered, such as by mail or other methods in NAF Rule 6C]".

*2. Request a Document Hearing, an In-Person Participatory Hearing where you reside or do business, or an On-Line or Telephone Hearing as provided in the Forum Code of Procedure.* Parties have a full and equal right to present relevant and reliable direct and cross examination testimony, documents, exhibits, evidence and arguments. Parties also have the right to subpoena witnesses. See NAF Rules 5, 25, 26, 29, 30, 31, and 33.

*3. Seek the advice of an attorney or any person who may assist you regarding this arbitration.* See NAF Rule 3. You should seek this advice immediately. Parties have the right to adjournment for good cause within the time period allowed in NAF Rule 9. *You should also read the National Arbitration Forum Code of Procedure which explains what you must and can do.* See NAF Rules 5, 6C, 13, 14, 15, 16, 24, and 25.

You still have these options. If you have any questions or need a copy of the Initial Claim Documents or the Forum Code of Procedure, or have any questions about responding, you may contact the National Arbitration Forum:

P.O. Box 50191
Minneapolis, MN USA 55405-0191
Telephone: (800) 474-2371
Fax: (866) 743-4517
info@adrforum.com
www.adrforum.com

The Forum is an independent and impartial arbitration organization, which does not give legal advice or represent parties. Furthermore, any Arbitrator appointed to this proceeding is an independent and impartial Neutral who hears the matter and arrives at decisions. The Arbitrator does not represent

NATIONAL ARBITRATION FORUM

you and does not serve as your attorney, therefore no attorney-client privilege exists between you and the Arbitrator.

**Notice of Proceeding**
If you do not deliver to the Claimant and file with the Forum a written response, an Award may be entered against you in favor of the Claimant. An arbitration Award may be enforced in court as a civil judgment. NAF Rule 36B states in part: "If a Party does not respond to a Claim, an Arbitrator will timely review the merits of the Claim for purposes of issuing an Award or Order…." This Notice informs you that an Arbitrator will conduct a Rule 36 Proceeding after the time has passed for you to submit a written response. If you do not respond, you will not receive any additional notice about this hearing.

THIS SUMMARY IS NOT A SUBSTITUTE FOR READING AND UNDERSTANDING THE FORUM CODE OF PROCEDURE WHICH GOVERNS THIS ARBITRATION.

# Appendix C–Help Line

The Forum has a dedicated Help Line offering general assistance with the arbitration process or matters administered by the Forum under the Code. Forum staff cannot provide legal advice. Inquiries may be directed to the Help Line at:

Telephone: (800) 474-2371
ext. 4357 (H-E-L-P)

National Arbitration Forum
P. O. Box 50191
Minneapolis, MN USA 55405-0191
Attention - Help Line

This page left intentionally blank.

9th Circuit Case Number(s)  12-56518

**NOTE**: To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) _____ .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  April 26, 2013 .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Gordon M. Fauth, Jr., Esq.
Alexis A. Phocas, Esq.
LITIGATION LAW GROUP
1801 Clement Avenue, Suite 101
Alameda, CA 94501

Signature (use "s/" format)  /S/ Cindy Gonzales

American LegalNet, Inc.
www.FormsWorkFlow.com